**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CANDACE VAN DER STELT, <br><br> Plaintiff, <br><br> v. <br><br> GEORGETOWN UNIVERSITY, and PETER TURKELTAUB <br><br> Defendants. <br><br> PETER TURKELTAUB, <br><br> Counter-Plaintiff <br><br> v. <br><br> CANDACE VAN DER STELT, <br><br> Counter-Defendant | Civil Action No. 23:cv-02212-LLA |

**COUNTER-DEFENDANT'S MOTION TO DISMISS**
**COUNTER-PLAINTIFF'S COUNTERCLAIMS**

Counter-Defendant Candace van der Stelt, by and through her undersigned counsel, moves to dismiss the Counter-Plaintiff Peter Turkeltaub's counterclaim in the above-captioned matter pursuant to Fed. R. Civ. P. 12(b)(6) and the local rules of this Court.

As discussed in more detail in the accompanying Memorandum in support of this Motion, Turkeltaub has failed to allege cognizable claims of defamation or false light invasion of privacy because the alleged defamatory statements are absolutely privileged given their relation to judicial proceedings, are protected as truth and/or opinion, fail to state a plausible claim, or otherwise barred by the statute of limitations. Van der Stelt moves for dismissal with prejudice because any amendment of Turkeltaub's counterclaim would be futile.

1

Dated: April 8, 2024                    Respectfully submitted,

                                        _____/s/_____
                                        Gary M. Gilbert, Esq. (Bar No. MD15808)
                                        Elizabeth Wilson, Esq. (Bar No. 491007)
                                        Gilbert Employment Law, P.C.
                                        8403 Colesville Road, Suite 1000
                                        Silver Spring, MD, 20910
                                        Tel: (301) 608-0880
                                        Fax: (301) 608-0881
                                        Gary-efile@gelawyer.com
                                        ewilson@gelawyer.com
                                        ccohen-efile@gelawyer.com

                                        *Counsel for Counter-Defendant*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| CANDACE VAN DER STELT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 23:cv-02212-LLA |
| | ) | |
| GEORGETOWN UNIVERSITY, | ) | |
| and PETER TURKELTAUB | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| PETER TURKELTAUB, | ) | |
| | ) | |
| Counter-Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CANDACE VAN DER STELT, | ) | |
| | ) | |
| Counter-Defendant | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**COUNTER-DEFENDANT'S MOTION TO DISMISS**

Gary M. Gilbert, Esq. (Bar No. MD15808)
Elizabeth Wilson, Esq. (Bar No. 491007)
Gilbert Employment Law, P.C.
8403 Colesville road, Suite 1000
Silver Spring, MD, 20910
Tel: (301) 608-0880
Fax: (301) 608-0881
Gary-efile@gelawyer.com
ewilson@gelawyer.com
ccohen-efile@gelawyer.com

*Counsel for Counter-Defendant*

i

## <u>TABLE OF CONTENTS</u>

**Page**

I.   BACKGROUND.................................................................................................................2

    A.   Turkeltaub's Interactions with van der Stelt as Described in his Counterclaim, Admitted in his Answer, and his Public Statements. ......................................................2

    B.   Van der Stelt's Sexual Harassment Claims and Complaint..........................................3

    C.   Turkeltaub's Allegations of Defamatory Statements Made by van der Stelt ................6

II.   LEGAL STANDARD ........................................................................................................8

    A.   Motion to Dismiss Standard..........................................................................................8

    B.   Legal Standards for Defamation and False Light Invasion of Privacy Claims............10

III.   ARGUMENT ...................................................................................................................12

    A.   The Statute of Limitations Bars Several Allegedly Defamatory Statements on Which Turkeltaub's Counterclaim Rests. ...............................................................................12

    B.   Alleged Defamatory Statements Made on or After February 1, 2023 Should be Dismissed Because They are Protected by an Absolute Privilege. ...............................14

        1.   Statements Made by van der Stelt in Connection with Judicial Proceedings or Quasi-Judicial Proceedings are Absolutely Privileged. ......................................15

        2.   Van der Stelt's Alleged Statements are Subject to an Absolute Privilege because She Was Exercising her Legal Rights under the DCHRA. ......................................20

    C.   The Statements at Issue are Subject to a Qualified Privilege.......................................22

        1.   Van der Stelt's Alleged Dissemination of her Federal Court Complaint is Protected by the Fair Reporting Privilege.............................................................23

        2.   Van der Stelt's Comments Are Subject to the Common Interest Privilege.............25

        3.   Defendant cannot Plausibly Establish Malice. .....................................................27

    D.   Even if Privilege does not Apply to Each Statement, when Taking all Facts in the Counterclaim as True, Turkeltaub Cannot Establish the Elements of Defamation. .....30

        1.   The Counterclaim does not Plausibly Allege that the Statements were Verifiably False. ........30

        2.   The Counterclaim Does Not Plausibly Allege that van der Stelt Published Any Allegedly Defamatory Statements with Malice, or Wanton, Reckless, and/or Willful Disregard of the Truth. .......32

        3.   Turkeltaub cannot Demonstrate that he was Harmed by the Alleged Defamatory Statements. 34

    E.   Turkeltaub's Counterclaim Should Be Dismissed Entirely and with Prejudice Given that Any Amendment Would Be Futile...........................................................................35

IV.   CONCLUSION ................................................................................................................36

ii

## TABLE OF AUTHORITIES

**Cases**

*Armstrong v. Thompson*, 80 A.3d 177 (D.C. 2013) ........................................................ 12, 30, 31

*\*Arneja v. Gildar*, 541 A.2d 621 (D.C. 1988) ...................................................... 11, 14, 15, 17

*Arpaio v. Cottle*, 404 F. Supp. 3d 80 (D.D.C. 2019) ........................................................ 27

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................ 8, 27

*Ashford v. Evening Star Newspaper Co.*, 41 App. D.C. 395 (D.C. Cir. 1914) ..................... 28

*Audain v. Am. Univ.*, No. 94-2676 (TFH), 1997 U.S. Dist. Lexis 21730 (D.D.C. Dec. 11, 1997) ........... 26

*Barry v. Time, Inc.*, 584 F. Supp. 1110 (N.D. Ca. 1984) .................................................. 33

*Bauman v. Butowsky*, 377 F. Supp. 3d 1 (D.D.C. 2019) ............................................... 30, 32

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................................. 8

*Bernstein v. Seeman*, 593 F. Supp. 2d 630 (S.D.N.Y. 2009) ............................................ 35

*Blistein v. St. John's College*, 860 F. Supp. 256 (Md. 1994) ........................................... 21

*Blizzard v. Newport News Redevelopment & Housing Auth.*, 670 F. Supp. 1337 (E.D. Va. 1984) ...... 21

*Blodgett v. Univ. Club*, 930 A.2d 210 (D.C. 2007) ....................................................... 10

*Bond v. U.S. Dep't of Just.*, 828 F. Supp. 2d 60 (D.D.C. 2011) ....................................... 12

*Brown v. Collins*, 402 F.2d 209 (D.C. 1968) ................................................................. 16

*Carter v. Hahn*, 821 A.2d 890 (D.C. 2003) ................................................................. 22

*Cooper v. Pic-Walsh Freight Co.*, No. 75-403 C(1), 1976 U.S Dist. LEXIS 17022 (E.D. Mo. Jan. 23, 1976) ........................ 22

*Crowley v. North Am. Telecomm. Ass'n*, 691 A.2d 1169 (D.C. 1997) ............................ 11

*Daka, Inc., v. Breiner*, 711 A.2d 86 (D.C. 1998) ........................................................ 20

*Dameron v. Wash. Mag.*, 779 F.2d 736 (D.C. Cir. 1985) ......................................... 23, 24

*Deripaska v. Associated Press*, 282 F. Supp. 3d 133 (D.D.C. 2017) ........................... 11, 35

*Dixon v. Univ. of S. Cal.*, No. 23-55079, 2024 U.S. App. LEXIS 4761 (9th Cir. Feb. 29, 2024) ............ 15

*EEOC v. Hobson Bearing Int'l, Inc.*, No. 3:16-cv-5034 SWH, 2016 U.S. Dist. LEXIS 119641 (W.D. Mo. Aug. 25, 2016) ................ 21

*\*EEOC v. Virginia Carolina Vaneer Corp.*, 495 F. Supp 775 (W.D. Va. 1980) ......................... 11, 20, 22

*\*Egei v. Johnson*, 192 F. Supp. 3d 81 (D.D.C. 2016) ...................................... 20, 21, 22, 29

*Fogel v. Univ. of the Arts*, No. 18-5137, 2019 U.S. Dist. LEXIS 51763 (E.D. Pa. March 27, 2019) ........ 15

*Ford Motor Credit v. Holland*, 367 A.2d 1311 (D.C. 1977) ........................................ 22, 28

*Foretick v. Glamour*, 753 F. Supp. 955 (D.D.C. 1990) .................................................. 25

*Gonzalez Ramos v. ADR Vantage, Inc.*, No. 18-cv-1690 (APM), 2021 U.S. Dist. LEXIS 186265 (D.D.C. Sept. 29, 2021) ............ 13

*Greenberg v. The Life Insurance Company of Va.*, 177 F.3d 507 (6th Cir. 1999) ...................... 9

*H.E. Crawford Co. v. Dun & Bradstreet, Inc.*, 241 F.2d 387 (4th Cir.1957) .......................... 28

*\*Harper v. Walters*, 822 F. Supp. 817 (D.D.C. 1993), *aff'd*, 40 F.3d 474 (D.C. Cir. 1994) ......... 23, 24, 27

*\*Hettinga v. United States*, 677 F.3d 471(D.C. Cir. 2012) ............................................. 35

*Hindu Am. Found. v. Viswanath*, 646 F. Supp. 3d 78 (D.D.C. 2022) ........................... 29, 32, 33

*Hourani v. Mirtchev*, 796 F.3d 1 (D.C. Cir. 2015) .................................................... 10, 34

*James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085 (D.C. Cir. 1996) .......................... 35

*Kahl v. Bureau of Nat'l Affs., Inc.*, 856 F.3d 106 (D.C. Cir. 2017) ................................. 30

*Kevin S. Bennett Tr. v. Bennett*, 561 F. Supp. 2d 22 (D.D.C. 2008) ................................... 9

*Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253 (4th Cir. 1998) ........................... 21

*Libre By Nexus v. BuzzFeed, Inc.*, 311 F. Supp. 3d 149 (D.D.C. 2018) ............................... 9

*Marsh v. Hollander*, 339 F. Supp. 2d 1 (D.D.C. 2004) .............................................. 9, 16

*Mastro v. Potomac Elec. Power Co.*, 447 F.3d 843 (D.C. Cir. 2006) ................................. 29

*McFarlane v. Esquire Magazine*, 74 F.3d 1296 (D.C. Cir.1996) ...................................... 27

*Messina v. Fontana*, 260 F. Supp. 2d 173 (D.D.C. 2003) ............................................. 14

*Messina v. Krakower*, 439 F.3d 755 (D.C. Cir. 2006) .............................................. 16, 18

iii

<u>TABLE OF AUTHORITIES</u> continued

**Cased continued**

*Mink v. Suthers*, 482 F.3d 1244 (10th Cir. 2007) ................................................................ 33

*Mittleman v. United States*, 104 F.3d 410 (D.C. Cir. 1997) ................................................. 12

*Mohler v. Houston*, 356 A.2d 646 (D.C. 1976) ................................................................... 17

*Moldea v. New York Times Co.,* 22 F.3d 310 (D.C. Cir. 1994) ............................................ 10

*Monge v. Univ. of Pennsylvania*, No. CV 22-2942, 2023 LEXIS 104417 (E.D. Pa. June 14, 2023) ......... 15

*Mosrie v. Trussell*, 467 A.2d 475 (D.C. 1983) .................................................................... 28

*\*Moss v. Stockard*, 580 A.2d 1011 (D.C. 1990) ............................................... 22, 26, 27, 28

*Mullin v. Wash. Free Weekly Inc.*, 785 A.2d 298 (D.C. 2001) ............................................. 13

*\*Myers v. D.C. Hous. Auth.*, No. 1:20-cv-00700-APM, 2021 U.S. Dist. LEXIS 57805 (D.D.C. Mar. 26, 2021) ................................................................................. 23, 24, 25, 28

*New York Times Co. v. Sullivan*, 376 U.S. 254 (1964) ......................................................... 27

*Nunes v. WP Co. LLC*, 513 F. Supp. 3d 1 (D.D.C. 2020) ................................................ 8, 27

*Oparaugo v. Watts*, 884 A.2d 63 (D.C. 2005) ..................................................................... 11

*Park v. Brahmbhatt*, 234 A.3d 1212 (D.C. 2020) ........................................................... 16, 19

*Parsi v. Daioleslam*, 890 F. Supp. 2d 77 (D.D.C. 2012) ................................................. 10, 27

*Paul v. Jud. Watch, Inc.*, 543 F. Supp. 2d 1(D.D.C. 2008) ..................................................... 12

*Pauling v. Globe-Democrat Publishing Co.*, 362 F.2d 188 (8th Cir. 1966) ........................... 33

*Provisional Gov't of Republic v. Am. Broad. Cos.*, 609 F. Supp. 104 (D.D.C. 1985) ............... 12

*Roland v. d'Arazien*, 685 F.2d 653 (D.C. Cir. 1982) .......................................................... 26

*Rosen v. Am. Inst. Pub. Affs. Comm., Inc.*, 41 A.3d 1250 (D.C. 2012) ........................... 30, 31

*Shabazz v. PYA Monarch, LLC* 271 F. Supp. 2d 797 (E.D. Va. 2003) ................................. 21

*Sias v. City Demonstration Agency,* 588 F.2d 629 (9th Cir. 1978) ........................................ 21

*St. Amant v. Thompson*, 390 U.S. 727 (1968) ..................................................................... 30

*Stith v. Chadbourne & Parke, LLP*, 160 F. Supp. 2d 1 (D.D.C. 2001) ................................. 15

*Stovell v. James*, 810 F. Supp. 2d 237 (D.D.C. 2011) ...................................................... 8, 35

*Sturdivant v. Seaboard Serv. Sys., Ltd.,* 459 A.3d 1058 (D.C. 1983) .................................... 16

*Tah v. Glob. Witness Pub'g, Inc.*, 413 F. Supp. 3d 1 (D.D.C. 2019) ....................................... 8

*Vanover v. Hantman*, 77 F. Supp. 2d 91 (D.D.C. 1999) ......................................................... 9

*Wallace v. Skadden, Arps, Slate, Meagher & Flom*, 715 A.2d 873 (D.C. 1998) ..................... 14

*Williams v. D.C.*, 9 A.3d 484 (D.C. 2010) .......................................................................... 11

*Wood v. Am. Fed'n of Gov't Emps.*, 255 F. Supp. 3d 190 (D.D.C. 2017) .............................. 12

*Zimmerman v. Al Jazeera Am., LLC*, 246 F. Supp. 3d 257 (D.D.C. 2017) .............................. 10

**Statutes**

42  U.S.C. § 2000(e) ............................................................................................................. 20

D.C. Code § 12-301 ........................................................................................................ 12, 14

D.C. Code § 2-1402.6 ........................................................................................................... 20

D.C. Code § 2-1402.11 ......................................................................................................... 20

D.C. Code § 2-1402.41 ......................................................................................................... 20

D.C. Code § 2-1402.61 ......................................................................................................... 20

**Other Authorities**

Restatement (Second) of Torts, tit. B introductory note .................................................. 26, 27

Restatement (Second) of Torts § 581A cmt. f ....................................................................... 30

Restatement (Second) of Torts § 611 cmt. c ......................................................................... 24

iv

Counter-Defendant Candace van der Stelt submits this Memorandum of Law in support of her Motion to Dismiss Peter Turkeltaub's Counterclaim (hereinafter "CC") for failure to state a claim upon which relief can be granted. Though, upon a motion to dismiss, all allegations and inferences must be construed in favor of the movant, Turkeltaub's claims of defamation and false light invasion of privacy must fail. Van der Stelt contests many of Turkeltaub's allegations but for the purpose of this Motion to Dismiss understands that the Court will assume well-pleaded allegations (but not legal conclusions) to be true. Several of the statements that Turkeltaub alleges are defamatory were made outside of the applicable statute of limitations and should be summarily dismissed. *All* of the statements that Turkeltaub alleges to be defamatory explicitly concern van der Stelt's allegations, in the instant Complaint, that Turkeltaub sexually harassed her. Turkeltaub's Counterclaim is nothing more than an effort to silence van der Stelt and interfere with her ability to exercise her statutory rights. Defamation law, and the relevant anti-discrimination statutes, are specifically designed to prohibit such a chilling effect. The allegedly defamatory statements are protected by absolute and conditional privileges because they were made preliminary to or in the course of judicial proceedings, for the purpose of fair reporting, and in order to protect common interests.

Even if such privileges are not afforded, Turkeltaub's counterclaims should be dismissed because he cannot establish that van der Stelt's statements were false, given his admissions that he made sexually charged comments to van der Stelt, physically touched her on multiple occasions, and without permission or knocking, he entered a private bathroom that she was using in his home during a party. The Court may take judicial notice of materials referenced in the Counterclaim and the pleadings without converting this motion to dismiss into a motion for summary judgement, and thus, van der Stelt refers to her Complaint itself when the Counterclaim offers a

1

mischaracterization of it and attaches four exhibits to aid the Court's evaluation of her motion to dismiss.

## I.    BACKGROUND

Turkeltaub is the Director of the Cognitive Recovery Lab ("CRL") at Georgetown University, "which focuses on research to improve care for people who live with aphasia and other language processing difficulties after suffering a brain injury, such as stroke." Countercl. ("CC") ¶ 1. In July 2018, van der Stelt began working in Turkeltaub's lab as a Lab Manager and Research Speech-Language Pathologist ("SLP"). CC ¶ 4 (Feb. 1, 2024), ECF No. 13. Turkeltaub directly supervised van der Stelt. Compl. ¶ 22 (July 31, 2001), ECF No. 1; Turkeltaub's Answer ¶ 22 (Feb. 1, 2024), ECF No. 13. In Spring 2020, van der Stelt accepted a PhD offer into Georgetown University's Interdisciplinary Program in Neuroscience ("IPN") in furtherance of achieving her long-term goal of completing a PhD program in clinical research. CC ¶ 6. After starting her PhD program, van der Stelt continued working in Turkeltaub's lab until October 26, 2022. *Id.*  ¶¶ 6, 116.

### A.  Turkeltaub's Interactions with van der Stelt as Described in his Counterclaim, Admitted in his Answer, and his Public Statements.

In or around 2020, Turkeltaub's relations with van der Stelt became less "formal".  *Id.* ¶ 59.  Turkeltaub made comments to van der Stelt that were sexual in nature including jokes about sexually transmitted diseases, such as syphilis.  *Id.* ¶ 60; *see also* Compl. ¶¶ 36, 41, 42, 44–46 (describing documents and emails containing sexually charged comments by Turkeltaub); Answer ¶¶ 36, 41, 42, 44-46 (admitting to potential existence of documents and not identifying any facts inconsistent with the documents). On multiple occasions, Turkeltaub had physical contact with van der Stelt by holding her hand or hugging her. *E.g.*, Compl. ¶¶ 81, 103; Answer ¶¶ 81 (Turkeltaub admitting to holding van der Stelt's hand), ¶ 103 (Turkeltaub admitting to hugging

van der Stelt); CC ¶¶ 12, 67, 106 (Turkeltaub admitting he hugged van der Stelt). In the spring of 2022, Turkeltaub complimented van der Stelt's skirt and touched her skirt. CC ¶¶ 23, 83. Turkeltaub admits that he had "non-professional encounters" with van der Stelt. *Id.* ¶ 100.

In or around January 2021, Turkeltaub admits that van der Stelt attended a dissertation party at his home and that he entered a private bathroom that she was using to show her something. *Compare* Compl. ¶ 61 ("In or around January 2021, Ms. van der Stelt attended a dissertation party at Dr. Turkeltaub's house. Because of the COVID-19 pandemic, the party took place outdoors. At some point during the evening, Ms. van der Stelt went inside Dr. Turkeltaub's house to use the bathroom. While Ms. van der Stelt was in the bathroom, Dr. Turkeltaub opened the door, stepped inside the bathroom with her, and closed the door behind him. He told Ms. van der Stelt that he intentionally followed her inside the house and entered the bathroom to find her, and that he wanted to show her something behind the shower curtain.") *with* Answer ¶ 61 (admitting that van der Stelt attended a party at his house but denying remainder) *and* Ex. 1 ("Turkeltaub said he had entered the bathroom to show van der Stelt a feature of the house in the bathroom and denied that the incident was inappropriate.").

### B.  Van der Stelt's Sexual Harassment Claims and Complaint

On June 2, 2022, van der Stelt informed Turkeltaub of her intention to report his harassment to faculty member Sarah Snider. Compl. ¶ 93; Answer ¶ 93 (admitting Turkeltaub met with van der Stelt and denying "any implication of inappropriateness or wrongdoing" but not specifically denying that van der Stelt informed him of her intent to talk to Snider).  On June 4, 2022, during a dissertation party held at Turkeltaub's house, Rachel Galginaitis, Manager of the Georgetown Center for Brain Plasticity and Recovery, had a private conversation with van der Stelt. CC ¶¶ 106–07; Compl. ¶ 98. Turkeltaub was not present for this conversation. *See* Answer ¶ 98 (admitting lack of sufficient personal knowledge to attest to van der Stelt's conversation with Galginaitis).

On or around August 22, 2022, van der Stelt contacted the Title IX office to obtain information about pursuing a claim.  Compl. ¶ 106; Answer ¶ 106 (Turkeltaub acknowledging he doesn't have sufficient information to form a belief as to the truth of whether van der Stelt contacted the Title IX office in August 2022). In September 2022, Samantha Berner, Georgetown's Title IX coordinator, contacted van der Stelt to serve as a witness in an investigation of an anonymous complaint about Turkeltaub's inappropriate behavior. Compl. ¶ 111; Answer ¶ 111 (Turkeltaub acknowledging he doesn't have sufficient information to form a belief as to truth of whether van der Stelt was contacted in September 2022 by the Title IX office). In late October 2022, Turkeltaub learned that an anonymous complaint with the Office of Institutional Diversity, Equity, and Affirmative Action ("IDEAA") had been filed against him "accusing him of sexual harassment." CC ¶ 18. Turkeltaub understood that the complaint was based "on reports van der Stelt had made to a friend." *Id.*

Around the same time, "[o]n October 26, 2022, van der Stelt informed Turkeltaub by email that she planned to change thesis labs due to an 'ongoing uncomfortable and hostile work environment.'" CC ¶ 116. On or around November 9, 2022, van der Stelt notified Georgetown that she had retained counsel to represent her in her claim that Turkeltaub sexually harassed her. Compl. ¶ 121; Answer ¶ 121 (acknowledging Turkeltaub doesn't have sufficient information to form a belief as to the truth of whether van der Stelt notified Georgetown that she retained counsel in November 2022). On December 13, 2022, van der Stelt filed a formal Title IX complaint. Compl. ¶ 128; Answer ¶ 128 (stating that to the extent Plaintiff relies on the contents of a written document, the document speaks for itself ). Georgetown's Title IX investigation continued for approximately fourteen months, CC ¶ 19, culminating in a three-day hearing in December 2023,

CC ¶ 168. Prior to the hearing, van der Stelt withdrew her complaint and did not participate in the hearing.[1] *Id*. ¶ 167.

On July 31, 2023, van der Stelt filed the instant civil action alleging violations of Title IX of the Civil Rights Act of 1964, 20 U.S.C. § 1681 et seq. ("Title IX") and the D.C. Human Rights Act, D.C. Code § 2-1401.01 *et seq*. ("DCHRA").   ECF No. 1.   Georgetown University's newspaper, *The Hoya,* published an article referring to the Complaint and additional investigation and interviews conducted by the journalists.  Ex. 2, *The Hoya* Web Article on van der Stelt's Complaint (Aug. 24, 2023).   According to the article, "[t]he *allegations* include sexual jokes and innuendo and improper touching, such as long hugs and an attempt to stroke her inner thigh." *Id.* (emphasis added). Turkeltaub cites to the article and alleges that the it republished many of the "false statements" contained in van der Stelt's complaint. CC ¶ 161.

On February 1, 2024, Turkeltaub filed a Counterclaim against van der Stelt for allegedly making and disseminating defamatory remarks.   ECF No. 13. After filing his Counterclaim, *The Hoya* published a news article on Turkeltaub's countersuit in March. Ex. 2, *The Hoya* Web Article on Turkeltaub's Counterclaim (Mar. 19, 2024). On March 19, 2024, Turkeltaub's lawyer issued a press release on her law firm's public website about their representation of him and the outcome of the Title IX investigation, and included the full Counterclaim accessible on the webpage, as well as an extract of the August *Hoya* article and a link to the full article.  Ex. 3, McAllister Olivarius Website Press Release on Turkeltaub's Counterclaim (Mar. 19, 2024).[2]

---

[1]  In the August Hoya article, van der Stelt's attorney, Gary M. Gilbert, explained that "his client chose to withdraw her complaint because the university was unwilling to accommodate her final exam schedule [at University of Pittsburgh], which prevented her from attending the IDEAA hearings [at Georgetown]." Ex. 2.

[2]       https://mcolaw.com/professor-exonerated-by-title-ix-investigation-countersues-for-defamation/

### C. Turkeltaub's Allegations of Defamatory Statements Made by van der Stelt

Turkeltaub alleges that, "after leaving CRL," van der Stelt made defamatory statements, all of which expressly concern the sexual harassment to which she was subjected and her resulting complaint. CC ¶¶ 128-151. Specifically, Turkeltaub alleges the following statements were defamatory:

> a. Telling current and former IPN students that Turkeltaub sexually harassed her, including that he touched or tried to touch her thigh one time in a sexually harassing way;
> b. Telling current and former IPN students that Turkeltaub "groomed" female members of his lab;
> c. Telling members of Turkeltaub's professional community that he had sexually harassed her, including that he had once touched or tried to touch her thigh in a sexually harassing way;
> d. Disseminating the false statements contained in the Complaint to current CRL lab members, current and former IPN students, members of Turkeltaub's professional community, and media outlets.

CC ¶¶ 179, 186.

Turkeltaub does not allege that van der Stelt disseminated any information about her claims of sexual harassment beyond those that are evident in her Complaint. CC ¶ 129 (alleging van der Stelt made "vague' allegations that Turkeltaub sexually harassed her); ¶ 137 (alleging van der Stelt alluded to what Turkeltaub had "done"); ¶ 141 (alleging van der Stelt informed another student Turkeltaub had sexually harassed her); ¶ 148 (alleging that van der Stelt emailed a faculty member and stated that she was "experiencing some gender-related issues"); ¶ 151 (alleging generally that van der Stelt said Turkeltaub had "sexually harassed her"). All of the alleged defamatory allegations admittedly "formed part of her federal lawsuit." CC ¶ 131; *see also* CC ¶ 139 (alleging van der Stelt told another student that Turkeltaub had "touched her thigh"); ¶ 143 (alleging van der Stelt told a former colleague that Turkeltaub had "sexually harassed her, including touching her thigh"); ¶ 144 (alleging van der Stelt filed a "formal complaint" with NIH

6

alleging that he sexually harassed her, including by "try[ing] to stroke [her] inner thigh," and that Turkeltaub subsequently retaliated against her); ¶ 149 (alleging van der Stelt notified a faculty member "what [she] had reported to Title IX" including that Turkeltaub "had tried to stroke my thigh"). Several of the alleged defamatory statements expressly concern requests to others for assistance in "this lawsuit." *See, e.g., id.* ¶ 140 (alleging that van der Stelt asked a "graduate student to act as a character witness in this lawsuit.").

Numerous of Turkeltaub's allegations are either vague or relate to statements made by third parties, not by van der Stelt herself. Turkeltaub alleges that the civil action filed on July 31, 2013 contains generally "false statements that Turkeltaub sexually harassed" van der Stelt. CC ¶ 155. Throughout his Counterclaim, he generally alleges van der Stelt made defamatory statements but often does not identify the specific comments made or to whom they were made. *See id.* ¶ 133 (alleging that he heard from another student that van der Stelt "and her friends" made defamatory comments to "various IPN students" but failing to identify with specificity a single IPN student who actually heard the comment); ¶ 136 (alleging generally, without any detail, that van der Stelt spread a "defamatory story"); ¶ 142 (alleging that during the spring and summer of 2023, van der Stelt "contacted many people" while failing to identify a single person);  ¶ 151 (alleging that van der Stelt stated that "Turkeltaub had sexually harassed her" at a Women in Science and Education event "attended by female graduate students" but not identifying a single graduate student who was present or to whom van der Stelt allegedly made the comment). In addition, Turkeltaub's Counterclaim also includes several irrelevant allegations that third-party individuals made the same, or similar, defamatory comments about him. CC.  ¶ 130 (alleging defamatory statement made by Shiva Hasssenzadeh-Behbahani to Dr. Maryam Ghaleh, and other postdoctoral students, in November 2022 that Turkeltaub's lab was "going down"); *Id.* ¶ 133 (alleging Hassenzadeh-

Behbahani and Alix Fetch "discussed van der Stelt's allegations against Turkeltaub "with other Georgetown graduate students," who were not named); *Id.* ¶ 134 (alleging a postdoctoral student "heard from various IPN students" that van der Stelt "and her friends" had made defamatory statements). He also alleges that these third-parties defamed him by republishing van der Stelt's Complaint. See ¶¶ 156, 158, 159, 160. Without any support and based solely upon "information and belief," he alleges van der Stelt "knew" or "was aware" that the third parties were going to re-circulate the Complaint and "approved" their actions." CC ¶¶ 157-160.

## II.   LEGAL STANDARD

### A.  Motion to Dismiss Standard

A motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) "challenges the adequacy of a complaint on its face." *Tah v. Glob. Witness Pub'g, Inc.*, 413 F. Supp. 3d 1, 10 (D.D.C. 2019). Dismissal under Rule 12(b)(6) is appropriate when a plaintiff has failed to plead "enough facts to state a claim for relief that is plausible on its face" and to nudge his claims "across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A court must assume the truth of all well-pleaded factual allegations and construe reasonable inferences from those allegations in favor of the plaintiff." *Tah*, 413 F. Supp. 3d at 10. However, a court need not accept as true "a legal conclusion couched as a factual allegation." *Nunes v. WP Co. LLC*, 513 F. Supp. 3d 1, 5 (D.D.C. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). And the court need not accept as true "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Ashcroft v. Iqbal,* 556 U.S. 662, 663 (2009). If the complaint's allegations do not enable a court "to infer more than the mere possibility of misconduct" based on its "judicial experience and common sense," then the complainant has not shown plausible entitlement to any relief. *Stovell v. James*, 810 F. Supp. 2d 237, 244 (D.D.C. 2011) (quoting *Iqbal*, 566 U.S. at 679).

8

The standards that govern a motion to dismiss a complaint also apply to a counterclaim. *Kevin S. Bennett Tr. v. Bennett*, 561 F. Supp. 2d 22, 26 (D.D.C. 2008) (citation omitted). "In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court must construe the counterclaim in a light most favorable to the counterclaimant and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations." *Id*. (citation omitted).

The Court may take judicial notice of materials referenced in the Counterclaim and the pleadings without converting this motion to dismiss into a motion for summary judgement. *Vanover v. Hantman*, 77 F. Supp. 2d 91, 98 (D.D.C. 1999) (finding that a document that is "referred to in the complaint and is central to plaintiff's claim" may be considered without converting the motion to dismiss into one for summary judgment), *aff'd* 38 F. App'x 4 (D.C. Cir. 2022) (per curiam). This Court may rely on the actual document referenced in the Counterclaim (*i.e.*, van der Stelt's original Complaint), rather than accept mischaracterizations of those documents in Turkeltaub's Counterclaim. *Marsh v. Hollander*, 339 F. Supp. 2d 1, 5 n.4 (D.D.C. 2004) ("[W]here a document is referred to in the complaint and is central to plaintiff's claim, such a document attached to the motion papers may be considered without converting the motion to one for summary judgment.") (citing *Greenberg v. The Life Insurance Company of Va.*, 177 F.3d 507, 514 (6th Cir. 1999)); *Libre By Nexus v. BuzzFeed, Inc.*, 311 F. Supp. 3d 149, 151, 153-54 (D.D.C. 2018) (considering, without converting motion to dismiss to summary judgment, an online news article that was not attached to defamation complaint but referenced throughout complaint and was included as an exhibit to opposition because neither party disputed its authenticity and it was integral to asserted claim). Accordingly, four exhibits are attached for the Court's reference.

### B.  Legal Standards for Defamation and False Light Invasion of Privacy Claims

Under D.C. law, to establish liability for defamation, Turkeltaub must show "(1) the defendant made a false and defamatory statement concerning the plaintiff; (2)  the defendant published the statement without privilege to a third party; (3)  the defendant's fault in publishing the statement amounted to at least negligence; and (4) either the statement was actionable as a matter of law irrespective of special harm, or that its publication caused the plaintiff special harm." *Hourani v. Mirtchev*, 796 F.3d 1, 16 (D.C. Cir. 2015) (quotations and citation omitted)) (affirming judgment dismissing defamation claims for failure to state a plausible claim).

To plausibly allege an false light invasion of privacy claim, Turkeltaub must show: "(1) publicity (2) about a false statement, representation or imputation (3) understood to be of and concerning the plaintiff, and (4) which places the plaintiff in a false light that would be offensive to a reasonable person." *Blodgett v. Univ. Club*, 930 A.2d 210, 223 (D.C. 2007) (internal citation omitted) (affirming dismissal of defamation and false light claims).

"Where the plaintiff rests both his defamation and false light claims on the same allegations... the claims will be analyzed in the same manner." *Id.* (internal citation omitted); *see also Zimmerman v. Al Jazeera Am., LLC,* 246 F. Supp. 3d 257, 275 (D.D.C. 2017) (applying same analysis to both defamation and false light claims); *Parsi v. Daioleslam,* 890 F. Supp. 2d 77, 92 (D.D.C. 2012) ("[A] plaintiff may not avoid the strictures of the burdens of proof associated with defamation by resorting to a claim of false light invasion") (*citing Moldea v. New York Times Co.,* 22 F.3d 310, 319 (D.C. Cir. 1994).[3]

---

[33] Accordingly, for the purposes of this Motion, unless explicitly stated otherwise, Plaintiff refers to both claims as defamation claims, as all arguments contained herein apply to both torts.

Upon a motion to dismiss, a court must "decide whether the disputed article (1) contains express or implied verifiably false statements of fact, which (2) are reasonably capable of defamatory meaning or otherwise place appellant in an offensive false light." *Deripaska v. Associated Press*, 282 F. Supp. 3d 133, 140 (D.D.C. 2017) (citation omitted). Upon a motion to dismiss, a court must "decide whether the disputed article (1) contains express or implied verifiably false statements of fact, which (2) are reasonably capable of defamatory meaning or otherwise place appellant in an offensive false light." *Deripaska v. Associated Press*, 282 F. Supp. 3d 133, 140 (D.D.C. 2017) (citation omitted). The D.C. courts "adhere to the standard of whether, construing the complaint in the light most favorable to the plaintiff, 'it appears beyond doubt that [plaintiff] can prove no set of facts in support of his claim which would entitle him to relief.'" *Oparaugo v. Watts,* 884 A.2d 63, 77 (D.C. 2005) (quoting *Crowley v. North Am. Telecomm. Ass'n,* 691 A.2d 1169, 1172 (D.C. 1997)). However, despite not explicitly adopting a heightened standard, D.C. courts "consider whether the factual allegations are sufficient to permit appellees to respond to appellant's claim of defamation." *Oparaugo*, 884 at 77 (D.C. 2005); *Crowley,* 691 A.2d at 1172 (D.C. 1997) (not dismissing complaint that set out "the substance of the alleged defamatory statement," "the identification by employment of the persons" to whom the statement was made, and the date of the alleged statement); *Williams v. D.C.*, 9 A.3d 484, 492 (D.C. 2010) (reaffirming *Crowley* standard).

Statements made "during the course of, or preliminary to" judicial proceedings or statements that bear "some relation to the underlying proceedings" are subject to an absolute privilege. *Arneja v. Gildar*, 541 A.2d 621, 623 (D.C. 1988). Statements made while "exercising a right granted" under anti-discrimination laws also subject to an absolute privilege. *EEOC v. Virginia Carolina Vaneer Corp.,* 495 F. Supp 775, 778 (W.D. Va. 1980). Truth, or substantial

truth, is a complete defense to defamation and false light claims. *Armstrong v. Thompson*, 80 A.3d 177, 183 (D.C. 2013).

The statute of limitation for defamation claims is one year. *Mittleman v. United States*, 104 F.3d 410, 415 (D.C. Cir. 1997); D.C. Code § 12-301(a)(4).

## III. ARGUMENT

### A. The Statute of Limitations Bars Several Allegedly Defamatory Statements on Which Turkeltaub's Counterclaim Rests.

All alleged defamatory statements taking place prior to February 1, 2023, the date when Turkeltaub filed his counterclaim, are time-barred and cannot survive dismissal. The D.C. statute of limitations for defamation claims is one year from the date on which the allegedly defamatory statements were made. D.C. Code § 12-301(a)(4) (specifically prescribing a one-year statute of limitations "for libel, slander, assault, battery, mayhem, wounding, malicious prosecution, false arrest or false imprisonment"); *Provisional Gov't of Republic v. Am. Broad. Cos.*, 609 F. Supp. 104, 107–08 (D.D.C. 1985) (dismissing "any defamation allegations based on events which occurred prior to . . . one year before the complaint was filed"); *Wood v. Am. Fed'n of Gov't Emps.*, 255 F. Supp. 3d 190, 198 (D.D.C. 2017) (same).[4] Generally, a defamation cause

---

[4] It is well-established that the one-year statute of limitations also applies to Turkeltaub's false light claim. Although the D.C. Code does not prescribe a specific term for false light invasion of privacy, D.C. Code § 12-301, under D.C. law, "[i]f a stated cause of action is 'intertwined' with one for which a limitations period is prescribed, District courts apply the specifically stated period, not the three-year catch-all." *Mittleman*, 104 F.3d at 415. Thus, the federal courts have consistently applied the one-year statute of limitations to false light invasion of privacy claims under D.C. law. *E.g., id.* at 415-16 (holding the one-year statute of limitations claim applies to "a false light claim" because a defamation claims and false light claims protect the exact same interests – reputation and personal psyche); *Paul v. Jud. Watch, Inc.*, 543 F. Supp. 2d 1, 10 (D.D.C. 2008) (applying the one-year statute of limitations "to any invasion of privacy claims because such claims are types of defamation"); (Invasion of privacy is essentially a defamation type claim"); *see also Bond v. U.S. Dep't of Just.*, 828 F. Supp. 2d 60, 78 (D.D.C. 2011) (applying one-year statute of limitation to claim that was intertwined with defamation claim arising from same set of facts because the "claim stems directly from the harm to his reputation and emotional state that the alleged defamation caused."). The one-year term for defamation

of action accrues "at the time the injury actually occurs" if "the fact of an injury can be readily determined." *Mullin v. Wash. Free Weekly Inc.*, 785 A.2d 298, 298 (D.C. 2001). Otherwise, the "discovery rule" applies and "the statute of limitations will not run until plaintiffs know or reasonably should have known that they suffered injury due to defendants' wrongdoing." *Id.* at 298–99.

A defamation claim is untimely if the alleging party has actual or constructive knowledge of the defamation injury and cause outside of the time permitted by the statute of limitations. *Gonzalez Ramos v. ADR Vantage, Inc.,* No. 18-cv-1690 (APM), 2021 U.S. Dist. LEXIS 186265, at **22–24 (D.D.C. Sept. 29, 2021) (finding plaintiff's defamation and false light claims to be time barred because plaintiff "knew of the existence of an injury, its cause in fact, and some evidence of alleged wrongdoing" outside the one-year statute of limitations period from when he filed his complaint).

Turkeltaub had direct knowledge of van der Stelt's allegations as early as June 2, 2022, when van der Stelt informed him of her intention to report his actions to faculty member Sarah Snider. Compl. ¶ 93; Answer ¶ 93 (admitting Turkeltaub met with van der Stelt and denying "any implication of inappropriateness or wrongdoing" but not specifically denying that van der Stelt informed him of her intent to talk to Snider).  Additionally, in October 2022, Georgetown's Title IX contacted him and notified him that an anonymous complaint had been filed against him "accusing him of sexual harassment." CC ¶ 18. Turkeltaub understood that the complaint was based "on reports van der Stelt had made to a friend." *Id.* As Turkeltaub alleges van der Stelt's

---

applies here because Turkeltaub's false light claim is predicated on the exact same facts and injury as his defamation claim, and, thus, is completely intertwined with them. Turkeltaub incorporates the same facts by reference and enumerates the same alleged statements in both counts. *Compare* CC ¶¶ 178-84 *with* CC ¶¶ 185-91.

claims that he sexually harassed her are defamatory, he had knowledge of the alleged injury and wrongdoing prior to the start of the limitations period. Thus, the discovery rule does not extend his statute of limitations window. *See Wallace v. Skadden, Arps, Slate, Meagher & Flom*, 715 A.2d 873, 882–83 (D.C. 1998) (rejecting plaintiff's premise that "continuing tort" doctrine should apply for defamation claims whereby limitations period would not begin to run until alleged defamatory conduct ceased). As a result, Turkeltaub's Counterclaim may only encompass alleged defamatory statements made after February 1, 2023, which is one year prior to the filing of his Counterclaim on February 1, 2024. D.C. Code § 12-301(a)(4). The allegedly defamatory statements that van der Stelt allegedly made earlier than February 1, 2023—to Gershman in November 2022, CC ¶ 129, to Hassanzadeh-Behbahani in or prior to November 2022, *id.* ¶ 130, to an unnamed first-year student in or around January 2023, *id.* ¶ 131, or to any current or former IPN student leading up to February 2023, *Id.* ¶ 134, all fall outside of this statutory time period and are time-barred.

### B. Alleged Defamatory Statements Made on or After February 1, 2023 Should be Dismissed Because They are Protected by an Absolute Privilege.

Where absolute privilege applies in defamation cases, "[the Court] need not decide whether [the] alleged statements were defamatory." *Arneja v. Gildar*, 541 A.2d 621, 622 n.2 (D.C. 1988). In considering a Rule 12(b)(6) motion, it is appropriate for a court to decide any preliminary questions of absolute privilege.  *Messina v. Fontana*, 260 F. Supp. 2d 173, 179 (D.D.C. 2003) (dismissing claims for libel against attorney and law firm due to judicial proceedings privilege, which covered pre-suit statements).

Turkeltaub's Counterclaim must be dismissed in its entirety on the grounds of absolute privilege. The Counterclaim establishes that the alleged defamatory statements were made in

14

connection with judicial, or quasi-judicial proceedings, and in the course of van der Stelt's exercise

of her rights under the DCHRA in pursuing her claims of sexual harassment.

1.  *Statements Made by van der Stelt in Connection with Judicial Proceedings or Quasi-Judicial Proceedings are Absolutely Privileged.*

Any alleged defamatory statements that are not time-barred are absolutely privileged due

to their relation to quasi-judicial or judicial proceedings.  The judicial proceedings privilege is

absolute and applies to any statements made (1) "during the course of, or preliminary to a

judicial proceeding" which (2)  bear "some relation to the underlying proceeding." *Arneja,* 541

A.2d at 623 (internal citations omitted) (affirming dismissal of slanderous remarks preliminary to

proposed judicial proceeding as being absolutely privileged). The judicial proceedings privilege

encompasses quasi-judicial proceedings and preliminary proceedings, such as investigations.

*Stith v. Chadbourne & Parke, LLP*, 160 F. Supp. 2d 1, 8 (D.D.C. 2001) (citation omitted)

(finding that communications and statements made during investigatory phase of the Equal

Employment Opportunity Commission ("EEOC") quasi-judicial process were entitled to

absolute privilege)); *Fogel v. Univ. of the Arts*, No. 18-5137, 2019 U.S. Dist. LEXIS 51763, *25-

26 (E.D. Pa. March 27, 2019) (dismissing defamation claims arising from statements to Title IX

coordinator to initiate an investigation based on finding that Title IX investigation was an

absolutely privileged quasi-judicial proceeding); *Monge v. Univ. of Pennsylvania*, No. CV 22-

2942, 2023 LEXIS 104417, *15-16 (E.D. Pa. June 14, 2023) (citing *Fogel* positively); *see also*

*Dixon v. Univ. of S. Cal.*, No. 23-55079, 2024 U.S. App. LEXIS 4761, at *2 (9th Cir. Feb. 29,

2024) (considering plaintiff's Title IX proceeding to be a quasi-judicial proceeding).

The second prong is to be "very liberally construed." *Arneja,* 541 A.2d at 624. As a

corollary of the relatedness requirement, the privilege is maintained when the alleged defamatory

statement is made to a person having an interest in or connection to the proceeding. *Messina v. Krakower*, 439 F.3d 755, 762 (D.C. Cir. 2006). The statements "must have been relevant" but "need not [have been] relevant in the legal sense" but rather "need only have enough appearance of connection with the case so that a reasonable man might think them relevant." *Park v. Brahmbhatt,* 234 A.3d 1212, 1220 (D.C. 2020) (internal citations omitted); *see also Sturdivant v. Seaboard Serv. Sys., Ltd.,* 459 A.3d 1058, 1059 (D.C. 1983) ("It is well settled that a defamation action may not be grounded 'on a party's statements preliminary to or in the course of a judicial proceeding so long as the defamatory matter has some relation – a standard broader than legal relevance – to the proceeding") (quoting *Brown v. Collins,* 402 F.2d 209, 212 (D.C. 1968)); *Marsh v. Hollander,* 339 F. Supp. 2d 1, 6 (D.D.C. 2004) ("[S]tatements made for the purpose of preparing for litigation, or attempting to settle issues prior to commencing litigation are covered by this absolute privilege").

Even aside from the fact that many of the alleged defamatory statements are time-barred, taking as true all allegations set forth in Turkeltaub's complaint, the alleged defamatory statements were related to, or directly in connection with, the Title IX process, van der Stelt's IDEAA complaint, and this litigation and are absolutely privileged given their connection to quasi-judicial and judicial proceedings. On or around August 22, 2022, van der Selt contacted the Title IX office to obtain information about pursuing a claim. Compl. ¶ 106; Answer ¶ 106 (Turkeltaub acknowledging he doesn't have sufficient information to form a belief as to the truth of whether van der Stelt contacted the Title IX office in August 2022). An anonymous complaint concerning Turkeltaub's sexual harassment was filed with Georgetown's Title IX office and van der Stelt was asked to participate in that investigation as a witness in or around September 2022. Compl. ¶ 111, Answer ¶ 111 (Turkeltaub acknowledging he doesn't have sufficient information to form a belief

as to truth of whether van der Stelt was contacted in September 2022 by the Title IX office). Turkeltaub learned of the anonymous complaint alleging that he sexually harassed van der Stelt in or around October 2022. CC ¶ 18. On or around November 9, 2022, van der Stelt notified Georgetown that she had retained counsel to represent her in her claim that Turkeltaub sexually harassed her. Compl. ¶ 121; Answer ¶ 121(Turkeltaub acknowledging he doesn't have sufficient information to form a belief as to the truth of whether van der Stelt notified Georgetown that she retained counsel in November 2022). All of the statements Turkeltaub alleges are defamatory were made after van der Stelt "[left] CRL" in October 2022 and after the Title IX office was admittedly in receipt of at least one complaint alleging Turkeltaub sexually harassed van der Stelt. CC ¶ 128 ("After leaving CRL, van der Stelt spread false and defamatory statements about Turkeltaub"); CC ¶ 18 (Turkeltaub stating that he learned a Title IX complaint "accusing him of sexual harassment" of van der Stelt was filed in October 2022); *see also* ¶¶ 129-151 (setting forth the alleged defamatory statements, all of which occurred after October 2022).

As an initial matter, the actual filing of van der Stelt's Complaint, and the allegations contained in her Complaint, which was filed on July 31, 2023, are clearly and unambiguously afforded absolute protection by the judicial proceeding privilege.   ECF No. 1; CC ¶ 155 ("On July 31, 2023 van der Stelt published her Complaint containing false statements that Turkeltaub sexually harassed her."). Thus, all statements in the pleading are absolutely privileged. *See Arneja*, 541 A.2d at 623; *Mohler v. Houston,* 356 A.2d 646, 647 (D.C. 1976) ("statements in pleadings . . .are absolutely privileged").

As a corollary to the relatedness provision, van der Stelt's allegedly defamatory statements were made to persons with a connection or interest in the investigations or related proceedings, such as individuals who may have witnessed or known of Turkeltaub's sexually harassing behavior

against van der Stelt or in the lab generally.  *Messina*, 439 F.3d at 762. Van der Stelt was entitled to have discussion with these individuals in order to develop and litigate her claims effectively.

For example, Turkeltaub admits that van der Stelt approached another IPN student in July 2023 for the purpose of asking the student to testify as a character witness in the instant case. CC ¶ 140.  This IPN student had knowledge of van der Stelt's claims from previous observations of van der Stelt and Turkeltaub during the previous year. *Id.* ¶ 137. Thus, van der Stelt's communication with the IPN student were made to a person with "interest in or connection to the prospective proceeding" because van der Stelt made the remark to a person whom she reasonably believed had knowledge relevant to her case and whom she was asking to serve as a witness. *Messina*, 439 F.3d at 762. Similarly, van der Stelt's statements to Ghaleh are protected by the judicial proceeding privilege. *See* CC ¶ 143. By Turkeltaub's own admission, Ghaleh was a direct witness to van der Stelt's and Turkeltaub's interactions during the period of van der Stelt's allegations. *Id*. Ghaleh also contributed information as part of the IDEAA's investigation into the Title IX complaint against Turkeltaub. *Id.* Van der Stelt thus communicated about her allegations against Turkeltaub at a time when Ghaleh was a potential witness. *Id.* Other individuals who Turkeltaub asserts van der Stelt communicated with, including Rachel Galginaitis, are specifically identified in van der Stelt's complaint and thus clearly had potentially relevant information to her claims at the time van der Stelt allegedly communicated with them. *See* CC ¶ 128 (identifying Galginaitis as an individual to whom "van der Stelt spread false and defamatory statements"); Compl. ¶ 98 (identifying Galginaitis as a witness to at least one interaction between Turkeltaub and van der Stelt). Other individuals provided comment to *The Hoya* about their knowledge of the relevant facts, further underscoring that they had potentially relevant information at the time van der Stelt spoke with them and about which van der Stelt was entitled to inquire.  *See* Ex. 1 (quoting

Carolyn Gershman); CC ¶ 129 (alleging that van der Stelt spoke to Gershman about her allegations of sexual harassment).   Accordingly, absolute judicial proceeding privilege applies to van der Stelt's allegedly defamatory communications all of which occurred after the Title IX office commenced an investigation into claims that Turkeltaub sexually harassed van der Stelt as they easily meet the "liberal" definition of relevance under the second prong.  *Park,* 234 A.3d at 1220.

Van der Stelt's complaint to NIH is also protected by the judicial proceeding privilege. NIH policy requires the reporting of adverse actions taken against its grantees with respect to allegations of harassment or retaliation. Ex. 4, NIH Webpage on Grants and Funding (last updated May 10, 2022). This policy is relevant to the Court's consideration and decision as a matter of law as to whether the NIH complaint is privileged because Turkeltaub's Counterclaim directly addresses Van der Stelt's NIH Complaint. CC ¶ 144. Turkeltaub admits as much by noting that the contents of van der Stelt's complaint to NIH was shared with Georgetown "[c]onsistent with NIH protocol. CC ¶ 145. Given that Turkeltaub was an NIH grantee at the time, *id.* ¶ 144, the outcome of van der Stelt's Title IX investigation is factually intertwined with NIH's own internal processes for its grantees. Van der Stelt's complaint to NIH was thus a reasonable exercise of notifying appropriate individuals with an interest in the outcome of harassment or retaliation related proceedings involving their grantees and were directly related to her pending complaint. *Park,* 234 A.3d at 1220.  Since van der Stelt's NIH complaint is protected under the judicial proceeding privilege, any statements made to them are subject to an absolute privilege.[5] .

---

[5] Should the Court find and absolute privilege does not apply to van der Stelt's NIH complaint, alternatively, her complaint would be protected under the common-interest privileges discussed *infra* and because he can't establish the elements of a defamation claim.

2.  *Van der Stelt's Alleged Statements are Subject to an Absolute Privilege because She Was Exercising her Legal Rights under the DCHRA.*

Federal courts have held there exists "an absolute privilege against defamation . . .resulting from exercising a right" under the law.[6] *EEOC v. Virginia Carolina Veneer Corp.,* 495 F.Supp. 775, 778 (W.D. Va. 1980). The DCHRA makes it unlawful for an educational institution or employer to discriminate against an individual on the basis of sex. D.C. Code §§ 2-1402.41; 2-1402.11. Discrimination on the basis of sex includes sexual harassment. *Id.* The DCHRA also includes the following clause prohibiting retaliation:[7]

> It shall be an unlawful discriminatory practice for any person to require, request, or suggest that a person retaliate against, interfere with, intimidate or discriminate against a person, because that person has opposed any practice made unlawful by this chapter, or because that person has made a charge, testified, assisted, or participated ***in any manner*** in an investigation, proceeding or hearing authorized under this chapter.[8]

D.C. Code § 2-1402.6 (emphasis added)

It is well-established that the "participation clause shields an employee from retaliation on the basis of false or malicious statements made during EEO proceedings." *Egei v. Johnson,* 192 F. Supp. 3d 81, 89 (D.D.C. 2016). In *Egei,* the Court likened this protection to the judicial proceeding protection and explained that the "broad protection is consistent with the remedial purpose of Title VII's antiretaliation provisions" as "activities under the participation clause are

---

[6] Van der Stelt intends to request leave to amend her complaint to include the counterclaim, and other recent actions, as additional acts of retaliation.

[7] The anti-retaliation provision of the DCHRA is virtually identical to the anti-retaliation provision of Title VII of the Civil Rights Act of 1964.  *Compare* D.C. Code § 2-1402.61 *with* 42 U.S.C. § 2000(e).  In interpreting the DCHRA, courts "often look to Title VII for guidance". *Daka, Inc., v. Breiner,* 711 A.2d 86, 102 (D.C. 1998).

[8] The prohibition on retaliation for "oppos[ing] a practice made unlawful" is referred to as the "opposition clause" and the prohibition on "ma[king] a charge, testif[ying], assist[ing], or participat[ing] in any manner in an investigation, proceeding or hearing authorized under this chapter" is referred to as the "participation clause."

essential to the machinery set up by Title VII." *Id. (citing Laughlin v. Metro. Wash. Airports Auth.,* 149 F.3d 253, 259 n.4 (4th Cir. 1998)). Anything less than absolute privilege would chill the activity the anti-discrimination laws were intended to encourage and  Title VII's scheme would be "frustrated." *Id.*at 90*; see also Sias v. City Demonstration Agency,* 588 F.2d 629, 695 (9th Cir. 1978) ("If the availability of . . .protection [under the participation clause] were to turn on whether the employee's charge were ultimately found to be meritorious, the resort to the remedies provided by the Act would be severely chilled."); *Blizzard v. Newport News Redevelopment & Housing Auth.,* 670 F. Supp. 1334 (Apr. 16, 1984) ("[t]he participation clause . . .grants an absolute privilege for filing a claim with the EEOC. There is no requirement in the statute that the discrimination be meritorious . . .[t]he filing of a claim with the EEOC is a protected right, the exercise of which cannot be infringed by the employer.").

Given the absolute privilege that extends to protected activity under the participation clause, courts have found "[w]hen an employer files a defamation claim in response to an employee's assertion of Title VII or ADEA rights, the employer is not asserting valid legal rights, because employees have unfettered rights to file discrimination suits – regardless of their merits." *Blistein v. St. John's College,* 860 F. Supp. 256, 269 (Md. 1994); *see also Shabazz v. PYA Monarch, LLC* 271 F. Supp. 2d 797, 804 (E.D. Va. 2003) ("[T]here are many cases that stand for the proposition that there is an absolute privilege to the filing of a defamation charge by an employer against an employee who files a charge of discrimination with the EEOC"); *EEOC v. Hobson Bearing Int'l, Inc.,* No. 3:16-cv-5034 SWH, 2016 U.S. Dist. LEXIS 119641 (W.D. Mo. Aug. 25, 2016) (ordering the employer to dismiss its lawsuit against the employee with prejudice where the lawsuit and enjoining the employer from bringing "any other lawsuit or counterclaims against [the employee] which are based upon her having filed a charge with the

[EEOC], including but not limited to defamation"); *Cooper v. Pic-Walsh Freight Co.*, No. 75-403 C(1), 1976 U.S Dist. LEXIS 17022, at *3 (E.D. Mo. Jan. 23, 1976) ("To entertain claims in the nature of malicious prosecution for the filing of a single Title VII complaint would seriously undermine the clear policy of [Title VII] to protect an employee who utilizes the procedures provided by Congress for the vindication of his right to be free from unlawful discrimination in employment.").

Accordingly, any statements van der Stelt made "testif[ying], assist[ing], or participat[ing]  in an investigation or hearing" related to her claims under the DCHRA, including the statements contained in her Complaint, are afforded an absolute privilege. *See  Egei,* 192 F. Supp. 3d at 89; *EEOC,* 495 F. Supp. at 5. Similarly, for the reasons explained *supra,* given that the statements were made to third parties who were potential witnesses in her DCHRA claims as they possessed information relevant to her claims, the statements were part of van der Stelt's participation in a proceeding related to her claims under the DCHRA.[9]

## C.  The Statements at Issue are Subject to a Qualified Privilege.

Where a statement is subject to a qualified privilege, "the defendant 'will be presumed to have been actuated by pure motives in its publication [, and] [i]n order to rebut this presumption, express malice or malice in fact must be shown [by the plaintiff].'" *Moss v. Stockard,* 580 A.2d 1011, 1024 (D.C.1990)*,* (citing *Ford Motor Credit v. Holland,* 367 A.2d 1311, 1314 (D.C. 1977) (other citation omitted)). Whether a statement is privileged is a question of law. *Carter v. Hahn,* 821 A.2d 890, 894 (D.C. 2003).   Here, the statements were subject to both the fair reporting

---

[9] At the very least, these statements are entitled to qualified privilege. *See  Egei v. Johnson,* 192 F. Supp. 3d at 89. As discussed further *infra,* Turkeltaub cannot meet his burden to overcome a qualified immunity by demonstrating malice.

privilege and the common interest privilege and Turkeltaub cannot plausibly establish actual malice to overcome these privileges.

        1.   *Van der Stelt's Alleged Dissemination of her Federal Court Complaint is Protected by the Fair Reporting Privilege.*

The fair reporting privilege protects any alleged dissemination of van der Stelt's complaint to *The Hoya,* CRL lab members, IPN students, or other Georgetown students or faculty (CC ¶¶ 155–161, 163), and forecloses any liability for Turkeltaub's corresponding defamation and false light claims. Having two prongs, the fair reporting privilege is a qualified privilege that "bars defamation claims against [(1)] 'full and accurate' publications of [(2)] official government proceedings." *Myers v. D.C. Hous. Auth.*, No. 1:20-cv-00700-APM, 2021 U.S. Dist. LEXIS 57805, at *7 (D.D.C. Mar. 26, 2021) (explaining the purpose of the privilege is in recognition of "the interest of the public in having information made available to it as to what occurs in official proceedings and public meetings") (internal quotation marks and citations omitted). Regarding the first prong, "[a] 'full' publication recites the 'essential and important features' of the underlying document.'" *Id.* (internal quotation marks omitted). "Further, where it is 'apparent either from specific attribution or from the overall context that the article is quoting, paraphrasing, or otherwise drawing upon official documents or proceedings,' the publication includes the underlying document's essential and important features and thus qualifies for the privilege." *Id.* (quoting *Dameron v. Wash. Mag.,* 779 F.2d 736, 739 (D.C. Cir. 1985)). "A report is substantially accurate where it is clear from the publication's 'overall context' that an 'average reader' would understand the publication as a 'report on or summary of an official document or proceeding.'" *Id.* at *8. As for the second prong, "pleadings filed in judicial proceedings qualify as official records under the privilege even before any official judicial action is taken[.]" *Harper v. Walters*, 822 F. Supp. 817, 824 (D.D.C. 1993), *aff'd*, 40 F.3d 474 (D.C. Cir. 1994).This privilege is not limited to those in the

business of reporting news and "extends to *any person* who makes an oral, written or printed report

to pass on the information that is available to the general public." *Id*. at *15 (citing Restatement

(Second) of Torts § 611 cmt. c (emphasis added)).

Here, Turkeltaub's assertion that van der Stelt's attorneys "sent a Copy of the Complaint

to" *The Hoya* is protected by the Fair Reporting Privilege. CC ¶ 161; *see also* CC ¶ 162 (discussing

the distribution of the Complaint); *Id*. ¶ 186 (alleging that van der Stelt "[d]isseminated the false

statements contained in the Complaint"). Turkeltaub does not allege that van der Stelt made any

statements beyond what was contained in the Complaint.  *Id.*  Rather, Turkeltaub alleges only that

van der Stelt sent the entire Complaint, meaning a "full and accurate" copy of the public filing,

and thus the publication satisfies both elements required for protection under the Fair Reporting

Privilege. *Id.*; *Myers*, 2021 U.S. Dist. LEXIS 57805, at *7.

Similarly, while van der Stelt cannot be held liable for any statements made or publicized

by *The Hoya*, the fair reporting privilege similarly applies to any articles it published. More

specifically, the August *Hoya* article clearly describes van der Stelt's reports of sexual harassment

as allegations, *e.g*.,  "alleging she was retaliated against"; "The lawsuit says . . ."; "The allegations

include . . ."; "The Complaint also alleges . . ."; "The lawsuit alleges . . ."; "According to the

lawsuit . . ." Thus, the article makes clear that it is "quoting, paraphrasing, or otherwise drawing

upon official documents or proceedings." Ex. 2; *Dameron*, 779 F.2d at 739. Other facts support

the application of the fair reporting privilege to *The Hoya* article. For example, in the spirit of fair

reporting, the reporter for *The Hoya* interviewed both van der Stelt and Turkeltaub's lawyer, Ann

Olivarius, whose four statements are included in the article. Ex. 2.

Under similar circumstances, the court in *Myers* found that an average reader would have

understood that a post on a law firm website reporting on a complaint in federal court fairly and

accurately summarized the contents of that complaint because, like the article at issue here, the publication was categorized as "news" and used the word "allege" repeatedly when referencing the complaint, and the article matched those in the complaint itself. *Myers*, 2021 U.S. Dist. LEXIS 57805 at **11–12. Thus, the fair reporting privilege should apply in the instant case given the similarities it shares with the facts in *Myers*.

     For the same reason, the fair reporting privilege applies to those individuals whom Turkeltaub alleges disseminated the complaint.[10] Relatedly, this Court can conclude that any indirect dissemination of van der Stelt's complaint is also protected by the fair reporting privilege. Turkeltaub repeatedly alleges, with little accompanying detail, that van der Stelt knew and approved of other individuals—including Galginaitis (CC ¶ 157), an anonymous IPN student (*id.* ¶ 158), Hassanzadeh-Behbahani (*id.* ¶ 159), and Fetch (*id.* ¶ 160)—disseminating her Complaint. However, even when taking all facts as true, this re-publication satisfies the two prongs to be protected as fair reporting.  First, Turkeltaub has alleged only that these third parties distributed the Complaint, not that van der Stelt caused her Complaint to be disseminated in a way that obfuscated the "full and accurate" portrayal of the Complaint's underlying substance. *Id.; see also Myers,* 2021 U.S. Dist. LEXIS 57805, at *6. Nor does Turkeltaub dispute that the disseminated complaint was part of official government proceedings. CC ¶¶ 157, 158, 159, 160, and 163.

     2.  *Van der Stelt's Comments Are Subject to the Common Interest Privilege.*

     Like other qualified privileges, the common interest privilege is "based upon a public policy that recognizes that it is desirable that true information be given whenever it is reasonably necessary for the protection of the actor's own interests, the interests of a third person or certain

---

[10] Moreover, van der Stelt cannot be liable for the re-publication by such third parties as the re-publication was not "reasonably foreseeable." *See Foretick v. Glamour,* 753 F. Supp. 955, 961 (D.D.C. 1990) (explaining the original publisher is liable for republication "only if the republication was reasonably foreseeable.").

interests of the public.'" *Moss,* 580 A.2d  at 1024  (quoting Restatement (Second) of Torts, tit. B introductory note (Am. Law Inst. 1977)). A statement is protected by the common interest privilege if it is "(1) made in good faith, (2) on a subject in which the party communicating has an interest, or in reference to which he has or honestly believes he has a duty (3) to a person who has such a corresponding interest or duty." *Id.* (citations omitted).

Here, all of the people to whom van der Stelt herself made allegedly defamatory statements have a common interest in preventing sexual harassment in educational settings and ensuring that Georgetown's Title IX investigations into allegations of sexual harassment reach a just and fair result and protect students from retaliation. The individuals specifically identified to whom van der Stelt made allegedly made defamatory statements were current or former students in her program, or faculty members at the University, or at the NIH. *See e.g.* CC ¶¶ 179, 186. Van der Stelt reasonably believed that she had true information that might be necessary for the protection of other students in the program, some of whom were more junior than she and had less extensive experience working with Turkeltaub. In addition, all the individual who allegedly received allegedly defamatory communications from van der Stelt were possible witnesses in Georgetown's investigation into her Title IX complaint. *Cf. Roland v. d'Arazien*, 685 F.2d 653, 655 (D.C. Cir. 1982) (finding a common interest in "the smooth and efficient operation" of the congressman's office where a legislative aide told his employer, a congressman, that a recently-hired intern had sexually-assaulted his wife and he could not work with the intern, with the result that the congressman fired the intern without "adjudicating the matter"); *Audain v. Am. Univ.*, Civ. No. 94-2676 (TFH), 1997 U.S. Dist. Lexis 21730, at *3(D.D.C. Dec. 11, 1997) (finding a common interest where a law professor circulated a complaint against his former law school employer to law schools interested in hiring him and to former colleagues who had agreed to act as references).

Similarly, van der Stelt's statements were all undertaken in furtherance of the public policy goals of DCHRA and Title IX. *Moss,* 580 A.2d at 1024 (recognizing common interest privilege may apply where "interests of the public" are concerned) quoting Restatement (Second) of Tort, tit. B introductory note (Am. Law Inst. 1977).

3.   *Defendant cannot Plausibly Establish Malice.*

Although the fair reporting privilege may be defeated by a showing of actual malice, Turkeltaub has failed to allege facts from which malice can plausibly be inferred.  "The standard of actual malice is a daunting one." *Parsi,* 891 F.Supp.2d at 81 (quoting *McFarlane v. Esquire Magazine,* 74 F.3d 1296, 1308 (D.C. Cir.1996)). The plaintiff must allege that the information was published "*with knowledge* that it was false or *with reckless disregard* of whether it was false or not." *Harper,* 822 F. Supp at . 828–29 (quoting *New York Times Co. v. Sullivan,* 376 U.S. 254, 280 (1964))(emphasis added).Turkeltaub's allegations fall well short of any plausible inference of actual malice. He alleges only that van der Stelt's "false, misleading and defamatory statements about [him] were published with malice or wanton, reckless, and/or willful disregard for the truth as van der Stelt knew or with reasonable diligence would have known at the time of their publication that the statements were false and misleading." CC ¶¶ 180, 189. Here, Turkeltaub presents a legal conclusion but has not plausibly pled actual malice.  This Court cannot accept "a legal conclusion couched as a factual allegation" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678 Courts have routinely held that this type of conclusory allegation is insufficient to plausibly establish malice. *See Nunes,* 513 F. Supp. 3d at 8 (dismissing a defamation complaint that was afforded the fair reporting privilege because a statement supporting malice which offers "no more than 'labels and conclusions' and a reference to the legal standard" did not satisfy the pleading requirements"); *Arpaio v. Cottle,* 404 F. Supp. 3d 80, 84 (D.D.C. 2019) (dismissing a defamation claim where a

statement that the defendant acted with malice because they "knew the statements made . . .were false and/or recklessly disregarded their falsity" and were made with "malice" was insufficient to establish malice and overcome the qualified privilege).

With respect to the dissemination of the Complaint, including sending a complete and accurate copy of the Complaint, to *The Hoya* furthers the fair reporting privilege's purpose of making "what occurs in official proceedings and public meetings" available to the public.  *Myers*, 2021 U.S. Dist. LEXIS 57805, at *7.  That the Complaint was sent without any commentary only further underscores that it furthered the goal of providing the public with information about a public proceeding.  CC ¶¶ 161, 162, 179, 186.

With respect to the common interest privilege, once it is established, the defendant "will be presumed to have been actuated by pure motives in its publication." *Moss v. Stockard*, 580 A.2d 1011, 1024 (D.C. 1990) and this presumption can only be overcome with a showing of "express malice" or "malice in fact." *Id.* In this context, the definition of malice "in substance come down to the equivalent of bad faith.'" *H.E. Crawford Co. v. Dun & Bradstreet, Inc.,* 241 F.2d 387, 395 (4th Cir.1957); *Mosrie v. Trussell*, 467 A.2d 475, 477 (D.C. 1983)(same); *Ford Motor Credit Co. v. Holland*, 367 A.2d 1311, 1314 (D.C. 1977)(citation omitted). To meet this standard, the court must find that the publication itself was so "excessive, intemperate, unreasonable, and abusive as to forbid any other reasonable conclusion than that defendant was actuated by express malice." *Ashford v. Evening Star Newspaper Co.*, 41 App. D.C. 395, 405 (D.C. Cir. 1914); *Moss*, 580 A.2d at 1024. Otherwise, malice "must be proved by extrinsic evidence." *Id.* In determining whether malice is established, the court "looks to the primary motive by which the defendant is apparently inspired." *Mosrie v. Trussell,* 467 A.2d 475, 477 (D.C. 1983)(further explaining "the mere

existence of ill will on the part of the publisher toward the subject of the publication does not defeat the publisher's privilege)."

The allegations make clear that the primary purpose of the publication was in furtherance of the interest that it is entitled to protect rather than malice. Van der Stelt's statements about the sexual harassment she experienced further the purpose of the privilege to encourage speech that protects other individuals and the public. *Mastro v. Potomac Elec. Power Co.,* 447 F.3d 843, 859 (D.C. Cir. 2006) (explaining whether the statements were communicated to those with a "common interest" and "reasonably calculated to protect or further the interest" of the privilege is relevant to assessing malice.). Here, creating a workplace and an educational institution free of sexual harassment is clearly consistent with public policy goal and in fact, this type of speech is explicitly encouraged by the anti-retaliation provision of the DCHRA. *See Egei*, F. Supp. 3d, at *89 (explaining that pursuing claims of discrimination is critical to the success of anti-discrimination laws).

Finally, as discussed further *infra* at Section D(1), Turkeltaub cannot plausibly demonstrate malice because he cannot demonstrate that the statements are false. Turkeltaub's counterclaims do "not plausibly allege that [van der Stelt] entertained 'serious doubts' as to the truth of h[er] statements or acted with a high degree of awareness of [their] probable falsity." *Hindu Am. Found. v. Viswanath*, 646 F. Supp. 3d 78, 98 (D.D.C. 2022). Turkeltaub has offered no allegations suggesting that van der Stelt entertained any doubts whatsoever that his actions constituted sexual harassment. To the contrary, as discussed *infra*, van der Stelt consistently expressed her belief that Turkeltaub's actions constituted sexual harassment. Further, Turkeltaub's admissions -- that he engaged in inappropriate sexual conversations; that he physically touched van der Stelt; that, without permission or knocking, he entered a private bathroom being used by van der Stelt in his

home bar any such finding. *Kahl v. Bureau of Nat'l Affs., Inc.*, 856 F.3d 106, 116 (D.C. Cir. 2017) (explaining the plaintiff must demonstrate "'the defendant *in fact* entertained serious doubts as to the truth of his publication.'") (quoting *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968)). Turkeltaub's Counterclaim is facially deficient, which is fatal to his countersuit.

   **D.  Even if Privilege does not Apply to Each Statement, when Taking all Facts in the Counterclaim as True, Turkeltaub Cannot Establish the Elements of Defamation.**

      1.  *The Counterclaim does not Plausibly Allege that the Statements were Verifiably False.*

The District of Columbia recognizes "substantial truth" as an affirmative defense to defamation claims. *Armstrong v. Thompson*, 80 A.3d 177, 183 (D.C. 2013). To be actionable, "the statements at issue must be both 'verifiable' as false 'and reasonably capable of defamatory meaning." *Bauman v. Butowsky*, 377 F. Supp. 3d 1, 10–11 (D.D.C. 2019) (dismissing defamation and false light claims for failure to state a claim). A statement that is false due to "[s]light inaccuracies of expression' is unactionable if the alleged defamatory statement is true in substance." Restatement (Second) of Torts § 581A cmt. f (Am. Law Inst. 1977). Expressions of subjective views, an interpretation, or opinions are also unactionable. *Bauman*, 377 F. Supp. 3d at 10–11; *Rosen v. Am. Inst. Pub. Affs. Comm., Inc.*, 41 A.3d 1250, 1256 (D.C. 2012) ("[W]hile statements of fact 'may be the basis for a defamation claim, a statement of pure opinion cannot.'"). "Whether a statement 'asserts actionable facts or implies such facts is a question of law for the court to determine as a threshold matter.'" *Bauman*, 377 F. Supp. 3d at 11 (citation omitted).

Turkeltaub concedes that the factual events described by van der Stelt in her Complaint occurred; however, he challenges van der Stelt's subjective view and interpretation that they constituted sexual harassment. Specifically, Turkeltaub alleges that van der Stelt defamed him by

making statements that Turkeltaub "sexually harassed her generally", made statements that included "that he touched or tried to touch her thigh one time in a sexually harassing way", and that he "'groomed female members of his lab.'" CC ¶¶ 179, 186 (setting forth the statements Turkeltaub alleges are defamatory).

Overall, van der Stelt stated "her opinion about the import of the substantially true facts she presented," all of which are protected and non-actionable. *Armstrong*, 80 A.3d at 188 (affirming dismissal of defamation and false light claims). Turkeltaub's allegations fail to demonstrate any plausible falsity of van der Stelt's subjective view and interpretation of events given several crucial admissions by him. Turkeltaub admits, on multiple occasions, that he engaged in communications that were sexual in nature and that he physically touched van der Stelt. For example, Turkeltaub admits that he hugged van der Stelt, Answer ¶ 103,CC ¶¶ 12, 67, 106; that their relationship was close and crossed boundaries, CC ¶¶ 60; Compl. ¶¶ 45–46; Answer ¶ 45; that he held her hand, Answer ¶ 81); that they carpooled to campus together, CC ¶ 80, he touched her skirt (CC ¶¶ 23, 83), that they had "non-professional encounters," CC ¶ 100; and there are "shards of evidence" in van der Stelt's complaint (CC ¶ 32).

*The Hoya* article published in August about Turkeltaub's Countercomplaint interviewed several individuals who supported both parties' interpretations of events, including at least five individuals who supported van der Stelt's subjective view and interpretation of Turkeltaub's actions as being inappropriate. Ex. 2. "[R]emarks on a subject lending itself to multiple interpretations cannot be the basis of a successful defamation action because as a matter of law no threshold showing of 'falsity' is possible in such circumstances." *Rosen*, 41 A.3d at 1258 (affirming dismissal of defamation claim because single statement that was not time-barred was

not "provably false"); *see also Hindu Am. Found.*, 646 F. Supp. 3d at 99-100 (dismissing defamation claim for failure to plausibly allege falsity).

With respect to the claim that van der Stelt defamed him by making statements that Turkeltaub "sexually harassed her generally," when considering the admissions by Turkeltaub, that he hugged her on multiple occasions, held her hand, complimented her clothing, touched her skirt, and that he made sexual references in conversations with her, it was reasonable for van der Stelt to believe that these actions constituted sexual harassment. Similarly, given these admissions, it was reasonable for van der Stelt to perceive Turkeltaub to be grooming female members of his lab. CC ¶¶ 179(b), 186(b).

With respect to the statement that Turkeltaub "tried to touch her thigh one time", Turkeltaub admits that on the occasion in question, he "noted that [van der Stelt] was wearing a new item of clothing, a particularly fuzzy corduroy skirt, commented on how fuzzy it was, and "touched one of the corduroy wales near the hem to feel the fabric" of the skirt.  CC ¶¶ 83, 23. Even taking Turkeltaub's version of events as true, it was reasonable for van der Stelt to understand that Turkeltaub "had once touched or tried to touch her thigh," the statement Turkeltaub alleges is defamatory. *Id* ¶¶179(c), 186(c).

Turkeltaub's answer shows numerous concessions wherein he admits to the actions involving him as alleged in van der Stelt's complaint; however, he contests her subjective view that his actions constitute sexual harassment. This difference of interpretation about the undisputed facts cannot be "'verifiable' as false.'" *Bauman v. Butowsky*, 377 F. Supp. 3d at 10–11.

> 2. *The Counterclaim Does Not Plausibly Allege that van der Stelt Published Any Allegedly Defamatory Statements with Malice, or Wanton, Reckless, and/or Willful Disregard of the Truth.*

Where "[p]ublic figures and limited purpose public figures must plausibly plead actual malice, meaning that the defendant published the defamatory statement with 'knowledge that it

was false or with reckless disregard of whether it was false or not.'" *Hindu Am. Found.*, 646 F. Supp. at 97–98 (citation omitted). "If a public figure fails to plead actual malice, the defamation claim fails, even if the statement is verifiably false." *Id*. Turkeltaub concedes that he is a limited purpose public figure, as he pleads the heightened standard for malice in his two counts and otherwise describes his national and international prominence in the counterclaim. CC ¶¶ 180, 189; *see also id.* ¶ 1 (Turkeltaub is "one of the leading figures in his field" and listing his numerous national professional leadership roles), *id.* ¶ 2 (Turkeltaub "is a global leader in aphasia and brain imaging research [and] frequently publishes in high-profile medical journals, including various *Nature* journals, the *Proceedings of the National Academy of Sciences*, and other top-tier neurology and neuroscience journals." He has four active grants from the NIH totaling over $2,300,000 in funding. He is the recipient of several nationally prominent awards. And he is regularly invited to present his research at other universities and international conferences, [including being a] keynote speaker at the Clinical Aphasiology Conference in May 2019."). *Pauling v. Globe-Democrat Publishing Co*., 362 F.2d 188, 189, 199 (8th Cir. 1966) (determining professor of chemistry at California Institute of Technology with national and international repute to be public official because he had projected himself into the arena of public policy and pressing public concern and affirming judgment dismissing libel action against newspaper given lack of malice); *see also Mink v. Suthers*, 482 F.3d 1244, 1257 (10th Cir. 2007) (noting parties' concession that professor is public figure, and as such was required to show falsity and actual malice in criminal libel suit). *Cf. Barry v. Time, Inc*., 584 F. Supp. 1110, 1119 (N.D. Ca. 1984) (noting consistent long line of cases finding professional and collegiate athletes and coaches to be public figures).

33

Accordingly, even if the statements were not subject to a privilege, which they are, Turkeltaub would need to establish van der Stelt acted with malice, which he cannot do for the reasons discussed *supra* at Section C(3).

      3.   *Turkeltaub cannot Demonstrate that he was Harmed by the Alleged Defamatory Statements.*

In order to establish a claim of defamation, the plaintiff must establish harm. Here, Turkeltaub disseminated the very same information that he alleges to be defamatory, and thus, he cannot establish that he was harmed by van der Stelt's dissemination, which is a required element of a defamation claim. *See Hourani*, 796 F.3d at 16. The August *Hoya* article concerning the Complaint reports that "[i]n advance of this story's publication, over a dozen students and professors who have worked with Turkeltaub reached out to The Hoya independently, saying they believed the allegations against him to be false. *Some of these students told The Hoya they learned of the story prior to publication from either Turkeltaub; Olivarius, his lawyer; or other members of their lab.*" Ex. 2. As another example, on March 19, 2024, *The Hoya* also published a news article interviewing and quoting Turkeltaub and summarizing Turkeltaub's Counterclaim, which re-stated all of the alleged defamatory statements in van der Stelt's complaint. Ex. 1. Moreover, on the same date, Turkeltaub's lawyer posted material about van der Stelt's allegations on her law firm's website and posted the Counterclaim in its entirety, which repeats and publicizes the very statements Turkeltaub alleges to be defamatory. Ex. 3. The law firm's post also provides an extract for the March *Hoya* article and a link to the full article. *Id*. Turkeltaub cannot claim defamation against van der Stelt for disseminating the substance of her federal complaint against him when he and his lawyer are disseminating the exact same material prior to publication, as well as participating with the journalistic efforts and being quoted in the resulting news articles. Accordingly, as a matter of law, Turkeltaub's defamation claims must fail.

**E.  Turkeltaub's Counterclaim Should Be Dismissed Entirely and with Prejudice Given that Any Amendment Would Be Futile**

For the reasons discussed *supra,* Turkeltaub cannot plausibly establish a claim of defamation or false light and his Counterclaim should be dismissed with prejudice as  Turkeltaub cannot revive his fails claims with any amendment. *See Hettinga v. United States*, 677 F.3d 471, 480 (D.C. Cir. 2012) (per curiam) ("A district court may deny a motion to amend a complaint as futile if the proposed claim would not survive a motion to dismiss"); *Stovell v. James*, 849 F. Supp. 2d 43 (D.D.C. 2012) (granting motion to dismiss and denying motion to amend). As an initial matter, given that the statements alleged to be defamatory are entitled to an absolute privilege, any amended complaint could not state a claim. *See Bernstein v. Seeman,* 593 F. Supp. 2d 630, 636 (S.D.N.Y. 2009) (dismissing an amended complaint because the plaintiff's defamation claims were based on "absolutely privileged statements" and thus, "[e]ven if the facts were proven . . . these statements would still be absolutely privileged."). Turkeltaub further cannot establish a claim even with an amendment because, even if all facts in his Counterclaim are proven true, based on the facts set forth in his Counterclaim and the facts admitted in his Answer, Turkeltaub cannot establish that the alleged defamatory statements were verifiably false or publicized with malice. *See James Madison Ltd. by Hecht v. Ludwig,* 82 F.3d 1085 (D.C. Cir. 1996) (affirming the dismissal of a complaint and denial of leave to amend where the plaintiff could not establish a claim based on the "facts alleged in [the plaintiff's] own complaint"); *Deripaska*, 282 F. Supp. 3d at 149 (dismissing defamation complaint with prejudice because the alleged statements do not qualify as false and defamatory statements under D.C. law). Accordingly, as Turkeltaub cannot cure these fatal flaws with any amendment, dismissal with prejudice is appropriate for his counts of defamation and false light invasion of privacy against van der Stelt.

IV.    **CONCLUSION**

Turkeltaub's Counterclaim contains several fatal flaws and cannot survive dismissal as a matter of law.  Many of the allegations are time-barred; most of the remaining allegations are protected by the judicial proceedings privilege and/or the fair reporting privilege; and his claims otherwise fail to plausibly allege that van der Stelt made any false and/or qualifying defamatory statements. For the foregoing reasons, Turkeltaub's Counterclaim should be dismissed in its entirety with prejudice given that any amendment would be futile.


Dated: April 8, 2024                                        Respectfully submitted,


                                                            _____/s/_____
                                                            Gary M. Gilbert, Esq. (Bar No. MD15808)
                                                            Elizabeth Wilson, Esq. (Bar No. 491007)
                                                            Gilbert Employment Law, P.C.
                                                            8403 Colesville road, Suite 1000
                                                            Silver Spring, MD, 20910
                                                            Tel: (301) 608-0880; Fax: (301) 608-0881
                                                            Gary-efile@gelawyer.com
                                                            ewilson@gelawyer.com
                                                            ccohen-efile@gelawyer.com

                                                            *Counsel for Plaintiff / Counter-Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that true and correct copies of the foregoing Motion to Dismiss and

Memorandum of Points and Authorities in Support of Motion to Dismiss were served on

Defendant Georgetown University and Defendant/Counter-Plaintiff Peter Turkeltaub through the

Court's CM/CF filing system on April 8, 2024.


                                               /s/

Elizabeth Wilson, Esq. (Bar No. 491007)
Gilbert Employment Law, P.C.
8403 Colesville road, Suite 1000
Silver Spring, MD, 20910
Tel: (301) 608-0880
Fax: (301) 608-0881

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CANDACE VAN DER STELT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civil Action No. 23:cv-02212-RDM |
| | ) |
| GEORGETOWN UNIVERSITY, | ) |
| and PETER TURKELTAUB | ) |
| | ) |
| Defendants. | ) |
| | ) |
| PETER TURKELTAUB, | ) |
| | ) |
| Counter-Plaintiff | ) |
| | ) |
| v. | ) |
| | ) |
| CANDACE VAN DER STELT, | ) |
| | ) |
| Counter-Defendant | ) |
| | ) |

**[PROPOSED] ORDER**

Upon consideration of Counter-Defendant's Motion to Dismiss Counter-Plaintiff's Counterclaim in the above-captioned matter, and any Opposition and Reply thereto, it is hereby determined that the alleged defamatory statements are time-barred or otherwise protected by absolute or conditional privileges because they were made preliminary to or in the course of judicial proceedings, for the purpose of fair reporting, and in order to protect common interests. Morever, given Turteltaub's concessions and dissemination about certain actions that he undertook, he cannot show any of the alleged defamatory statements made by van der Stelt were provably false or made with malice or caused him harm. As such, any amendment of the complaint would be futile.

**ORDERED** that Plaintiff's/Counter-Plaintiff's Motion to Dismiss is **GRANTED**; and

**FURTHER ORDERED** that the Counterclaim in the above-captioned matter is

dismissed in its entirety with prejudice.

**SO ORDERED.**

Entered:_____                    _____
                                          United States District Judge
Copies to:
Gary M. Gilbert, Esq. (Bar No. MD15808)
Elizabeth Wilson, Esq. (Bar No. 491007)

Gilbert Employment Law, P.C.
8403 Colesville road, Suite 1000
Silver Spring, MD, 20910
Tel: (301) 608-0880; Fax: (301) 608-0881
Gary-efile@gelawyer.com
ewilson@gelawyer.com
ccohen-efile@gelawyer.com

*Counsel for Counter-Defendant*

Ann Olivarius
McAllister Olivarius
641 Lexington Avenue
13th Floor
New York, NY 10022
Tel: (212) 433-3456
aolivarius@mcolaw.com

*Attorney for Counter-Plaintiff Peter Turkeltaub*


Henry Platt
Saul Ewing LLP
1919 Pennsylvania Avenue NW, Suite 550
Washington, DC 20006
Tel: (202) 342-3447; Fax: (202) 337-6065
Heny.platt@saul.com

Joshua W.B. Richards
Saul Ewing LLP
1500 Market Street
38th Floor, West Tower

Philadelphia, PA 19102
Tel: (215) 972-7737; Fax: (215) 927-7725
Heny.platt@saul.com

*Attorneys for Defendant Georgetown University*