## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CANDACE VAN DER STELT,       )<br>        )<br>    Plaintiff,            )<br>        )<br>    v.                )<br>        )<br>GEORGETOWN UNIVERSITY,    )<br>GEORGETOWN UNIVERSITY MEDICAL )<br>CENTER, BIOMEDICAL GRADUATE  )<br>EDUCATION, and PETER TURKELTAUB, )<br>        )<br>    Defendants.        )<br>_____ )<br>        )<br>PETER TURKELTAUB,        )<br>        )<br>    Counter-Plaintiff,      )<br>        )<br>    v.                )<br>        )<br>CANDACE VAN DER STELT,     )<br>        )<br>    Counter-Defendant.     )<br>        )<br>        )<br>        )<br>_____ ) | Civil Action No. 23:cv-02212-RDM<br><br>Hon. Loren L. AliKhan |

## COUNTER-PLAINTIFF'S OPPOSITION TO COUNTER-DEFENDANT'S MOTION TO DISMISS

Counter-Plaintiff Peter Turkeltaub ("Turkeltaub"), through his undersigned attorneys, submits this Opposition ("Opposition") to Counter-Defendant's Motion to Dismiss Counter-Plaintiff's Counterclaims ("Motion" or "Mot.") (ECF No. 18). Counter-Plaintiff's Counterclaim ("CC" or "Counterclaim") (ECF No. 13) states valid claims against Counter-Defendant based on statements she made that are neither time barred nor privileged, and as such the Motion must be denied.

Respectfully submitted,

*/s/ Dr. Ann Olivarius*
Dr. Ann Olivarius (Bar No. 429231)
641 Lexington Avenue
13th Floor
New York, NY 10022
Telephone: (212) 433-3456
aolivarius@mcolaw.com

*Attorney for Counter-Plaintiff Peter Turkeltaub*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| CANDACE VAN DER STELT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 23:cv-02212-RDM |
| v. | ) | |
| | ) | Hon. Loren L. AliKhan |
| GEORGETOWN UNIVERSITY, | ) | |
| GEORGETOWN UNIVERSITY MEDICAL | ) | |
| CENTER, BIOMEDICAL GRADUATE | ) | |
| EDUCATION, and PETER TURKELTAUB, | ) | |
| | ) | |
| Defendants. | | |
| | ) | |
| PETER TURKELTAUB, | ) | |
| | ) | |
| Counter-Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CANDACE VAN DER STELT, | ) | |
| | ) | |
| Counter-Defendant. | ) | |
| | ) | |
| | ) | |
| | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION OF COUNTER-**
**DEFENDANT'S MOTION TO DISMISS**

**TABLE OF CONTENTS**

INTRODUCTION..................................................................................................................1

LEGAL STANDARD ...........................................................................................................3

ARGUMENT ........................................................................................................................4

I.       Turkeltaub's Well-Pleaded Counterclaim States a Valid Defamation Claim ............4

    A.    Turkeltaub Has Adequately Pleaded that Van der Stelt Made False and Defamatory Statements About Him........................................................................... 4

        i.    Falsity ...................................................................................................... 4

        ii.   Defamation .............................................................................................. 6

    B.    Turkeltaub's Defamation Claims Are Timely.......................................................... 7

        i.    The Discovery Rule Applies to the Statements..................................... 8

    C.    Turkeltaub Has Adequately Pleaded that Van der Stelt Published her Statements Without Privilege to a Third Party .......................................................... 10

        i.    As Turkeltaub's Counterclaim Showed, Van der Stelt's Statements Are Not Protected by Absolute Privilege ....................................................... 10

             a.   Van der Stelt's Statements Were Not Made in Relation to Judicial or Quasi-Judicial Proceedings......................................................... 10

             b.   D.C. Human Rights Act ("DCHRA") Does Not Shield Van der Stelt's Statements from a Defamation Claim........................................ 13

        ii.   Turkeltaub Sufficiently Pleaded that Van der Stelt's Statements Are Not Protected by Qualified Privilege........................................................ 14

             a.   The Self-Reporting Exception Prevents Van der Stelt from the Fair Report Privilege's Protection................................................... 14

             b.   Van der Stelt's Statements Are Not Protected by the Common Interest Privilege Because She Shared the Statements Excessively ................... 16

        iii.  Turkeltaub Has Adequately Pleaded that Van der Stelt Was At Least Negligent in her Publishing of Those Statements ............................................. 17

             a.   Turkeltaub Is Not a Limited Public Figure and Is Therefore Not Required to Demonstrate Malice on the Part of Van der Stelt ................................ 17

        iv.  Even If Actual Malice Is Required, Turkeltaub Has Pleaded Sufficient Facts to Meet this Standard ......................................................................... 20

        v.   Turkeltaub Has Adequately Pleaded that He Was Harmed by Van der Stelt's Statements........................................................................................ 22

             a.   Turkeltaub Is Not Responsible for the Harm Van der Stelt's Defamation Has Done to Him......................................................... 22

             b.   Turkeltaub Has Sufficiently Shown the Harm Done to Him by Van der Stelt's Defamation................................................................ 22

i

II.      Turkeltaub Properly Pleaded False Light Sufficiently to Survive a Motion to
         Dismiss .............. ……………………………………………………………….23

III.     Conclusion ....................................................................................................................24

## TABLE OF AUTHORITIES

**Cases**

*Armenian Assembly of Am., Inc. v. Cafesjian*, 597 F. Supp. 2d 128 (D.D.C. 2009) ................... 11

*Arneja v. Gildar*, 541 A.2d 621 (D.C. 1988) .............................................................. 10

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................ 3, 4

*Associated Producers, Ltd. v. Vanderbilt Univ.*, 76 F. Supp. 3d 154 (D.D.C. 2014) ................... 8

*Audain v. Am. Univ.*, No. 94-2676 (TFH) 1997 U.S. Dist. Lexis 21730 (D.D.C. Dec 11, 1997). 17

*Bauman v. Butowsky*, 377 F. Supp. 3d 1 (D.D.C. 2019) ................................................... 5

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ................................................ 3, 4

*Brown v. Collins*, 402 F.2d 209 (D.C. Cir. 1968) ................................................. 11, 17

*Campbell v. District of Columbia*, 126 F. Supp. 3d 141 (D.D.C. 2015) ................................ 16

*Clawson v. St. Louis Post-Dispatch, LLC*, 906 A.2d 308 (D.C. 2006) ................................... 6

*Close It! Title Servs. v. Nadel*, 248 A.3d 132 (D.C. 2021) .......................................... 23

*Egei v. Johnson*, 192 F. Supp. 3d 81 (D.D.C. 2016) .................................................. 13

*Finkelstein, Thompson & Loughran v. Hemispherx Biopharma, Inc.,* 774 A.2d 332 (D.C. 2001)

................................................................................................... 11

*Firestone v. Firestone*, 76 F.3d 1205 (D.C. Cir. 1996) ............................................... 9

*Fogel v. Univ. of the Arts*, No. 18-5137, 2019 U.S. Dist. LEXIS 51763 (E.D. Pa. Mar. 27, 2019)

................................................................................................... 12

*Hettinga v. United States*, 677 F.3d 471 (D.C. Cir. 2012) ............................................ 3

*Jankovic v. Int'l Crisis Group*, 72 F.Supp. 3d 284 (D.C. Nov. 4, 2014) ............................. 18

*Kahl v. Bureau of Nat'l Affairs, Inc.*, 856 F.3d 106 (D.C. Cir. 2017) ............................ 18, 19

*Kendrick v. Fox Television*, 659 A.2d 814 (D.C. 1995) ............................................... 20

*KLEO AG v. Rivada Networks, Inc.*, No. 22-cv-01664 (DLF) 2023 U.S. Dist. LEXIS 205026 .. 22

*Kumar v. George Wash. Univ.,* 174 F. Supp. 3d 172 (D.D.C. 2016) .................................... 23

*Libre by Nexus v. BuzzFeed, Inc.*, 311 F. Supp. 3d 149 (D.D.C. 2018) ............................... 24

*Mann v. Nat'l Review, Inc.*, No 2012-CA-008263-B LEXIS 7, (D.C. Super. Ct. 2013)..........4, 20

*Marsh v. Hollander*, 339 F. Supp. 2d 1 (D.D.C. 2004) ............................................... 10

*McFadden v. Wash. Metro. Area Transit Auth.*, 949 F. Supp. 2d 214 (D.D.C. 2013) ................... 9

*Mosrie v. Trussell*, 467 A.2d 475 (D.C. 1983) ............................................................ 24

*Moss v. Stockard*, 580 A.2d 1011 (D.C. 1990) ............................................................ 16

*Myers v. D.C. Hous. Auth.,* No. 1:20-cv-00700-APM, 2021 U.S. Dist. LEXIS 57805 (D.D.C.

    Mar. 26, 2021) ......................................................................................... 14, 15, 24

*Myers v. Plan Takoma, Inc.*, 472 A.2d 44 (D.C. 1983) .................................................. 5

*Newman v. Howard Univ. Sch. of Law*, No. 1:23-cv-0436 (TNM), 2024 U.S. Dist. LEXIS 20224

    ...................................................................................................................... 7, 10

*Rosenberg v. Helinski,* 616 A.2d 866 (Md. 1992) ......................................................... 15

*Salem Media Grp., Inc. v. Awan*, 301 A.3d 633 (D.C. 2023) ............................... 17, 18, 19

*Sickle v. Torres Advanced Enter. Sols., LLC*, 884 F.3d 338 (D.C. Cir. 2018) ............... 3

*Tacka v. Georgetown Univ.*, 193 F. Supp. 2d 43 (D.D.C. 2001) ........................... 16, 17, 21

*Teltschik v. Williams & Jensen, PLLC*, 748 F.3d 1285 (D.C. Cir. 2014) .................... 10

**Other Authorities**

Restatement (Second) § 611, cmt. c............................................................................. 14

**INTRODUCTION**

Counter-Plaintiff Peter Turkeltaub ("Turkeltaub") submits this Memorandum of Law in opposition to Counter-Defendant's Motion to Dismiss ("Motion" or "Mot.") (ECF No. 18) his Counterclaim ("CC" or "Counterclaim") (ECF No. 13) for failure to state a claim upon which relief can be granted.

Turkeltaub is a professor of Neurology and Rehabilitation Medicine at Georgetown University and the Director of the Cognitive Recovery Lab ("CRL").  (CC ¶ 1.)  In July 2018, Counter-Defendant, Candace van der Stelt ("van der Stelt") joined the CRL as Lab Manager and Research Speech-Language Pathologist ("SLP").  (CC ¶ 4.)  She liked working at CRL, and she and Turkelaub enjoyed a good working relationship.  (CC ¶ 5.)  Over time, van der Stelt's behavior towards Turkeltaub became increasingly familiar including: initiating jokes of a sexual nature (CC ¶ 62), initiating and requesting hugs from him (CC ¶¶ 67, 77, 94), saying she "loved" him (CC ¶¶ 76-77, 89, 94), encouraging him to share details of his marriage (CC ¶ 66, 75), seeking contact with him outside of work (CC ¶¶ 78), and complimenting him on his clothing and seeking compliments from him on hers.  (CC ¶¶ 81-82.)

When van der Stelt switched from helping run the lab to a first-year graduate student working under Turkeltaub, he tried to set new, appropriately tougher boundaries on her familiarity.  (CC ¶¶ 8, 70.)  She apparently interpreted this as rejection, became angry and ultimately lashed out by telling people that Turkeltaub was sexually harassing her.  (CC ¶¶ 11, 19.)  Throughout 2022 and 2023, van der Stelt spread defamatory statements about Turkelatub ("Statements"), including:

- Telling current and former Georgetown students such as Shiva Hassanzadeh-Behbahani ("Hassanzadeh-Behbahani"), and Alix Fetch ("Fetch") Statements about Turkeltaub and his relationships with other female lab members. (CC ¶ 128.)

- Telling Carolyn Gershman ("Gershman"), a former PhD student in CRL, that Turkeltaub has sexually harassed her. (CC ¶ 129.)

- Telling Georgetown's Interdisciplinary Program in Neuroscience ("IPN") students that Turkeltaub was "grooming" her and other female lab members.  (CC ¶¶ 134-35.)  She

1

continued to spread this statement even after she was specifically told that this claim was false on March 30, 2023.  (CC ¶ 136.)

- Complaining to the National Institutes of Health ("NIH") that Turkeltaub sexually harassed her, including "try[ing] to stroke [her] inner thigh."  (CC ¶ 144.)

- Telling an IPN graduate student that Turkeltaub had sexually harassed her, "touched her thigh" and intentionally followed her into the bathroom at a party for the lab at his house in June 2021.  (CC ¶ 139.)

- Telling a faculty member of another university that Turkeltaub "had tried to stroke my thigh."  (CC ¶ 149.)

- Telling IPN alumni and other individuals whom she connected with via LinkedIn that Turkeltaub had tried to stroke her thigh.  (CC ¶ 149.)

- Asking another IPN graduate student to remove Turkeltaub from his/her thesis committee due to his "sexual harassment" of van der Stelt.  (CC ¶ 141.)

- Telling female graduate students from various Georgetown departments that Turkeltaub had sexually harassed her at events hosted by Georgetown's Women in Science and Education ("WISE") group.  (CC ¶ 151.)

- Telling Rebecca Boersma, a patient referral source for the CRL, that Turkeltaub sexually harassed her.  (CC ¶ 163.)

- Telling Dr. Maryam Ghaleh ("Ghaleh"), an employee at NIH, that Turkeltaub had sexually harassed her and touched her thigh.  (CC ¶ 143.)

- Approving of her associates' disseminating her federal Complaint, which contains false allegations of sexual harassment against Turkeltaub.  (CC ¶¶ 156-62.)

All of these Statements are false.

A close review of the Counterclaim reveals that Turkeltaub has more than satisfied his burden for pleading defamation and false light to survive a motion to dismiss.  Turkeltaub's claims are also in time, and van der Stelt cannot claim privilege in large part because she was so prolific in sharing these Statements.  Excessive sharing of statements can waive privilege especially when

the statements are shared outside the small group of people needed to bring a legal claim. This is what van der Stelt did. She did not tell just a few close friends or only people within the channels necessary to bring her Title IX claim at Georgetown or her federal Complaint. Rather she broadcast her defamatory statements about Turkeltaub to anyone who would listen and sought out new and larger audiences as time went on, seeking to cause him maximum damage.

Turkeltaub has been profoundly hurt by van der Stelt's defamatory statements both professionally and personally. Professionally, his teaching scores have dropped (CC ¶¶ 153, 176); a key patient referral source for his lab has stopped working with him (CC ¶ 163); he has been removed from a prestigious NIH panel (CC ¶¶ 146, 176) and dropped from a grant application by a colleague who feared that van der Stelt's accusations have made him radioactive. (CC ¶¶ 164, 176.) Personally, Turkeltaub's mental health has significantly deteriorated; he now suffers from panic attacks, anxiety disorder, adjustment disorder with associated anxiety and primary insomnia. (CC ¶ 154.)

Van der Stelt concedes in her Motion, when she suggests that the two sides have different subjective views of what happened, that there is a question of fact as to whether there was any sexual harassment here at all. (Mot. at 30.) Moreover, the fact that van der Stelt withdrew her Title IX complaint at Georgetown and Turkeltaub was *cleared of any sexual harassment charges after a Title IX investigation* shows that others can reasonably conclude that there was no sexual harassment here. (CC ¶¶ 167, 170.) Under these circumstances, there remains an obvious question of fact about whether her Statements alleging sexual harassment by Turkeltaub were simply false, and therefore her Motion to dismiss the Counterclaim is premature and should be denied.

## LEGAL STANDARD

When ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) a court must "accept the plaintiff's factual allegations as true," *Sickle v. Torres Advanced Enter. Sols., LLC*, 884 F.3d 338, 345 (D.C. Cir. 2018), and "construe the complaint in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged," *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is

plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). More specifically, the plaintiff need only allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Only when the plaintiff has not "nudged [its] claims across the line from conceivable to plausible," should the complaint be dismissed. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Iqbal*, 556 U.S. at 680.

## ARGUMENT

### I.   Turkeltaub's Well-Pleaded Counterclaim States a Valid Defamation Claim

To state a *prima facie* claim of defamation, Turkeltaub must allege that:

> (1) [d]efendant made a false or defamatory statement concerning the plaintiff; (2) . . . defendant published the statement without privilege to the third party; (3) . . . defendant's fault in publishing the statement amounted to at least negligence; and (4) either that the statement was actionable as a matter of law irrespective of special harm or that its publication caused the plaintiff special harm. *Mann v. Nat'l Review, Inc.*, No 2012-CA-008263-B LEXIS 7, at *17-19 (D.C. Super. Ct. 2013) (internal quotation omitted).

#### A.   Turkeltaub Has Adequately Pleaded that Van der Stelt Made False and Defamatory Statements About Him

##### i.   Falsity

Turkeltaub has pleaded sufficient facts to show he was defamed by van der Stelt's Statements that he sexually harassed her. The Counterclaim sets out multiple times when she positively encouraged and welcomed the behavior she now complains about, making it impossible to establish at this stage that the facts of these interactions are settled in her favor. This includes van der Stelt initiating jokes of a sexual nature (CC ¶ 62), actively encouraging Turkeltaub to make jokes (CC 57-61), initiating and requesting hugs from Turkeltaub (CC ¶¶ 67, 77, 94), saying she "loved" Turkeltaub (CC ¶¶ 76-77, 89, 94), encouraging Turkeltaub to share details of his marriage (CC ¶ 66, 75), initiating text exchanges with Turkeltaub (CC ¶ 54), seeking contact with Turkeltaub outside of work (CC ¶¶ 78), complimenting Turkeltaub on his clothing and seeking compliments from him on hers. (CC ¶¶ 81-82).

The Motion tries various ways to defeat the unavoidable conclusion that Turkeltaub's Counterclaim simply cannot be dismissed at this stage.

First, it argues that the Statements were not defamatory because they were simply opinions which cannot be verified as false. (Mot. at 30.)  But a read of the Statements shows that none of the Statements carried an indicia of opinion commonly recognized by the law.  *Bauman v. Butowsky*, 377 F. Supp. 3d 1, 10-11 (D.D.C. 2019) (finding that opinions that convey a subjective view are not provably false and thus cannot undergird a claim of defamation.)  The inclusion of cautionary language, such as "finds" or "might be possible" in possibly defamatory statements can suggest that they are opinions and therefore not actionable.  *Id.* at 11.  But van der Stelt did not use any cautionary or even self-referential language ("I think" or "in my opinion") in the Statements.  She told students that Turkeltaub "groomed" young female members of his lab.  (CC ¶¶ 134, 136.)  She told a graduate student that Turkeltaub had sexually harassed her by touching her inner thigh.  (CC ¶ 139.)  In none of the Statements did she qualify her accusations.  Instead, she unequivocally asserted that Turkeltaub had sexually harassed her.

In addition, when deciding whether challenged statements are opinion, the court must contemplate whether the allegedly defamatory words can be proven true or false.  *Myers v. Plan Takoma, Inc*., 472 A.2d 44, 47 (D.C. 1983).  Opinions are usually statements that cannot be readily proven true or false.  *Id*.  However, "statements tend not to fit neatly into categories of verifiable and unverifiable, but rather exist on a spectrum with respect to the degree to which they can be verified." *Bauman*, 377 F. Supp. 3d at 11. (internal citations and quotations removed.)

In this case, van der Stelt's Statements about being sexually harassed are firmly and verifiably false and Turkeltaub has plausibly pleaded as much.  In fact, they have been *proven* to be false through Georgetown University's 14-month investigation which interviewed 29 witnesses and reviewed over 400 pages of evidence before an independent panel of three distinguished people unanimously rejected her allegations. (CC ¶¶ 168-70.)

It is already manifest that van der Stelt's Statement that Turkeltaub "groomed" female members of his lab is, on its face, verifiably false.  The Motion claims that Turkeltaub's admissions that he hugged van der Stelt, held her hand, complimented her clothing, touched her skirt, and made sexual references in conversations with her made it "reasonable for van der Stelt to perceive

Turkeltaub to be grooming female members of his lab." (Mot. at 32.) This does not follow. Turkeltaub's statements about his treatment of van der Stelt by definition refer only to Turkeltaub's treatment of van der Stelt and can provide no logical basis for a serious claim that Turkeltaub "groomed" *other* female lab members. Ultimately, van der Stelt was told directly that this Statement was false by a member of Turkeltaub's lab, but she still kept repeating it. (*See* CC ¶¶ 135-36.)

At this stage, van der Stelt has certainly not eliminated any factual dispute about whether the Statements are verifiably false. The evidence Turkeltaub has put forward in the Counterclaim to demonstrate their falsity is enough for his claim to continue. (*See* CC ¶¶ 135-36 (email to van der Stelt and other IPN students from a female postdoctoral fellow stating that van der Stelt's claim that Turkeltaub "groomed" female members of his lab is false.))

      ii.    *Defamation*

In addition, Turkeltaub has sufficiently pleaded that van der Stelt's Statements are defamatory. A defamatory statement is one that "injure[s] the plaintiff in his trade, profession or community standing, or lower[s] him in the estimation of the community." *Clawson v. St. Louis Post-Dispatch, LLC*, 906 A.2d 308, 313 (D.C. 2006). (internal quotation omitted.) Each time van der Stelt made false comments about Turkeltaub's alleged sexual harassment of her and others, she injured his professional standing and lowered his estimation in the academic communities he inhabits, including students, other Georgetown faculty and academics elsewhere.

As a result of the Statements she made to current Georgetown students, Turkeltaub received the lowest teaching scores of his career. (CC ¶ 153.) It was clear from the reviews, particularly one student's menacing comment ("I know what you did"), that the low score resulted from van der Stelt's defamatory statements rather than poor teaching. (*Id.*) Students also removed Turkeltaub from their thesis committees and expressed reluctance to join his lab because of van der Stelt's attacks. (CC ¶¶ 139, 153.)

Van der Stelt's false report to NIH significantly damaged Turkeltaub's standing in the scientific community. It directly resulted in his removal from the Language and Communication Study Section ("LCOM"), a prestigious grant review panel. (CC ¶ 146.) This has caused him to lose many further professional opportunities such as research collaborations, preferential treatment

for his research grant applications, and networking opportunities, among others.  (CC ¶ 147.)  He also lost the prestige of being included in this elite group, which is chosen for this panel precisely because they are at the top of their field.  *Id.*  Turkeltaub's standing in the community where he has consistently been seen as a leader in his field has undoubtedly been lowered by van der Stelt's accusations of sexual harassment – making those Statements defamatory.

### B.  Turkeltaub's Defamation Claims Are Timely

Defamation claims are subject to a one-year statute of limitations.  *Newman v. Howard Univ. Sch. of Law*, No. 1:23-cv-0436 (TNM), 2024 U.S. Dist. LEXIS 20224, at *41 (D.D.C. Feb. 6, 2024).  Therefore, any statement made by van der Stelt after February 1, 2023 (one year before the Counterclaim was filed) is timely.  Van der Stelt made at least ten defamatory Statements during this time, specifically:

- After January 2023 – van der Stelt told IPN students that Turkeltaub was "grooming" her and other female lab members.  (CC ¶ 135.)  She continued to spread this statement even after she was specifically told it was false on March 30, 2023.  (CC ¶ 136.)

- March 1, 2023 – van der Stelt complained to NIH that Turkeltaub sexually harassed her.  (CC ¶ 144.)

- April 2023 – van der Stelt told an IPN graduate student that Turkeltaub had sexually harassed her, "touched her thigh" and intentionally followed her into the bathroom at a party hosted at his house in June 2021.  (CC ¶ 139.)

- April 25, 2023 – van der Stelt told a faculty member of another university that Turkeltaub "had tried to stroke my thigh."  (CC ¶ 149.)

- Spring 2023 – van der Stelt told IPN alumni and other individuals whom she connected with via LinkedIn that Turkeltaub had tried to stroke her thigh.  (CC ¶ 149.)

- Spring 2023 – van der Stelt asked another IPN gaduate student to remove Turkeltaub from his/her thesis committee due to his "sexual harassment" of van der Stelt.  (CC ¶ 141.)

- Spring 2023 – van der Stelt told female graduate students from various Georgetown departments that Turkeltaub had sexually harassed her at events hosted by Georgetown's WISE group.  (CC ¶ 151.)

- Spring 2023 – van der Stelt told Boersma, a patient referral source for the CRL, that Turkeltaub sexually harassed her.  (CC ¶ 163.)

- Spring - Summer 2023 – van der Stelt told Ghaleh that Turkeltaub had sexually harassed her and touched her thigh.  (CC ¶ 143.)

- After July 31, 2023 – van der Stelt knew of and approved the dissemination of the Complaint by her associates.   The Complaint contains false allegations of sexual harassment against Turkeltaub.  (CC ¶¶ 156-62.)

      *i.   The Discovery Rule Applies to the Statements*

Other Statements published before February 2023 are nevertheless timely under the discovery rule.  Generally, a defamation cause of action accrues "at the time the injury actually occurs" if "the fact of an injury can be readily determined." *Mullin v. Wash. Free Weekly Inc.*, 785 A.2d 298, 298 (D.C. 2001) (internal quotation omitted).  However, when the injury is not easily discernible, the court can apply the "discovery rule" and "the statute of limitations will not run until plaintiffs know or reasonably should have known that they suffered injury due to the defendants' wrongdoing."  *Id.* at 298-99.   The discovery rule applies when the defamatory statement is undiscoverable because (1) it was published secretly; (2) the defendant took steps to prevent the plaintiff from uncovering the statement; or (3) in was published only to a specialized readership.  *Id.* at 299 n.5.

In *Associated Producers, Ltd. v. Vanderbilt Univ.*, 76 F. Supp. 3d 154 (D.D.C. 2014), a company brought a defamation claim against a professor and a university for intentionally interfering with a contract to produce a film by spreading false statements by email and phone with members of National Geographic.  The court concluded that since the professor published the allegedly defamatory statements by email and telephone calls to a limited selection of National Geographic officials and consulting panel members that she had effectively published them to a specialized readership and therefore the application of the discovery rule was warranted.  *Id.* at

172.  Associated Producers, Ltd.'s defamation claim, therefore, survived the professor's motion to dismiss.  *Id.*

Similarly, van der Stelt's defamatory Statements made prior to February 1, 2023, were made in private to individuals with whom Turkeltaub had only limited interactions, which prevented him from discovering his injury.  This included Gershman, who rotated into CRL in the fall semester of 2020 but who was otherwise not a member of Turkeltaub's lab (CC ¶ 129); Hassanzadeh-Behbahani, a former Georgetown PhD student with whom Turkeltaub had no professional or personal relationship (CC ¶ 128); Fetch, a former Georgetown PhD student with whom Turkeltaub had no continuing professional or personal relationship (*Id.*); the unnamed first-year student who was not in Turkeltaub's lab (CC ¶¶ 131-32); and other IPN students to whom van der Stelt claimed Turkeltaub was "grooming" her and other female lab members.  (CC ¶¶ 134-36.)

The Motion incorrectly contends that the discovery rule does not apply to the alleged Statements because Turkeltaub had direct knowledge of them when van der Stelt informed him of her intention to report him on June 2, 2022, and again in October 2022, when he received notice from Georgetown's Title IX office of an "anonymous complaint . . . filed against him."  (Mot. at 13.)  In so doing, van der Stelt relies on a purported admission in Turkeltaub's Answer to establish that he did not deny knowledge of her allegation from June 2, 2022.  But, Turkeltaub admitted only that the parties met on June 2, 2022, but he denied the remainder of the allegation contained in Paragraph 93 of van der Stelt's Complaint.  (ECF No. 1 at ¶ 93.)  Moreover, while an anonymous complaint may have been filed against Turkeltaub in October of 2022, Turkeltaub never alleges that that complaint supports his defamation claim.   Van der Stelt's contortion of the factual allegations does not support dismissal of his claims.

Moreover, "because statute of limitations issues often depend on contested questions of fact, dismissal is appropriate only if the complaint on its face is conclusively time-barred." *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996).  Here, van der Stelt is simply not able to assert what Turkeltaub knew about her covert campaign of allegations against him, so dismissal under 12(b)(6) is inappropriate. *See McFadden v. Wash. Metro. Area Transit Auth.*, 949 F. Supp. 2d 214, 222 (D.D.C. 2013).

9

**C. Turkeltaub Has Adequately Pleaded that Van der Stelt Published her Statements Without Privilege to a Third Party**

    *i.   As Turkeltaub's Counterclaim Showed, Van der Stelt's Statements Are Not Protected by Absolute Privilege*

        a.   Van der Stelt's Statements Were Not Made in Relation to Judicial or Quasi-Judicial Proceedings

Van der Stelt asserts that her Statements are protected by absolute privilege because they were made in connection with judicial or quasi-judicial proceedings such as her Title IX investigation at Georgetown and her NIH complaint.  (Mot. at 13.)  This is clearly untrue with respect to the Georgetown proceeding.  The absolute privilege for statements made before and during judicial or quasi-judicial proceedings conducted by government bodies has *not* been extended to proceedings before a private party, such as a university disciplinary board, unless the proceeding is linked to a judicial process.  *Newman*, 2024 U.S. Dist. LEXIS 20224, at *42 (finding that absolute privilege does not apply to statements made during a university disciplinary proceeding even when the defendant in that proceeding filed a defamation lawsuit based on the same statements.)

With respect to the NIH proceeding and van der Stelt's federal lawsuit (the "Relevant Proceedings"), it is true that judicial privilege can apply to participants in judicial or quasi-judicial proceedings, but only if (1) the speaker is involved in the proceeding; (2) the allegedly defamatory statements are made in the course of or preliminary to that proceeding and (3) the statements are related to the proceeding.  *Teltschik v. Williams & Jensen, PLLC*, 748 F.3d 1285, 1287 (D.C. Cir. 2014); *Marsh v. Hollander*, 339 F. Supp. 2d 1, 8 (D.D.C. 2004).  Even if the Relevant Proceedings were quasi-judicial, judicial privilege would not apply because her Statements were not made preliminary to them and were not sufficiently related to them.  She is clearly a party to the Relevant Proceedings, but many of her Statements were made long before either had begun and thus cannot be classed as being made "preliminary" to them.  A statement is preliminary to a proceeding if it happens directly before a proceeding.  *See Arneja v. Gildar*, 541 A.2d 621, 622 (D.C. 1988) (finding that a statement was preliminary to a proceeding when made in a hearing room while the parties were waiting for the examiner to arrive.)  Van der Stelt's statements do not meet this standard.  She began making defamatory statements about Turkeltaub as early as June 2022.  (*See* CC ¶¶ 107, 155-63.)  She filed her NIH complaint on March 1, 2023, and her federal lawsuit on

July 31, 2023. (CC ¶¶ 144, 155.)  While some of her Statements occurred after these filings, many significantly preceded them, but are not time barred because of the discovery rule discussed above.

Additionally, van der Stelt's Statements are not sufficiently related to the Relevant Proceedings to warrant the application of judicial privilege.  Sufficient relation has been found in instances of (1) conferences and other communications preliminary to a judicial proceeding; (2) written correspondence between parties' counsel concerning threatened lawsuits; (3) oral statements that were analogous to statements contained in the demand letter and related to the threat of litigation to the people who would have a direct interest in the outcome; and (4) statements contained in a letter sent as part of an attorney's pre-suit investigation. *Finkelstein, Thompson & Loughran v. Hemispherx Biopharma, Inc.,* 774 A.2d 332, 341 (D.C. 2001).  As Turkeltaub has pleaded, none of those situations is present in this case.  Rather van der Stelt shared her Statements in venues that were completely unrelated to either Relevant Proceeding, such as to a faculty member at another university and to Boersma, the CRL's main patient referral source.  (CC ¶¶ 148-49, 163.)

While the Motion claims that the relatedness prong should be "very liberally construed" (Mot. at 15), liberality is not the same as infinity.  The liberal standard cannot be met "merely by showing that the defamatory comments were triggered by some pending lawsuit *or the facts involved therein*."  *Brown v. Collins*, 402 F.2d 209, 213 (D.C. Cir. 1968) (emphasis added).  That is the situation here.  The Relevant Proceedings were not pending, imminent or even vaguely contemplated when many of the Statements were made.  Van der Stelt seeks to claim privilege merely because her Statements are related to the "facts" that she alleged in her Title IX investigation.

A corollary of the relatedness requirement is that the person to whom the defamatory statements are made must have an interest in or connection to the proceeding.  *Armenian Assembly of Am., Inc. v. Cafesjian*, 597 F. Supp. 2d 128, 140 (D.D.C. 2009).  Here van der Stelt fails as well, and Turkeltaub has pleaded as much.  She made statements to people well beyond those interested in her proceedings.  While she claims that she made statements only "to persons with a connection or interest in the investigations or related proceedings" in order to "develop and litigate her claims effectively," there is no evidence of this. (Mot. at 17-18.)

In fact, she asked only one individual to act as a "character witness" for her, and not as a witness to events occurring between her and Turkeltaub. (CC ¶ 140.) She made this request only in July 2023, at least three months after she had begun her defamatory campaign against Turkeltaub to this student. (CC ¶¶ 137, 140.) In earlier conversations, van der Stelt made no reference to the Title IX proceedings that she had already initiated against Turkeltaub. (CC ¶¶ 137-39.) Nor did she seek the individual's support in pursuing her federal claims. (CC ¶¶ 137-39.) The only request she made before July 2023 was that the student remove Turkeltaub from her thesis committee. (CC ¶¶ 137, 139.) Van der Stelt did not make a similar request to any other individuals to whom she made defamatory statements. (*See* CC ¶¶ 128-29, 134-36, 139, 141, 144, 149, 151, 156-63)

Finally, absolute privilege does not apply to statements made to third parties which were not intended to initiate judicial or quasi-judicial proceedings. *See Fogel v. Univ. of the Arts*, No. 18-5137, 2019 U.S. Dist. LEXIS 51763, at *29 (E.D. Pa. Mar. 27, 2019) (protecting comments made to a university's Title IX coordinator from defamation claims, but allowing a defamation suit related to statements made to third parties to continue). Van der Stelt made many comments to third parties without intending to initiate judicial or quasi-judicial proceedings, such as (1) telling IPN students that Turkeltaub was "grooming" her and other female lab members (CC ¶¶ 132, 134, 136); (2) telling current and former IPN graduate students, and faculty at other universities that he had sexually harassed her and tried to touch her inner thigh (CC ¶¶ 139, 141, 149); and (3) sharing her allegations of sexual harassment with other Georgetown graduate students at WISE events (CC ¶ 151) and with CRL's patient referral source. (CC ¶ 163.)

These hurtful and defamatory statements were intended not to initiate judicial or quasi-judicial proceedings against Turkeltaub, but to damage his reputation and professional standing. In one conversation, van der Stelt even sought support for her press strategy, which suggests that she was not seeking to start a judicial proceeding, but was instead trying to destroy Turkeltaub's reputation. (CC ¶ 150.) Van der Stelt's comments therefore are not protected by absolute privilege.

      b.  D.C. Human Rights Act ("DCHRA") Does Not Shield Van der Stelt's Statements from a Defamation Claim

Van der Stelt additionally claims that her statements are shielded from defamation because she was exercising her rights under DCHRA by filing her Title IX action and therefore her statements should be afforded absolute privilege because they are related to her participation in her Title IX investigation.  These claims are unavailing.

To make this argument van der Stelt relies on inapplicable case law such as *Egei v. Johnson*, 192 F. Supp. 3d 81 (D.D.C. 2016).  In *Egei*, the plaintiff brought a Title VII complaint against her supervisor at the Federal Emergency Management Agency ("FEMA").  The judge in her EEOC proceeding found that her allegations were not credible and FEMA later terminated her for lying during the proceedings.  *Id.* at 82.  The plaintiff sued FEMA for retaliatory termination and the federal district court found that Title VII protects an employee from *adverse employment actions* based on any EEOC testimony.  *Id.* at 88-89. (emphasis added.)

Van der Stelt claims this standard applies here because the anti-retaliation measures in Title VII are almost the same as those in DCHRA.  (Mot. at 20.)  However, there is no adverse employment action in this case.  As the Counterclaim makes clear, van der Stelt resigned from Turkeltaub's lab to pursue a PhD program.  (CC ¶ 68.)  She said in her resignation letter, "I'm excited to remind you that my reason for resigning is to pursue a PhD…with you as my mentor. Thank you for three wonderful years of mentorship thus far."  (*Id.*)

Moreover, even if this standard could be imported into Title IX cases, Turkeltaub's defamation claim is not limited to van der Stelt's claims in her Title IX investigation.  Instead, the Counterclaim points to a myriad of other examples of van der Stelt defaming him outside of any supposedly judicial or quasi-judicial context, such as telling a faculty member at another university and IPN alumni, whom she connected with via LinkedIn that Turkeltaub was sexually harassing her.  (CC ¶¶ 148-49.)  While it may be the case that that federal courts in Virginia hold that "there is an absolute privilege against defamation . . . resulting from exercising a right," (Mot. at 20), Turkeltaub's defamation claims do not rest on van der Stelt having exercised her right to file her Title IX action.  Rather, his claims concern her excessive and malicious publication of those comments to parties well beyond those necessary to substantiate a Title IX claim.  (*See* I.C.ii.b *infra*. on her excessive publication and I.C.iv *infra.* on malice.)

  *ii.* *Turkeltaub Sufficiently Pleaded that Van der Stelt's Statements Are Not Protected by Qualified Privilege*

   a. The Self-Reporting Exception Prevents Van der Stelt from the Fair Report Privilege's Protection

Van der Stelt claims that disseminating her Complaint to *The Hoya*, CRL lab members, IPN students and other Georgetown students and faculty is protected by the fair report privilege because her statements were accurate and did not extend beyond the Complaint itself.  The fair report privilege prevents defamation claims arising from "full and accurate publications of official government proceedings." *Myers v. D.C. Hous. Auth.,* No. 1:20-cv-00700-APM, 2021 U.S. Dist. LEXIS 57805, at *7 (D.D.C. Mar. 26, 2021) (citing *Curtis Publ'g Co. v. Vaughn*, 278 F.2d 23, 29, (D.C. Cir. 1960)).  This can defeat defamation claims arising from statements made in filed complaints.

However, this privilege is limited by the self-reporting exception.  Under the self-reporting exception, "[a] person cannot confer this [fair report] privilege upon himself by making the original defamatory publication himself and then reporting to other people what he had stated.  This is true whether the original publication was privileged or not."  Restatement (Second) § 611, cmt. c.  "The self-reporting exception therefore attaches . . . where the claimant files a defamatory complaint, then republishes it in order to avoid [the] liability" that would have attached had the claimant just made the defamatory statements without filing any complaint. *Myers*, No. 1:20-cv-00700-APM, 2021 U.S. Dist. LEXIS 57805, at *17.  It can also apply when there are allegations that the complaint was filed with defamatory intent. *See id*. at *18-19.

Van der Stelt's actions fit squarely within the self-reporting exception to the privilege she seeks.  She filed a defamatory Complaint (CC ¶¶ 155, 157) and then she and her associates disseminated it to *The Hoya* (CC ¶ 161), to CRL lab members (CC ¶¶ 156-57), to IPN students and to other Georgetown students (CC ¶¶ 158-59.) – on top of her many defamatory statements that made no reference to the Complaint.  She now wants to hide behind the fair report privilege to shield herself from liability for all of her defamatory Statements, but District of Columbia courts do not allow this.

There are few rulings on the self-reporting exception.  However, in *Rosenberg v. Helinski,* 616 A.2d 866, 877 (Md. 1992), the Maryland Court of Appeals[1] addressed this issue and this case was adopted by District of Columbia courts in *Myers*, No. 1:20-cv-00700-APM, 2021 U.S. Dist. LEXIS 57805, at *18.  The court in *Rosenberg* found that the plaintiff, an expert witness, was protected by the fair report privilege after he made defamatory comments to the media based on his testimony.  The court ruled this way because there was no indication that he made these comments in bad faith or with intent to harm the defendant.  *Rosenberg*, 616 A.2d at 686.  The court believed that he had not acted in bad faith because he was an

> expert witness in the field of child psychology.  He testified in that capacity, bound by his professional obligations to offer his best judgment. He had no personal stake in the outcome of the hearing.  As he left the courthouse, he was approached by a T.V. news reporter and, in response to her questions, he then accurately and fairly recounted the substance of his testimony in court.  *Id*.

Contrary to plaintiff in *Rosenberg*, van der Stelt did act in bad faith and with intent to harm Turkeltaub.  She knowingly spread false and defamatory statements through her Complaint. (*See* CC ¶ 155, referencing "false statements;" ¶ 157 referencing "defamatory statements" contained within van der Stelt's Complaint; *see also* I.C.iv *infra* on malice.)  Additionally, she knew and approved of her associates' disseminating the defamatory statements within her Complaint. (CC ¶¶ 157-62.)  Filing the Complaint simply enabled van der Stelt to spread her defamatory statements to a broader network of Turkeltaub's peers through *The Hoya's* republication. (CC ¶¶ 28, 161, 165, 176.)  This excessive and broad dissemination of her Complaint to non-parties demonstrates van der Stelt's intent to use the judicial process not to seek justice, but rather to ease her defamatory campaign against Turkeltaub.

Van der Stelt has form in abusing neutral institutions to abet her campaign to bring down Turkeltaub.  Two days before the final hearing at Georgetown to hear her claims of sexual harassment, she simply withdrew her complaint and refused to participate further. (CC ¶ 167.) This was after a 14-month investigation requiring the review of over 400 pages of evidence, and involving 29 witnesses.  (CC ¶ 169.)  Instead of abandoning the inquiry once van der Stelt withdrew, the Hearing Panel decided to continue and held two days of hearings that took testimony

---

[1] Maryland law is traditionally "very persuasive authority" in the District of Columbia when D.C. law is silent on this matter.  *Napoleon v. Heard*, 455 A.2d 901, 903 (D.C. 1983).

from 12 witnesses.  (CC ¶¶ 168-69.)  The Hearing Panel then "unanimously rejected van der Stelt's allegations of sexual harassment." (CC ¶ 170.)

> ### b.  Van der Stelt's Statements Are Not Protected by the Common Interest Privilege Because She Shared the Statements Excessively

The Motion asserts that van der Stelt's defamatory statements are protected by common interest privilege because she only shared these statements with people who had a common interest in preventing sexual harassment at universities and in achieving a fair outcome for her Title IX claim.  That is false.

Common interest privilege allows for the sharing of information with other people when it is necessary for the protection of one's own interest, the interests of a third party or certain public interests.  *Moss v. Stockard*, 580 A.2d 1011, 1024 (D.C. 1990) (quoting Restatement (Second) of Torts, tit. B introductory note (Am. Law Inst. 1977)).  However, excessive publication and acting with malice waives this privilege.  *Tacka v. Georgetown Univ.*, 193 F. Supp. 2d 43, 53 (D.D.C. 2001); *Campbell v. District of Columbia*, 126 F. Supp. 3d 141, 151 (D.D.C. 2015).  In *Tacka*, a professor claimed that the university defamed him by allowing its agents to distribute an accusation of plagiarism to his department and professional community.  *Tacka*, 193 F. Supp. 2d at 49.  The university argued that it had not defamed him because the accusation came up as part of his tenure application and it had a common interest with the department and tenure committee with whom the university shared the disparaging information.  *Id.*  The court denied the university's summary judgment motion, on the grounds there were genuine issues of material fact about whether the university's publication was excessive.  *Id.* at 53-54.  Plaintiff alleged that it was excessive, for example by including people outside the channels described in a faculty handbook for handling plagiarism reports, and sharing it with Tacka's department and tenue committee, not just the Research Integrity Committee established to hear allegations of this sort.  *Id.* at 53.  The court also noted that a colleague's decision to "broadcast the allegation throughout the musicology community" was potentially excessive.  *Id.*

Van der Stelt's publication of sexual harassment allegations against Turkeltaub was similarly excessive.  She claims that she only conveyed her allegations to people who could help with her Title IX investigation at Georgetown and to keep other students safe.  (Mot. at 26.) However, her distribution of her comments to faculty members at other universities (CC ¶ 148)

and to NIH (CC ¶ 144) far exceeded those stated goals and in no way contributed to the "safety" of other students. *See Brown*, 402 F.2d at 211 (finding no conditional privilege for statements made voluntarily and to people whose interests the speaker was not charged with protecting by either a family or special relationship.)  Van der Stelt is trying to use common interest privilege to avoid liability for doing exactly what was done in *Tacka* - broadcasting defamatory remarks throughout a professional community.

Van der Stelt points to *Audain v. Am. Univ.*, No. 94-2676 (TFH) 1997 U.S. Dist. Lexis 21730, at *3 (D.D.C. Dec. 11, 1997) because there the common interest privilege protected a law professor who circulated a complaint against his former law school to other schools that were interested in hiring him.  But that case is clearly distinguishable from van der Stelt's since the law professor gave his complaint only to law schools that specifically asked why he left his previous job. *Id.* at 5. Crucially, he did not share the complaint with any law schools that did not ask why he had left his previous job, narrowly tailoring his distribution to those who asked and had a good reason to get an answer. *Id*.

Van der Stelt's behavior was starkly different.  She and her friends distributed her Complaint widely (CC ¶¶ 156-62) and for no other reason than to defame Turkeltaub.  Van der Stelt also acted with malice when she knowingly shared these false Statements with others.  This is shown in more detail in I.C.iv *infra*.  As such, she cannot avail herself of the protection of the common interest privilege.

      iii.    *Turkeltaub Has Adequately Pleaded that Van der Stelt Was At Least Negligent in her Publishing of Those Statements*

        a.  Turkeltaub Is Not a Limited Public Figure and Is Therefore Not Required to Demonstrate Malice on the Part of Van der Stelt

Van der Stelt claims that Turkeltaub "concedes" that he is a "limited public figure" in his Counterclaim because it describes his many scientific accomplishments, and that, as a result, his defamation claim depends on proving she acted with malice.  (Mot. at 33.)  In fact, she did act with malice, as described below.  But he does not need to prove malice, because while an accomplished scientist, Turkeltaub is not close to being a limited public figure as defined in defamation case law.

A limited public figure is "an individual [who] voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues .

. ." *Salem Media Grp., Inc. v. Awan*, 301 A.3d 633, 647 (D.C. 2023).  The District of Columbia Circuit uses a three-prong test to determine whether an individual is a limited-purpose public figure: (1) there is a public controversy; (2) the claimant played a sufficiently central role in it; and (3) the alleged defamatory statement is germane to the claimant's participation in the controversy. *Jankovic v. Int'l Crisis Group*, 72 F.Supp. 3d 284, 301 (D.C. Nov. 4, 2014).  Turkeltaub does not meet this definition.

A public controversy must be more than a matter of interest to the public and its outcome must affect people who are not direct participants in it.  *Salem Media Grp., Inc.*, 301 A.3d at 648.  Also, the controversy to which the defamation relates must have been discussed by the public prior to the defamation.  *Id*.  In determining whether there is a public controversy, a court examines whether "the press was covering the debate, reporting what people were saying and uncovering facts and theories to help the public formulate some judgment." *Kahl v. Bureau of Nat'l Affairs, Inc.*, 856 F.3d 106, 113 (D.C. Cir. 2017) (internal quotations omitted).  The controversy in which van der Stelt embroiled Turkeltaub does not meet this standard.  First, the allegations were limited to only his lab at Georgetown University.

Second, the allegations made against Turkeltaub himself have not been picked up by national nor international media outlets.  Only the student newspaper at Georgetown reported on van der Stelt's lawsuit against him and his Counterclaim.  The articles, as indicated by their titles ('Georgetown University and Professor Named in Sexual Harassment Lawsuit' and 'Professor Accused of Sexual Harassment Countersues Student for Defamation'), were factual reports of van der Stelt's claims against Turkeltaub and Turkeltaub's subsequent response through his Counterclaim. (Mot. at Exhs. 1, 2.)  Neither of the articles touched upon issues such as the #MeToo movement, or the safety of college students on campus that might interest the broader public.  Neither article sparked social unrest among Georgetown students or elsewhere.  The only participants in the articles were IPN students, van der Stelt, Turkeltaub, and their respective counsel.

Third, there was no discussion of Turkeltaub sexually harassing anyone prior to van der Stelt's defamatory statements.  Turkeltaub solicited anonymous feedback about his lab prior to van der Stelt making any defamatory remarks.  The feedback was overwhelmingly positive, except

for criticisms of van der Stelt.  (CC ¶¶ 101-03) (describing his lab as "the healthiest environment," and "supportive and laid back.")  Thus, Turkeltaub's situation does not meet the standard of a public controversy.

Next, to determine whether someone is a limited public figure, District of Columbia courts look to how and to what degree the person participated in the public controversy.  *Salem Media Grp., Inc.*, 301 A.3d at 649-51.  Engagement with the media is an important factor for courts in determining this prong and simply responding to defamatory statements in the press is not sufficient.  *Id.* at 649.  Instead a limited public figure must thrust themselves to the forefront of a controversy to try to influence its outcome.  *Kahl*, 856 F.3d at 113.  To determine whether a person meets this part of the test, the court considers "the plaintiff's past conduct, the extent of press coverage, and the public reaction to his conduct or statements."  *Id.* at 114.

Turkeltaub's conduct does not meet this prong.  He has had almost no interaction with the media, and he has not tried to use the press to influence or counter the corrosive narrative that van der Stelt has spread about him.  Turkeltaub has been mentioned in only two online articles published by the same student newspaper at Georgetown University, *The Hoya*.  On August 24, 2023, *The Hoya* republished defamatory statements made by van der Stelt in her Complaint after her attorneys shared the lawsuit with the outlet.  (CC ¶ 161.)  Turkeltaub did not participate in this article.  His attorney, Dr. Ann Olivarius, provided a short statement to deny the truth of van der Stelt's defamatory statements that he "sexually harassed a once graduate student in his department."  (Mot. at Exh. 2.)

On March 19, 2024, *The Hoya* published an article concerning Turkeltaub's counterclaim. Turkeltaub's participation in this article was limited to responding to van der Stelt's defamatory statements about his treatment of her.  (Mot. at Exh. 1.)  Turkeltaub made no comments in any media articles or otherwise.

Finally, as Turkeltaub has pleaded, van der Stelt's defamatory statements are not germane to the public controversy because, as explained above, there is no public controversy.  "The purpose of the germaneness inquiry is to ensure . . . that publishers cannot use an individual's prominence in one area of public life to justify publishing negligent falsehoods about an unrelated aspect of the plaintiff's life."  *Kahl*, 856 F.3d at 114 (internal quotation and citation omitted).  Van

der Stelt's is trying to do just that.  She is attempting to use Turkeltaub's prominence in his scientific community to justify spreading false statements about sexual harassment.

Since Turkeltaub fails to meet any of the prongs of the test, he is not a limited public figure. Thus, he is not required to plead that van der Stelt acted with malice.

### iv.  Even If Actual Malice Is Required, Turkeltaub Has Pleaded Sufficient Facts to Meet this Standard

Even if Turkeltaub were a limited public figure, he could recover damages for defamation by showing that van der Stelt acted with actual malice.  *Kendrick v. Fox Television,* 659 A.2d 814, 821 (D.C. 1995) (citing *Foretich v. CBS, Inc.,* 619 A.2d 48, 59 (D.C. 1993)).  A defendant acts with actual malice when he or she makes an allegedly defamatory statement about the plaintiff that either he or she knows is false or should have known is false.  *Id.*

Van der Stelt has alleged that Turkeltaub has not adequately pleaded malice in his counterclaim because he only stated the legal standard.  (Mot. at 27.)  However, the facts in the Counterclaim clearly fit the standard for malice: that van der Stelt knew or should have known that her defamatory statements were false at the time she published them.  As to her statements that Turkeltaub "sexually harassed" her, in fact van der Stelt actively encouraged the behavior she now mischaracterizes as "sexually harassing," showing that it was neither unwelcome nor harassing. This includes, but is not limited to, van der Stelt: initiating jokes of a sexual nature (CC ¶ 62), actively encouraging Turkeltaub to make jokes (CC ¶¶ 57-61), initiating and requesting hugs with and from Turkeltaub (CC ¶¶ 67, 77, 94), saying she "loved" Turkeltaub (CC ¶¶ 76-77, 89, 94), encouraging Turkeltaub to share details of his marriage (CC ¶¶ 66, 75), initiating text exchanges with Turkeltaub (CC ¶ 54), seeking contact with Turkeltaub outside of work (CC ¶ 78), complimenting Turkeltaub on his clothing and seeking compliments from him on hers.  (CC ¶¶ 81-82.)

Once her position changed from lab manager and Turkeltaub's daily work partner to first-year graduate student like any other, prompting Turkeltaub to become more formal towards her, van der Stelt misconstrued this as a humiliating personal rejection and rewrote their past friendly relationship into a series of offensive behaviors by Turkeltaub.  She has made these claims of

sexual harassment, which she knew or should have known were false as required by the malice standard, to many people, as set out in the Counterclaim. (*See* CC ¶¶ 141, 143, 151, 163.)

Another clear example of van der Stelt acting with malice described in the Counterclaim was her telling others that Turkeltaub "groomed" other female lab members. (CC ¶¶ 132, 134, 136.) On March 30, 2023, a female graduate student in Turkeltaub's lab who had heard the grooming rumor sent an email to van der Stelt and others stating that the grooming characterizations were false. (CC ¶ 135.) Van der Stelt continued to spread this accusation anyway. (CC ¶ 136.)

Van der Stelt's allegations regarding Turkeltaub's "sexual harassment" of her were also thoroughly investigated by Georgetown's Title IX office and were unanimously rejected. (CC ¶¶ 169-70.) *Mann*, No. 2012-CA-008263-B LEXIS 7, at *31-35, is instructive on this point. In *Mann*, the plaintiff alleged libel against the defendant for defamatory statements about plaintiff's work and research methods. *Id*. at 7-8. Although plaintiff presented only limited evidence to demonstrate malice, the Court allowed the plaintiff's claim of actual malice to survive a motion to dismiss because the defendant's defamatory comments about plaintiff's work were proven wrong by independent panels which judged plaintiff's work to be sound. *Id.* at 33-34. This provided "sufficient evidence to find that further discovery might uncover evidence of 'actual malice.'" *Id.* at 34.

Here, van der Stelt's statements about Turkeltaub formed the basis of a formal investigation into his behavior. (CC ¶ 118.) This led to a comprehensive hearing chaired by an external consultant. (CC ¶ 168.) The Hearing Panel "heard from Turkeltaub and 12 other witnesses." (CC ¶ 169.) The Panel "unanimously rejected" van der Stelt's allegations of sexual harassment. (CC ¶ 170.)

Finally, whether a defendant acted with malice is a question of fact for the jury. *Tacka*, 193 F. Supp. 2d at 54. It is therefore premature for the Court to grant van der Stelt's motion to dismiss on this basis.

  v. *Turkeltaub Has Adequately Pleaded that He Was Harmed by Van der Stelt's Statements*

   a. Turkeltaub Is Not Responsible for the Harm Van der Stelt's Defamation Has Done to Him

Van der Stelt tries to obfuscate the harm her defamatory statements have caused Turkeltaub by arguing that Turkeltaub is himself responsible for that harm.  (Mot. at 34.)  To make such an argument, van der Stelt introduces into her Motion a range of new facts that feature neither in her Complaint nor Turkeltaub's Counterclaim about media articles in the wake of the Counterclaim. *Id.*  She wrongly contends that *The Hoya*'s article "summarizing Turkeltaub's Counterclaim" restated "all of the alleged defamatory statements in van der Stelt's complaint" and that Turkeltaub and his lawyer were involved in "disseminating the exact same material" as van der Stelt through their involvement in *The Hoya*'s articles.  (Mot. at 34.)  This argument fails when one recognizes that van der Stelt's Complaint is hardly "the exact same material" as the Counterclaim, which is hardly the same as *The Hoya* article.

She takes her argument one step further in its illogic by suggesting that "Turkeltaub cannot claim defamation against van der Stelt . . .when he and his lawyer are disseminating the exact same material prior to publication, as well as participating with the journalistic efforts and being quoted in the resulting news articles."  (Mot. at 34.)  Based on this topsy-turvy approach, any individual falsely accused would be unable to defend themselves by responding to media enquiries about the false accusations for fear of undermining their defamation claim by restating, albeit in the negative, those false accusations.

   b. Turkeltaub Has Sufficiently Shown the Harm Done to Him by Van der Stelt's Defamation

There are two ways to show damages from defamation.  Defamation per se requires an accusation so obviously harmful that no more proof of damages is required.  The second, special harm defamation, requires showing the nature of the damages plus facts that support a causal connection between the defendant's statements and any harm the plaintiff suffered.  *KLEO AG v. Rivada Networks, Inc.*, No. 22-cv-01664 (DLF) 2023 U.S. Dist. LEXIS 205026, at *2 (D.D.C. Nov. 16, 2023).

Turkeltaub has more than met the special harm burden in his Counterclaim.  He has been harmed both professionally and personally by van der Stelt's defamatory comments.

Professionally, he has been harmed by receiving lower teaching evaluation scores (CC ¶ 153), being dropped from a prestigious grant review panel (CC ¶ 146), and from a grant application (CC ¶ 164), and having his main patient referral source stop sending him patients (CC ¶ 163).  Each of these negative effects had a clear causal connection to van der Stelt's defamatory comments about Turkeltaub.

For example, when Turkeltaub received his low teaching evaluations, it was clear from the reviews, particularly one student's comment ("I know what you did"), that the low score resulted from van der Stelt's defamatory statements rather than poor teaching.  (CC ¶ 153.)  Also, he was removed from LCOM as a direct result of van der Stelt's NIH complaint.  (CC ¶ 146.)  This has caused economic harm because he has lost many professional opportunities that come from being a member of LCOM such as networking for research collaborations and greater flexibility in submitting grant applications.  (CC ¶ 147.)  In addition, in September 2023 a colleague removed Turkeltaub from a grant application because the colleague feared that the reviewers would reject the application due to rumors that Turkeltaub was a sexual harasser.  (CC ¶ 164.)  Finally, CRL's main patient referral source, Boersma, stopped referring patients to CRL after van der Stelt began attending an aphasia group that Boersma organized.  (CC ¶ 163.)

Van der Stelt's comments have also hurt Turkeltaub's health.  He now suffers from anxiety disorder, adjustment disorder, insomnia, depression, panic attacks, trouble concentrating and poor appetite, and he is required to take medication to manage these conditions.  (CC ¶ 154.)

## II.   Turkeltaub Properly Pleaded False Light Sufficiently to Survive a Motion to Dismiss

To state a claim for false light, a plaintiff must allege that there was (1) publicity (2) about a false statement, representation or imputation (3) understood to be of and concerning the plaintiff, and (4) which places the plaintiff in a false light that would be offensive to a reasonable person. *Kumar v. George Wash. Univ.,* 174 F. Supp. 3d 172, 190 (D.D.C. 2016). "[W]here the plaintiff rests both his defamation and false light claims on the same allegations . . . the claims will be analyzed in the same manner."  *Close It! Title Servs. v. Nadel*, 248 A.3d 132, 140 (D.C. 2021) (internal quotation omitted.)

Like his defamation claim, Turkeltaub's false light claim stems from van der Stelt's statements (1) to current and former IPN students and other Georgetown students that Turkeltaub sexually harassed her and touched her inner thigh (CC ¶¶ 128-29, 139, 141, 149, 151); (2) to current and former IPN students that he "groomed" female members of his lab (CC ¶¶ 132, 134-36); and (3) to Turkeltaub's professional community that he had sexually harassed her and touched her inner thigh (CC ¶¶ 143-44, 149, 163). The false light claim also relates to van der Stelt disseminating the false statements contained in her Complaint to current CRL lab members, current and former IPN students, members of Turkeltaub's professional community and media outlets.

Van der Stelt asserts that Turkeltaub's false light claim must fail because his defamation claim fails. For the reasons set forth in section I above, Turkeltaub has sufficiently alleged that van der Stelt's statements are defamatory. Accordingly, Van der Stelt's motion to dismiss Turkeltaub's false light claim should also be denied.

**III.     Conclusion**

Turkeltaub and van der Stelt give markedly different accounts of the same legally salient events. Van der Stelt claims that this is fatal to his claim that she has defamed him. In fact, it makes his Counterclaim improper for dismissal at this stage. Only publications that are capable of two meanings, one of which would be libelous and actionable and the other not, present fact issues. *Myers*, 2021 U.S. Dist. LEXIS 57805, at *12 (citing *Curtis Publ''g Co. v. Vaughan*, 278 F.2d 23, 32 (D.C. Cir. 1960)). That is our situation here.

At a minimum, to resolve the Counterclaim, more facts are needed to determine, for example, when Turkeltaub found out about the "grooming" allegation (CC ¶¶ 132-35), whether van der Stelt acted with malice (see *supra.* I.C.iv), and whether van der Stelt abused privilege by broadly disseminating her accusations that Turkeltaub sexually harassed her (*see supra*. I.C.ii.b). *Mosrie v. Trussell*, 467 A.2d 475, 477 (D.C. 1983) (noting that whether a defendant abused privilege is a question of fact for the jury.)

"Dismissal with prejudice is the exception, not the rule, in federal practice because it operates as a rejection of the plaintiff's claims on the merits and [ultimately] precludes further litigation of them." *Libre by Nexus v. BuzzFeed, Inc*., 311 F. Supp. 3d 149, 158 (D.D.C. 2018).

(internal quotation omitted.)  As such, if this Court were to find Turkeltaub's claims deficient (and it should not), it should grant him leave to amend his Counterclaim to address the Court's concerns.

For the foregoing reasons, Turkeltaub respectfully asks this Court to deny van der Stelt's Motion to Dismiss in its entirety.


Dated: June 13, 2024

By: _/s/ Dr. Ann Olivarius_

Dr. Ann Olivarius

McALLISTER OLIVARIUS
641 Lexington Avenue
13th Floor
New York, NY 10022
Telephone: (212) 433-3456
aolivarius@mcolaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 13th day of June, 2024, I caused a true and correct copy of Counter-Plaintiff Peter Turkeltaub's Opposition to Counter-Defendant's Motion to Dismiss to be served on Counter-Defendant Candace van der Stelt via ECF.

_/s/ Dr. Ann Olivarius_

Dr. Ann Olivarius

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| CANDACE VAN DER STELT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 23:cv-02212-RDM |
| v. | ) | |
| | ) | Hon. Loren L. AliKhan |
| GEORGETOWN UNIVERSITY, | ) | |
| GEORGETOWN UNIVERSITY MEDICAL | ) | |
| CENTER, BIOMEDICAL GRADUATE | ) | |
| EDUCATION, and PETER TURKELTAUB, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| PETER TURKELTAUB, | ) | |
| | ) | |
| Counter-Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CANDACE VAN DER STELT, | ) | |
| | ) | |
| Counter-Defendant. | ) | |
| | ) | |
| | ) | |
| | ) | |

**[PROPOSED] ORDER**

Upon consideration of Counter-Plaintiff's Opposition to Counter-Defendant's Motion to Dismiss in the above-captioned matter, and any Reply thereto, it is hereby determined that Turkeltaub's Counterclaim states valid claims against Counter-Defendant based on statements she made that are neither time barred nor privileged.

**ORDERED** that Counter-Defendant's Motion to Dismiss is **DENIED**.

**SO ORDERED**.

Entered:_____

_____
United States District Judge

Copies to:

Dr. Ann Olivarius (Bar No. 429231)
McAllister Olivarius
641 Lexington Avenue
13th Floor
New York, NY 10022
Tel: (212) 433-3436
aolivarius@mcolaw.com
*Attorney for Counter-Plaintiff Peter Turkeltaub*

Gary M. Gilbert, Esq. (Bar No. MD15808)
Elizabeth Wilson, Esq. (Bar No. 491007)
Gilbert Employment Law P.C.
8403 Colesville Road, Suite 1000
Tel: (301) 608-0880; Fax: (301) 608-0881
Gary-efile@gelawyer.com
ewilson@gelawyer.com
ccohen-efile@gelawyer.com

*Counsel for Counter-Defendant Candace van der Stelt*

Henry Platt
Saul Ewing LLP
1919 Pennsylvania Avenue NW, Suite 550
Washington, DC 20006
Tel: (202) 342-3447; Fax: (202) 337-6065
Henry.platt@saul.com

Joshua W.B. Richards
Saul Ewing LLP
1500 Market Street
38th Floor, West Tower
Philadelphia, PA 19102
Tel: (215) 972-7737; Fax: (215) 927-7725
Joshua.richards@saul.com

Nicole Edmond Chammas
Saul Ewing LLP
1919 Pennsylvania Avenue NW
Suite 550
Washington, DC 20006
202-295-6613
Fax: 202-337-6065
Email: nicole.chammas@saul.com

*Attorneys for Defendant Georgetown University*