**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CANDACE VAN DER STELT,<br><br>Plaintiff,<br><br>v.<br><br>GEORGETOWN UNIVERSITY,<br>and PETER TURKELTAUB<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No. 1:23-cv-02212-LLA

Hon. Loren L. AliKhan

| | |
|---|---|
| PETER TURKELTAUB,<br><br>Counter-Plaintiff<br><br>v.<br><br>CANDACE VAN DER STELT,<br><br>Counter-Defendant | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

# TABLE OF CONTENTS

I.   Defendant's Counterclaim Does Not Satisfy the First Element of a Defamation Claim........ 5

A.   Turkeltaub Has Not Alleged Sufficient Facts to Support the Inference that Ms. van der Stelt's Allegations Were False. ................................................................................................. 6

B.   Van der Stelt's Statements Reflect Her Opinion of Turkeltaub's Admitted Behaviors. .... 7
 i.   Whether the Conduct was Welcome is an Opinion ........................................................ 7
 ii.   Qualifying Language Is Not Needed to Express an Opinion....................................... 11

C.   Since the Georgetown Hearing Was Non-adversarial and Conducted by a Non-Neutral Party and Its Conclusions Do Not Prove the Falsity of Ms. van der Stelt's Statements. ......... 13

II.   The Discovery Rule Does Not Make Defendant's Claims Timely....................................... 14

III.   Absolute Judicial Privilege Applies To Ms. van der Stelt's Statements.............................. 18

IV.   The DCHRA Shields Ms. van der Stelt from a Defamation Claim. ..................................... 20

1

V.   Qualified Privilege Applies To Ms. van der Stelt's Statements. ........................................... 21

   A.   Ms. van der Stelt's Qualified Privilege Is Not Vitiated by the Self-Reporting Exception. 21

   B.   Ms. van der Stelt Did Not Share Her Statements Excessively and So They Are Protected by the Common Interest Privilege. ........................................................................................... 23

   C.   As A Limited Public Figure, Turkeltaub Is Required To Prove Ms. van der Stelt Acted With Malice. .............................................................................................................................. 25

VI.   Turkeltaub's counterclaim is not well-pleaded and does not State a Defamation Claim ..... 30

VII.   Defendant insufficiently pleads false light. ......................................................................... 32

VIII. Conclusion ............................................................................................................................. 33

# TABLE OF AUTHORITIES

## CASES

*Alade v. Borg-Warner Protective Servs. Corp.*, 28 F. Supp. 2d 655, (D.D.C. 1998) .................. 23

*Anas v. Brown*, 702 N.Y.S.2d. 732, (N.Y. App. Div. 2000) ........................................................ 23

*Armstrong v. Thompson*, 80 A.3d 177, (D.C. 2013) ............................................................ passim

*Arthur Young & Co. v. Sutherland*, 631 A.2d 354, (D.C. 1993) ............................................... 20

*Ashcroft v. Iqbal*, 556 U.S. 662, (2009) ............................................................................ 21, 29

Ashford v. Evening Star Newspaper Co., 41 App. D.C. 395, (1914) ......................................... 22

*Associated Producers, LTD v. Vanderbilt Univ.*, 76 F. Supp. 3d 154, (D.D.C. 2014) ............... 14

*Bauman v. Butowsky*, 377 F. Supp. 3d 1, (D.D.C. 2019) ..................................................... 10, 11

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, (2007) .................................................................... 29

*Blodgett v. University Club,* 930 A.2d 210, (D.C.2007) ................................................... 4, 22, 23

*BYD Co. Ltd. v. All. for Am. Mfg.*, 554 F. Supp. 3d 1, (D.D.C. 2021), *aff'd*, No. 21-7099 (D.C. Cir. May 10, 2022) ................................................................................................................... 5

*Chandler v. Berlin*, 998 F.3d 965, (D.C. Cir. 2021) ................................................................. 15

*Conservative Club of Washington v. Finkelstein,* 738 F. Supp. 6, (D.D.C. 1990) ...................... 18

*Couch v. Verizon Comm. Inc.*, 105 F.4th 425, (D.C. Cir. 2024) .......................................... 28, 31

*Egei v. Johnson*, 192 F. Supp. 3d 81 (D.D.C. 2016) ................................................................. 19

*Equal Emp. Opportunity Comm'n v. Virginia Carolina Veneer Corp.*, 495 F. Supp. 775, (W.D. Va. 1980) ........................................................................................................................... 18, 19

*Eramo v. Rolling Stone*, LLC, 209 F. Supp. 3d 862, (W.D. Va. 2016) ...................................... 25

*Fells v. SEIU*, 281 A.3d 572, (D.C. 2022) ............................................................................... 25

*Fenwick v. District of Columbia*, No. 2018 CA 002521 B 2018 D.C. Super. LEXIS 725, (D.C. Super. Ct. Oct. 22, 2018) ...................................................................................................... 30

Ford Motor Credit Co. v. Holland, 367 A.2d 1311, (D.C.1977) ............................................... 23

*Fridman v. Orbis Bus. Intelligence Ltd.*, 229 A.3d 494, (D.C. 2020) ............................. 25, 26, 28

*Gibson v. Boy Scouts of Am.*, 360 F. Supp. 2d 776, (E.D. Va. 2005) ........................................ 10

*Gonzales Ramos v. ADR Vantage, Inc.*, 2021 U.S. Dist. LEXIS 186265, (D.D.C. Sep. 29, 2022) ...................................................................................................................................... 15, 16, 17

*Green Acres Trust v. London*, 141 Ariz. 609, 688 P.2d 617, (1984)...........................................21

*Hoffman v. Hill & Knowlton, Inc.*, 777 F. Supp. 1003, (D.D.C. 1991) ......................................29

Ingber v. Ross, 479 A.2d 1256, 1264 n. 8, (D.C. 1984) .......................................................22

*Jankovic v. Int'l Crisis Grp.*, 822 F.3d 576, (D.C. Cir. 2016)...............................................28

*Kahl v. Bureau of Nat'l Affairs, Inc.* 856 F.3d 106, (D.C. Cir. 2017)......................................5

*Khan v. Yale Univ.*, 347 Conn. 1, 52 (Conn. 2023) ..........................................................13

*Levant v. Whitley*, 755 A.2d 1036, (D.C. 2000)..............................................................31

*Liberty Lobby v. Dow Jones & Co.*, 838 F.2d 1287, (D.C. Cir. 1988) ....................................6, 9

*Libre by Nexus v. BuzzFeed, Inc.*, 311 F. Supp. 3d 149, (D.D.C. 2018) ................................29

*Lohrenz v. Donnelly*, 350 F.3d 1272, (D.D.C. 2002).......................................................27

*Mattiaccio v. DHA Group, Inc.*, 908 F. Supp. 2d 136, (D.D.C. 2012) ................................30

*Maupin v. Haylock*, 931 A.2d 1039, (D.C. 2007)........................................................14, 15

*McClure v. American Family Mut. Ins.* Co., 223 F.3d 845, (8th Cir. 2000)..............................10

*McFadden v. Wash. Metro. Area Transit Auth.*, 949 F. Supp. 2d 214, (D.D.C. 2013) .... 14, 16, 17

*Moldea v. New York Times Co.*, 22 F.3d 310, (D.C. Cir. 1994) ..........................................31

*Momenian v. Davidson*, 878 F.3d 381, (D.C. Cir. 2017).................................................14

Mosrie v. Trussell, 467 A.2d 475, (D.C.1983) ............................................................23

*Moss v. Stockard*, 580 A.2d 1011, (D.C. 1990) ................................................22, 23, 24, 26

Mullin v. Wash. Free Weekly, 785 A.2d 296, (D.C. 2001)..................................................15

*Myers v. D.C. Hous. Auth.,* No. 1:20-cv-00700-APM, 2021 WL 1167032, (D.D.C. Mar. 26,
        2021) ..................................................................................................20

*Nat'l Life Ins. Co. v. Phillips Pub., Inc.*, 793 F. Supp. 627, (D. Md. 1992)................................25

*Newman v. Howard Univ. School of Law*, No. 1:23-cv-0436 (TNM), 2024 U.S. Dist. LEXIS
        20224, (D.D.C. Feb. 6, 2024) ................................................................17, 18

*NLRB v. Industrial Union of Marine and Ship Workers*, 391 U.S. 418, (1968)..........................18

*Old Dominion Branch No. 496, National Association of Letter Carriers v. Austin*, 418 U.S. 264,
        (1974)..................................................................................................9

*Ollman v. Evans*, 750 F.2d 970, (D.C. Cir. 1984 ).........................................................7, 8, 9, 11

*Oparaugo v. Watts*, 884 A.2d (D.C. 2005) ...............................................................15

*Pettway v. Am. Cast Iron Pipe Co.,* 411 F.2d 998, (5th Cir. 1969) ......................................20

*Ridgewells Caterer v. Nelson*, 688 F. Supp. 760, (D.D.C. 1988) ........................................29

*Rosen v. Am. Isr. Pub. Affs. Comm., Inc.*, 41 A.3d 1250, (D.C. 2012)................................passim

*Rosenberg v. Helinski*, 328 Md. 664, (1992) .............................................................21

*Ruf v. American Broadcasting Co.*, No. 97-1427 (TFH) 1999 U.S. Dist. LEXIS 1092, (D.D.C.
        Jan. 29, 1999)........................................................................................29, 30

*Sig Sauer, Inc. v. Jeffrey S. Bagnell, Esq., LLC*, No. 3:22-CV-885 (JAM), 2024 WL 99469, (D.
        Conn. Jan. 8, 2024) ................................................................................21

*Smith v. Clinton*, 886 F.3d 122, (D.C. Cir. 2018) ..........................................................31

*Stark v. Zeta Phi Beta Sorority, Inc.*, 587 F. Supp. 2d 170, (D.D.C. 2008)................................23

*Stith v. Chadbourne & Parke, LLP*, 160 F. Supp. 2d 1, 7 (D.D.C. 2001) ..............................15, 16

*Stovell v. James*, 810 F. Supp. 2d 237, (D.D.C. 2011) ....................................................29

*Tacka v. Georgetown University*, 193 F. Supp. 2d 43, (D.D.C. 2001)......................................22

*Waldbaum v. Fairchild Publications, Inc.*, 627 F.2d 1287, (D.C. Cir. 1980) ............................25

*White v. Fraternal Order of Police,* 909 F.2d 512, (D.C. Cir. 1990) ....................................6

*Wiggins v. Philip Morris, Inc.*, 853 F. Supp. 470, (D.D.C. 1994) ......................................29

**STATUTES**

D.C. Code § 1–2525 .................................................................................................. 20

**OTHER AUTHORITIES**

Anemona Hartocollis, The New York Times, A Conservative Quits Georgetown's Law School
    Amid Free Speech Fight (June 6, 2022) https://www.nytimes.com/2022/06/06/us/georgetown-
    ilya-shapiro.html ................................................................................................ 26
Chelsey N. Whynot, *ARTICLE: Retaliatory Defamation Suits: The Legal Silencing of the #*
    *MeToo Movement*, 94 TUL. L. REV. ONLINE (2020) ............................................... 13
Georgetown Faculty Handbook ..................................................................................... 27
*Georgetown Sexual Misconduct Policies and Procedures 2022-23*, GEORGETOWN UNIVERSITY, at
    21-22 ..................................................................................................................... 12
Matt Cohen, DCist, Georgetown Law Student Files Lawsuit In Rabbi Voyeurism Case (Dec. 2,
    2014) https://dcist.com/story/14/12/02/georgetown-law-student-files-lawsuit ...................... 26
Restatement (Second) of Torts § 611 (Tentative Draft No. 20, 1974) ............................ 21, 22, 24
Staci Zaretsky, Above the Law, Prominent Georgetown Law Professor Arrested,
    Charged In Domestic Violence Case (Oct. 19, 2023) https://abovethelaw.com/2023/10/shon-
    hopwood-georgetown-law-arrested-domestic-violence/ ................................................ 26
Suzannah Weiss, Teen Vogue, A Georgetown University Professor Responded to Backlash Over
    Her Kavanaugh ........................................................................................................ 26
Tom Jackman, The Washington Post, More alumni accuse former Georgetown provost of sexual
    misconduct (Sept ...................................................................................................... 26

## <u>PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF HER MOTION TO DISMISS</u>

Plaintiff and Counter-Defendant Candace van der Stelt ("van der Stelt"), by and through her undersigned counsel, hereby submits this Reply in support of her Federal Rule of Civil Procedure 12(b)(6) Motion to Dismiss Defendant and Counter-Plaintiff Peter Turkeltaub's ("Turkeltaub") defamation Counterclaim ("CC"). Turkeltaub argues that he has adequately pled his defamation claim; that it is not time-barred; and that the judicial proceedings, fair reporting and common interest privileges do not apply to the allegedly defamatory statements. These arguments fail. Turkeltaub has not pled the statements were false and the statements he alleges are defamatory are subject to a privilege or are barred by the statute of limitations. The Court should dismiss Turkeltaub's defamation Counterclaim as nothing more than a meritless effort to intimidate and silence Ms. van der Stelt and prevent her from exercising her rights. Any contrary result will have a chilling effect and discourage students and employees from raising serious concerns of sexual harassment.

### I.    Defendant's Counterclaim Does Not Satisfy the First Element of a Defamation Claim.

To state a cause of action for defamation, plaintiff must allege and prove "(1) that the defendant made a false and defamatory statement concerning the plaintiff; (2) that the defendant published the statement without privilege to a third party; (3) that the defendant's fault in publishing the statement amounted to at least negligence; and (4) either that the statement was actionable as a matter of law irrespective of special harm or that its publication caused the plaintiff special harm." *Armstrong v. Thompson*, 80 A.3d 177, 183 (D.C. 2013) (quoting *Blodgett v. University Club*, 930 A.2d 210, 222 (D.C.2007); Restatement (Second) of Torts ("Restatement") § 558 (1977); *see also Rosen v. Am. Isr. Pub. Affs. Comm., Inc.*, 41 A.3d 1250, 1256 (D.C. 2012). Turkeltaub admits to the behaviors outlined in Ms. van der Stelt's allegations

but, despite acknowledging their veracity, argues they were "encouraged and welcomed," and that Ms. van der Stelt's statements did not carry "indicia of opinion commonly recognized by law." Opp'n, at 10, 11. He further asserts that the statements were proven false by the December 2023 Georgetown Title IX hearing and a comment by "a member of Turkeltaub's lab" that one of the statements was false. Opp'n, at 12, 13. These arguments are unavailing. He has failed to establish the first element of a defamation claim and thus his Counterclaim is without merit. *BYD Co. Ltd. v. All. for Am. Mfg.*, 554 F. Supp. 3d 1, 6 (D.D.C. 2021), *aff'd*, No. 21-7099 (D.C. Cir. May 10, 2022) (noting that "Rule 12 plays an especially important role in defamation cases."); *Kahl v. Bureau of Nat'l Affairs, Inc.* 856 F.3d 106, 108 (D.C. Cir. 2017) (instructing courts "to expeditiously weed out unmeritorious defamation suits").

### A. Turkeltaub Has Not Alleged Sufficient Facts to Support the Inference that Ms. van der Stelt's Allegations Were False.

Turkeltaub has not alleged sufficient facts to make a facially plausible claim of defamation as he has not alleged facts sufficient to support the inference that Ms. van der Stelt's claims were false. *See* Mot. to Dismiss, at 36. As detailed in Plaintiff's Motion to Dismiss, Turkeltaub admitted that the behaviors outlined in Ms. van der Stelt's Complaint occurred, Mot., at 37-38; he simply denies that they constituted sexual harassment. In D.C. as in other jurisdictions, substantial truth is a complete bar to a defamation action. *See Armstrong v. Thompson*, 80 A.3d 177, 183 (D.C. 2013).

Turketaub does not dispute that the actions Ms. van der Stelt allegedly described are accurate. For example, he alleges that she defamed him by telling another graduate student that he intentionally followed Ms. van der Stelt into a bathroom at a party at his house in June 2021. CC, at 57, ¶ 139. However, Turkeltaub admitted to the Georgetown *Hoya* newspaper that he walked in on Ms. van der Stelt when she was in the bathroom at his home during a party but

6

claimed that he did so in order to show her "a feature of the house in the bathroom" and "denied that the incident was inappropriate." *See* Mot., Ex. 1. As such, Turkeltaub does not, and cannot, dispute the substantial truth of that statement. Similarly, as discussed further below, Turkeltaub does not dispute in his Opposition, and admits in his Counterclaim, that he touched Ms. van der Stelt's skirt and commented on its appearance. CC, at 30, 44, ¶¶ 23, 83. He also admits that he hugged Ms. van der Stelt, CC, at 27, 40, 51, ¶¶ 12, 67, 106, that he held her hand, Answer, at 11, ¶ 81, that their relationship crossed boundaries, CC, at 38, ¶ 60, and that they had "non-professional encounters," CC, at 48-49, ¶ 100. Turkeltaub also acknowledged that he exchanged text messages with Ms. van der Stelt that refer to personal and sexual topics. CC, at 38, ¶¶ 60-61.

Turkeltaub's own admissions that the actions underlying the allegedly defamatory statements did occur, render his claim for defamation and false light meritless. He disputes only Ms. van der Stelt's feelings towards, and subjective understanding of, these actions, which, as discussed further below, cannot be defamatory. Based on this acknowledgment, the statements are substantially true and thus subject to the complete defense. *See Armstrong v. Thompson*, 80 A.3d 177, 187 (D.C. 2018) ("If 'a communication, viewed in its entire context, merely conveys materially true facts from which a defamatory inference can reasonably be drawn' the statement is substantially true") (*quoting White v. Fraternal Order of Police,* 909 F.2d 512, 520 (D.C. Cir. 1990)); *Liberty Lobby v. Dow Jones & Co.*, 838 F.2d 1287, 1292 (D.C. Cir. 1988) (noting that where the "sting of the charge…is substantially true" a defamation claim cannot survive).

**B.  Van der Stelt's Statements Reflect Her Opinion of Turkeltaub's Admitted Behaviors.**

**i.  Whether the Conduct was Welcome is an Opinion**

Instead of disputing that the described actions occurred, Turkeltaub's primary substantive argument that the statements are false is that Ms. van der Stelt "positively encouraged and

welcomed" the behaviors. Opp'n, at 10. However, alleged welcomeness does not prove falsity but rather is a question of opinion not fact. The D.C. courts set a high bar for overcoming the defense of opinion. *See e.g. Armstrong*, 80 A.3d at 183-84. Even when taking all facts pled as true, Turkeltaub cannot meet his burden in overcoming this defense.

Statements cannot be defamatory where the statements at issue "reflect[] one person's subjective view of the underlying conduct and were not verifiable as true or false." *See e.g., id*. at 188; *see also Ollman v. Evans*, 750 F.2d 970, 982 (D.C. Cir. 1984) ("[A] reader cannot rationally view an unverifiable statement as conveying actual facts); *Rosen v. Am. Isr. Pub. Affairs Comm., Inc.,* 41 A.3d 1250, 1258-60 (D.C. 2012). Additionally, where multiple interpretations are possible, a statement cannot be defamatory. *Rosen, Inc.,* 41 A.3d at 1258-60 (reasoning that statements were "too susceptible of multiple interpretations" to support a defamation claim).

Rather than taking issue with the underlying facts, Turkeltaub argues his undisputed actions and conduct were "welcomed." Opp'n, at 10. "Welcomeness" is a subjective opinion and not objective, and thus cannot be proven true or false. [1] *See e.g., Ollman*, 750 F.2d at 982;

---

[1] In fact, Georgetown's own "Policy on Consensual, Sexual, or Romantic Relationship,"which categorically forbids faculty and staff members from entering into sexual or romantic relationships with either students or staff members "over whom he or she has Direct Authority, recognizes "[t]he fact that a relationship was initially consensual or that the person with greater power genuinely thought it was consensual does not insulate that person from a sexual harassment grievance or lawsuit." *See also* Karen Stubaus, "Stop Hugging Your Postdocs – and Learn to Start Conversations that Prevent Harassment," Issues.org, Vol. XXXIX, No. 2 (Winter 2023), https://issues.org/conversations-that-prevent-sexual-harassment-academia-stubaus/ (noting "According to behavioral surveys, academia is second only to the military in its prevalence of sexual harassment against women"). The Georgetown Policy on consensual sexual or romantic relationships applied to Ms. van der Stelt both in her capacity as PhD student and as lab manager of Turkeltaub's law. Ms. van der Stelt was never Turkeltaub's equal, as he misleadingly suggests, CC, at 25, ¶ 5, and, whether she was his lab manager or student, Turkeltaub wielded make-or-break power over Ms. van der Stelt in the small world of clinical neuroscience. The thousands of text messages that Turkeltaub sent to Ms. van der Stelt, and his statements of his romantic feelings towards her, and his admittedly flirtatious actions, clearly violated this internal policy. Even assuming, Turkeltaub believed his conduct was welcome, it

*Armstrong*, 80 A.3d at 188; *Rosen,* 41 A.3d at 1258-60. Turkeltaub admits that he and Ms. van der Stelt agree about what happened but disagree about the meaning of what happened.[2] *See* Opp'n, at 30 ("Turkeltaub and Ms. van der Stelt give markedly different accounts of the same legally salient events"). Turkeltaub and Ms. van der Stelt have different subjective interpretations of the same undisputed facts but that subjective interpretation cannot state a claim for defamation. *See e.g., Ollman*, 750 F.2d at 982; *Armstrong,* 80 A.3d at 188; *Rosen,* 41 A.3d at 1258-60. Although they attach different meanings to the underlying behavior, that does not make Ms. van der Stelt's statements verifiably false. *Id.* The way each party internalized and interpreted the undisputed facts is a question of opinion not fact and thus cannot be defamatory.

For example, regarding one occasion, Turkeltaub states in his Counterclaim that "he commented on how fuzzy [Ms. van der Stelt's skirt] was, and briefly touched the fabric on an innocuous part of the skirt, nowhere near her 'inner thigh.'" CC, at 30, ¶ 23. Ms. van der Stelt's version of events is that "Dr. Turkeltaub then complimented the short skirt she was wearing and reached down to stroke her inner thigh. Ms. van der Stelt dodged his touch, stepped away, and ran into the bathroom. The encounter left Ms. van der Stelt humiliated and frightened." Compl., at 24, ¶ 91. If, as Turkeltaub concedes, the two were standing in a hallway talking, and he reached down to touch the hem of her skirt, it would have brought his hand into close proximity with her thigh. CC, at 30, ¶ 23. Even assuming Ms. van der Stelt was wrong about Turkeltaub's intention to stroke her thigh, the gesture was an intrusive one, and her subjective account of that

---

was incumbent upon him, as the professional superior, to set and maintain appropriate boundaries.

[2] Notably, Turkeltaub does not dispute that Ms. van der Stelt had made it clear to him on multiple occasions that she was becoming increasingly uncomfortable with his behaviors. *See e.g.* CC  29, ¶ 18.

experience, and how it made her feel, cannot form the basis of a defamation suit. *See Armstrong,* 80 A.3d at 188; *see also Liberty Lobby v. Dow Jones & Co*., 838 F.2d 1287, 1292 (D.C. Cir. 1988) (explaining that "[w]here the question of truth or falsity is a close one, a court should err on the side of nonactionability").

Additionally, that Ms. van der Stelt believed Turkeltaub's actions to be harassing is subjective. Turkeltaub is attempting to litigate Ms. van der Stelt's sexual harassment complaint through his defamation lawsuit. If the Court allows this defamation claim to proceed, it sets a dangerous precedent that could discourage students and employees from raising concerns of sexual harassment. Ms. van der Stelt's understanding of sexual harassment does not have to meet the legal definition of sexual harassment in order for it to be her opinion. In *Armstrong*, where the behavior at issue was characterized as "serious integrity violations," 80 A.3d at 186-87, the legal merits of those claims were not at issue; but rather only whether those interpretations could carry a defamation suit. Those defamation claims failed, just as here Ms. van der Stelt's subjective view of whether Turkeltaub's behavior was harassing to her cannot form the basis of Turkeltaub's Counterclaim here.

In a similar vein, several of Turkeltaub's defamation claims refer to Ms. van der Stelt's alleged use of the word "grooming" to describe his behavior. Opp'n, at 7, 12, 13, 15. Especially in the context relevant here, it is far from clear what "grooming" means and what specific conduct the term refers to. *See Ollman*, 750 F.2d at 976 (citing *Old Dominion Branch No. 496, National Association of Letter Carriers v. Austin*, 418 U.S. 264, 284 (1974)) (noting "allegedly libelous language must be evaluated in its broader context to assess whether a reader would have understood the allegation to be a statement of fact"). According to the Oxford English Dictionary, "grooming" has the general meaning of "to prepare or train someone for an important

job or position"[3]   At the very least it is a term "capable of multiple meanings." *Rosen*, 41 A.3d at 1258. On its own, the term does not convey "the specific incidents buried in the words" and can have multiple interpretations. *Id.* at 1259. Thus, the statement cannot be defamatory. *Bauman v. Butowsky*, 377 F. Supp. 3d 1, 11 (D.D.C. 2019).

In similar circumstances, courts have found that a statement that uses words with multiple potential meanings is not defamatory. The court in *Bauman* discussed approvingly the reasoning in *Rosen*, a case in which the D.C. Court of Appeals rejected the argument that a statement that the plaintiff did not comport with the organization's "standards" was defamatory when the organization had no written guidelines for employee behavior. 41 A.3d at 1260. The *Rosen* court highlighted that "standards" is "a general term capable of multiple meanings" and "could have meant many things." *Id*. at 1258, 1260; *see also Bauman*, 377 F. Supp. at 10-11. It also pointed to cases where other general statements were used such as "disloyal" or "best interests" and "unfit." *Rosen*, 41 A.3d at 1259 (citing *McClure v. American Family Mut. Ins.* Co., 223 F.3d 845, 856 (8th Cir. 2000) and *Gibson v. Boy Scouts of Am.*, 360 F. Supp. 2d 776, 781 (E.D. Va. 2005)). What all these generalized terms have is common is that "no one learned of particular incidents from the words used," even though "there may have been specific incidents buried in the words." *Id.*

### ii.   Qualifying Language Is Not Needed to Express an Opinion.

Turkeltaub further asserts that Ms. van der Stelt's statements were not opinion, reflecting her subjective impression of his admitted behavior because statements do not carry "an indicia of

---

[3]*Grooming*, OXFORD ENGLISH DICTIONARY,
https://www.oxfordlearnersdictionaries.com/definition/english/groom_1#:~:text=groom%20something%20%28of%20an%20animal%29%20to%20clean%20the,train%20somebody%20for%20an%20important%20job%20or%20position, (last visited Aug. 14, 2024)

opinion commonly recognized by the law," namely, that they do not contain any qualifying

language such as "I think" or "in my opinion" or "might be possible." Opp'n, at 11 (citing

*Bauman v. Butowsky*, 377 F. Supp. 3d 1, 10-11 (D.D.C. 2019)). But such specific "indicia" are

not a requirement for deciding whether a statement is an opinion or an alleged verifiable fact, but

rather just an example. As the case Turkeltaub relies on, *Bauman v. Butowsky*, makes clear, "[t]he

line between fact and opinion is not always bright," *Bauman*, 377 F. Supp. 3d at 11 (quoting

*Armstrong v. Thompson*, 80 A.3d 177, 187 (D.C. 2013)); "statements tend not to fit 'neatly into

categories of "verifiable" and "unverifiable"' but rather exist on 'a spectrum with respect to the

degree to which they can be verified.'" *Armstrong,* 80 A.3d *at 187 (*quoting *Ollman v. Evans*,

750 F.2d 970, 982 (D.C. Cir. 1984)).

Courts have repeatedly found that qualifying language is not a pre-requisite to expressing

an opinion. For example, in *Armstrong*, the D.C. Court of Appeals affirmed summary judgment

in favor of the defendant in a defamation case involving letters that defendant wrote to a

prospective employer of the plaintiff in which the defendant referenced that plaintiff had been

investigated and disciplined for various specific administrative violations and possible crimes at

his previous job. 80 A.3d at 186-87. The Court dismissed plaintiff's defamation claim because

the references to the administrative and criminal actions were substantially true but dismissed as

opinion defendant's *characterizations* of those investigations as "serious integrity violations,"

"serious misconduct and other violations," "gross misconduct and integrity violations," and

"serious issues of misconduct, integrity violations and unethical behavior." *Id.* at 188. In the

court's opinion, "[a]ll of these reflected one person's subjective view of the underlying conduct

and were not verifiable as true or false," *id*., even though they did not contain "indicia" of

opinion like "I think" or "in my opinion." Similarly, the court found that such warnings as

""Harry is now a liability to your agency," and "[b]y hiring Mr. Armstrong, your agency has

opened itself up to potential liability and Giglio/Henthorn issues in the future should Mr.

Armstrong ever be called to testify on behalf of your agency in a criminal or civil proceeding,"

*id.*, were also opinion, expressing her view of "the import" of the substantially true statements

she had made, despite not being prefaced with any qualifying language. *Id.*

      This well-established standard is a far more nuanced and encompassing standard than the

that put forward by Turkeltaub, as no special qualifying words are required.

### C. Since the Georgetown Hearing Was Non-adversarial and Conducted by a Non-Neutral Party and Its Conclusions Do Not Prove the Falsity of Ms. van der Stelt's Statements.

      Defendant's reliance on the Georgetown Title IX investigation as firm and verifiable

"proof" that the alleged defamatory statements were false is unfounded. Opp'n, at 11. Rather, the

finding concerned whether Ms. van der Stelt met her legal burden in proving a Title IX violation.

*See Georgetown Sexual Misconduct Policies and Procedures 2022-23*, GEORGETOWN

UNIVERSITY, at 21-22,[4] (indicating that the standard of proof used in Title IX proceedings is

"more likely than not"). Failing to meet that standard in a non-adversarial proceeding that Ms.

van der Stelt was not present for is far from conclusive proof of the merits of her claims.

      Indeed, the findings are not entitled to weight because Ms. van der Stelt withdrew her

complaint after Georgetown refused to reschedule the hearing to a date that did not conflict with

her final exam schedule at the University of Pittsburgh which she now attends. *See* Pl. Mot.

Supp., at 108-09, ¶ 139-42. She would have only been permitted to have one "advisor" present at

the hearing. As a result, the hearing was non-adversarial and its conclusions, which did not

decide the veracity of the statements, can in no way be taken as verifying the falsity of Ms. Van

---

[4] https://georgetown.app.box.com/s/gcf6w8a3ce016eyb63kjbchb87c6mj81 (last visited Aug. 16, 2024).

der Stelt's claims. That the hearing was conducted by Georgetown, a Defendant who faced

potential liability, and thus non-neutral, further undermines the significance of the findings.

Moreover, Defendant adduces the fact that Ms. van der Stelt withdrew two days prior to

the hearing as proof that her claims are false. Opp'n, at 15. But this reasoning stands to

perpetuate the hurdles that victims face in sexual assault and harassment cases. *See generally*

Chelsey N. Whynot, *ARTICLE: Retaliatory Defamation Suits: The Legal Silencing of the #*

*MeToo Movement*, 94 TUL. L. REV. ONLINE 1, 13, 17-18 (2020) (discussing the financial burdens

as well as the increase in retaliatory defamation suits in the Title IX context). If this counterclaim

is allowed to proceed, the court will create a further chilling effect for victims of sexual

harassment to come forward and to participate in university sponsored proceedings. *See Khan v.*

*Yale Univ.*, 347 Conn. 1, 52 (Conn. 2023) ("The hesitation to report sexual misconduct may be

especially pronounced on college campuses, and fears and concerns surrounding such reports

would undoubtedly be compounded if victims had to worry that any report they made could also

be the subject of a defamation suit"). Turkeltaub's proposed deference to Georgetown's

investigation would create further hurdles for victims coming forward. Accordingly,

Turkeltaub's attempt to rely on Defendants' own findings about liability is misplaced and

irrelevant.

Turkeltaub does not refute the substantial truth of Ms. van der Stelt's statements and thus

fails to state a claim.

## II.     The Discovery Rule Does Not Make Defendant's Claims Timely.

Turkeltaub argues that allegedly defamatory statements made by Ms. van der Stelt prior

to February 1, 2023, are not barred by the statute of limitations because they are saved by the

discovery rule. *See* CC 56, 57, ¶¶ 128, 129, 131, 132, 134). He argues that the discovery rule

applies because the relevant statements "were made in private to individuals with whom

Turkeltaub had only limited interactions, which prevented him from discovering his injury."
Opp'n, at 15. The discovery rule does not make these statements timely. Turkeltaub cannot avail
himself of it because he  has not identified the date on which he discovered the triggering
information as is required. In addition, the rule is not available where, as here, he was aware of
the alleged wrongdoing or injury even if he was not aware of all of the specific statements.

 Under the discovery rule, "a cause of action accrues when a plaintiff knew or should
have known through the exercise of reasonable diligence of: (1) the existence of the injury, (2)
its cause in fact, and (3) some evidence of wrongdoing." *Momenian v. Davidson*, 878 F.3d 381,
388 (D.C. Cir. 2017) (internal quotation marks omitted). In order for a plaintiff to avail
themselves of the discovery rule, they must identify when they learned to wrongdoing or injury.
*See McFadden v. Wash. Metro. Area Transit Auth.*, 949 F. Supp. 2d 214, 220-21 (D.D.C. 2013)
(applying discovery rule for statements made in March 2011 and plaintiff identifies he learned
about them on July 5, 2011); *Maupin v. Haylock*, 931 A.2d 1039, 1043 (D.C. 2007) (declining to
apply discovery rule where "his sworn deposition response did not definitively state that he
discovered the defamatory material in the newsletter within the year-long period prior to June 7,
2001). Unlike in *Associated Producers, LTD v. Vanderbilt Univ.*, 76 F. Supp. 3d 154, 171
(D.D.C. 2014), on which he relies, Turkeltaub has not stated when he came to discover the
statements that he now alleges were made to other students. Turkeltaub does not state when he
learned of the supposedly "undiscoverable" statements, which is a precondition for the
application of the discovery rule and thus the rule is inapplicable.

Additionally, the discovery rule will not apply if the party alleging defamation "knew of
the existence of an injury, its cause in fact, and *some evidence* of alleged wrongdoing," even if
she does not have precise or specific knowledge of the alleged defamatory statements, as is the

case here.[5] *Gonzales Ramos v. ADR Vantage, Inc*., 2021 U.S. Dist. LEXIS 186265, at *23

(D.D.C. Sep. 29, 2022) (applying D.C. law) (emphasis added); *see also Stith v. Chadbourne &*

*Parke, LLP*, 160 F. Supp. 2d 1, 7 (D.D.C. 2001) (applying D.C. law). *Gonzales Ramos* involved

a defamation claim brought by an employee of the USDA who alleged that USDA superiors

contracted with an outside consultant to smear him in retaliation for his protected union

activities. 2021 U.S. Dist. LEXIS 186265, at *2-8. The alleged defamatory statements were

published in a report released outside of the statute of limitations period to a "handful" of USDA

executives. *Id*. at *5. The court rejected plaintiff's argument that the discovery rule should apply

because an executive had visited the plaintiff's office and made disparaging remarks about the

plaintiff in front of co-workers based on the report more than a year before the plaintiff filed his

action. *Id*. at *22-23. The court reasoned that the three elements necessary to trigger the accrual

of the statute of limitations were satisfied – namely, that the plaintiff knew or should have known

---

[5] It is an unsettled question under D.C. law whether the discovery rule applies to defamation claims outside of the mass media context where publication is obvious. *Maupin v. Haylock*, 931 A.2d 1039, 1041 (D.C. 2007) ("[A]ssuming without deciding that the discovery rule applies in at least some defamation cases"); *Oparaugo v. Watts*, 884 A.2d at 74 n. 8 (D.C. 2005) (noting that "whether the discovery rule should be applied where the statement was undiscoverable…would be an issue of first impression in this jurisdiction"). In dictum, the D.C. Court of Appeals left open whether application of the rule "might be justified" in some cases, including when "the defamatory statement [is] inherently undiscoverable, because it was published secretly and/or the defendant took steps to prevent the plaintiff from uncovering the statement, or in the case of circulars, newsletters or even newspapers addressed to a specialized readership." *Mullin v. Wash. Free Weekly,* 785 A.2d 296, at 299 n. 5 (D.C. 2001). Following *Mullin*'s dictum, federal district courts have held that, for D.C. courts to apply the discovery rule, the statements must have been "inherently undiscoverable." *McFadden v. Wash. Metro. Area Transit Auth*., 949 F. Supp. 2d 214, 221 (D.D.C. 2013) (quoting *Mullin*, 785 A.2d at 299 n. 5) (deciding to apply the rule where defendant's statements were made during a grievance hearing prior to plaintiff's arrival and the plaintiff only discovered the statements later when he reviewed the transcript); *Chandler v. Berlin*, 998 F.3d 965, 971-72 (D.C. Cir. 2021) (noting parties' agreement that discovery rule applied where statements at issue were published in confidential report). Accordingly, Turkeltaub has not argued the statements were "undiscoverable", the discovery rule is inapplicable. *See Mullin,* 785 A.2d at 299 n. 5.

of his injury, its cause in fact, and evidence of wrongdoing – because of the executive's

disparaging remarks. *Id*. at *23-24. That the plaintiff later "learned *more* information" did not

suffice to restart the statute of limitations because, the court reasoned, he had sufficient

information earlier from which he admitted he could have "glean[ed] 'negative comments'"

about him." *Id*. at *20, 24 (quoting *McFadden*, 949 F. Supp. 2d at 221). Likewise, in *Stith*, the

court ruled that the defamation claims were barred specifically because "[e]ven if plaintiff did

not know the precise content of [defendant's] statements until June 1999, he had *sufficient*

*knowledge* that an allegedly defamatory statement was made, of its publication…and of *some*

*injury* resulting from the statements." 160 F. Supp. 2d at 7 (emphasis added).

Here, Turkeltaub acknowledges that he was aware of an anonymous complaint that was

filed against him in October 2022 and knew that "the complaint was based on reports Ms. van

der Stelt had made to a friend who was not a member of CRL." Opp'n, at 15; CC, at 29, ¶ 18.

Even though Turkeltaub "never alleges that [the anonymous complaint] supports his defamation

claim,"[7] Opp'n, at 15, his admission still shows that he had "knowledge" of "some injury"

sufficient to have triggered the statute of limitations. *Stith*, F. Supp. 2d at 7. Furthermore, around

the same time as the anonymous complaint, he had also received an email from Ms. van der Stelt

that she was "chang[ing] thesis labs due to an "ongoing uncomfortable and hostile work

environment."" CC, at 54, ¶ 116. Since this information gave Defendant more than enough

---

[6] *See Gonzalez Ramos*, at *6-*8 (plaintiff did not allege that the statement discovering the alleged defamation was itself defamatory).

[7] Illustrating the court's point, witnesses for the defendants identified multiple unwritten standards to which the statement supposedly referred: "assumed standard that people would obey the law ... [w]ith regard to classified information or any other illegal activity; "adherence to 'counsel's advice;'" and "communication with 'total candor.'" *Rosen v. Am. Israel Pub. Affs. Comm., Inc.,* 41 A.3d 1250, 1257–58 (D.C. 2012).

knowledge to "glean" that "negative comments" were being made about him. *Gonzales Ramos*, 2021 U.S. Dist. LEXIS 186265, at \*24, and that van der Stelt was the likely source, the original allegedly defamatory statement was not "inherently undiscoverable." *Gonzalez Ramos*, 2021 U.S. Dist. LEXIS 186265, at \*20 (quoting *McFadden*, 949 F. Supp. 2d at 221), Turkeltaub was on notice that Ms. van der Stelt was telling other students that Turkeltaub had sexually harassed her and thus of her alleged defamation.

The discovery rule does not make statements prior to February 1, 2023 timely. *Id*.

### III.    Absolute Judicial Privilege Applies To Ms. van der Stelt's Statements.

Even if the statements are not barred by the statute of limitations, they are protected by absolute judicial privilege. Defendant argues that the proceedings at Georgetown are not judicial or quasi-judicial in character and therefore cannot grant absolute privilege to Ms. van der Stelt's statements made after that process was initiated because they are not linked to a judicial process and that the statements were not made preliminary to the filing of the civil action. Opp'n, at 16 (citing *Newman v. Howard Univ. School of Law*, No. 1:23-cv-0436 (TNM), 2024 U.S. Dist. LEXIS 20224, at \*42 (D.D.C. Feb. 6, 2024). Defendant's argument is unavailing.

In arguing that Georgetown's Title IX process is not judicial in nature, Defendant relies solely on *Newman*, which is distinguishable and not applicable. While *Newman* did not extend absolute privilege to statements made before a disciplinary proceeding at Howard Law School. 2024 U.S. Dist. LEXIS 20224, at \*42-44. The disciplinary proceeding at issue there concerned the expulsion of a student who later filed a lawsuit alleging racial discrimination. *Id*. at \*3-12. Unlike here, the university proceeding and subsequent lawsuit addressed separate and distinct issues. *Id*. at \*11-12. The disciplinary proceeding concerned the student's expulsion not his discrimination claims, whereas his ultimate lawsuit involved claims of discrimination and various theories of contract. *Newman*, 2024 U.S. Dist. LEXIS 20224, at \*2, 11-12. Courts tend to

confer absolute privilege where individuals bring actions to redress a harm consistent with "the

"policy of keeping people completely free from coercion in making complaints" that initiate

agency proceedings." *Equal Emp. Opportunity Comm'n v. Virginia Carolina Veneer Corp.*, 495

F. Supp. 775, 778 (W.D. Va. 1980) (quoting *NLRB v. Industrial Union of Marine and Ship*

*Workers*, 391 U.S. 418, 424 (1968)) (granting absolute privilege in the context of Title VII

proceedings). Specifically, "[t]he federal courts have also found an absolute privilege against

defamation or other torts resulting *from exercising a right granted by federal law* like the filing

of a charge of discrimination." *Id*. (emphasis added). Accordingly, Title IX proceedings fall

within the ambit of the judicial privilege protection granted by federal courts.[8]

Turkeltaub acknowledges that related statements made prior to the commencement of the

filing of a civil action may be covered by the judicial privilege but argues that the statements at

issue were not "preliminary" because they occurred months earlier. Opp'n, at 17. As an initial

matter, the case law does not specify timeframe for a period deemed preliminary to the filing of

the civil action but rather applies the privilege to the time period where the individual "was

seriously considering filing a suit." *Conservative Club of Washington v. Finkelstein,* 738 F.

Supp. 6, 14 (D.D.C. 1990). Here, during the timeframe at issue, Ms. van der Stelt retained

counsel and began to pursue her claim through Georgetown's Title IX office, which clearly

demonstrates she was contemplating a civil action. Compl., at 34, ¶ 121. Defendants also

acknowledge the judicial privilege applies to statements that are analogous to the claims in the

civil action and made to parties with an interest in the outcome or a "connection to the

proceeding." Opp'n, at 17-18. The statements at issue were made to interested parties as they

---

[8] Ironically, Turkeltaub argues that the Court should rely on the findings from the Title IX investigation in evaluating the veracity of the statements at issue but simultaneously argues that the proceeding was not judicial and should be afforded no privilege.

were potential witnesses. By its own policy, NIH had an interest in the outcome as its policy requires the reporting of adverse actions taken against its grantees with respect to allegations of harassment or retaliation. *See* Mot., Ex. 4.

As such, Ms. Van der Stelt's statements are protected by absolute judicial privilege and Turkeltaub cannot survive the motion to dismiss.

### IV.   The DCHRA Shields Ms. van der Stelt from a Defamation Claim.

Turkeltaub next argues that the DC Human Rights Act ("DCHRA") does not shield Ms. van der Stelt from a defamation claim. He attempts to distinguish the case on which she relies, *Egei v. Johnson*, 192 F. Supp. 3d 81 (D.D.C. 2016), by asking the Court apply an overly restrictive and literal interpretation of *Egei* and find the case holds only that Title VII protects an employee from adverse employment actions based on EEOC testimony, which are not at issue in the instant case, rather than consider the underlying principles for which *Egei* stands. Opp'n, at 19. He also dismisses the proposition cited in Ms. van der Stelt's Motion to Dismiss that "there exists 'an absolute privilege against defamation…resulting from exercising a right' under the law" as the opinion merely of the "federal courts in Virginia" and again, asks the Court to ignore the underlying rationale espoused in the decisions that are consistent with the purpose of anti-discrimination laws. *Id.* (quoting but not naming or citing *Equal Emp. Opportunity Comm'n v. Virginia Carolina Veneer Corp.,* 495 F. Supp. 775, 778 (W.D. Va. 1980)). Although it is true that *Egai* addresses "adverse employment actions," it and related cases offer reasoning that is on point here: namely, that Title VII's participation clause is to be read "expansively" because doing otherwise would frustrate the remedial purpose of Title VII. *Egai*, 192 F. Supp. 3d at 91 (discussing the "*Pettway* rule"); *cf. Pettway v. Am. Cast Iron Pipe Co.,* 411 F.2d 998, 1004–05 (5th Cir. 1969) (holding that participating in EEOC proceedings confers absolute privilege on even false or malicious statements).

Furthermore, not only have D.C. courts favorably cited *Virginia Carolina Veneer Corp*
but in interpreting the DCHRA,[9] the D.C. Court of Appeals has held "specifically, that the
employer's filing of a lawsuit in retaliation for the employee's complaints of discrimination is a
violation of" the DCHRA, specifically the anti-retaliation provision, D.C. Code § 1–2525. 652
F.2d 380, 383 (4*th* Cir. 1981); *Arthur Young & Co. v. Sutherland*, 631 A.2d 354, 367-68 (D.C.
1993).

## V.       Qualified Privilege Applies To Ms. van der Stelt's Statements.

### A.       Ms. van der Stelt's Qualified Privilege Is Not Vitiated by the Self-Reporting Exception.

Turkeltaub next argues that Ms. van der Stelt's assertion of qualified privileged is vitiated
because her statements fall under the "self-reporting exception" to the fair report privilege,
relying on *Rosenberg v. Helinski*, as adopted by a US district court for the District of Columbia
in *Myers v. D.C. Hous. Auth.,* No. 1:20-cv-00700-APM, 2021 WL 1167032, at *18 (D.D.C. Mar.
26, 2021). As the *Rosenberg* court pointed out, the self-reporting exception to the fair report
privilege appears to originate, *sui generis*, with the Restatement (Second) of Torts:

> The *Restatement* offers no case law in support of its blanket denial of the privilege
> to those persons who report their own defamatory statements made during a court
> proceeding. The [statement of the exception] does not appear in either of the two
> tentative draft versions of § 611 produced before the current, published text. *See
> Restatement (Second) of Torts* § 611 (Tentative Draft No. 20, 1974) and *id.*
> (Tentative Draft No. 21, 1975No. 21, 1975). The decision to include the
> commentary was made after a brief discussion at a meeting of the American Law
> Institute, during which one participant called the proposed comment "a flat
> contradiction of the black letter" law as set forth in § 611.

---

[9] *Arthur Young & Co. v. Sutherland*, 631 A.2d 354, 367 (D.C. 1993) (noting that D.C. courts
look to federal courts interpreting the anti-retaliation clause of Title VII in interpreting the
DCHRA).

*Rosenberg v. Helinski*, 328 Md. 664, 684–85 (1992); *see also* Opp'n, at 15 (admitting "[t]here are few rulings on the self-reporting exception"). Given the doctrine's obscure origins, most courts that have considered the issue, including the Maryland Court of Appeals and a U.S. district court in D.C., have adopted a narrower version of the exception – namely, that "the privilege will be forfeited only if the defamer illegitimately fabricated or orchestrated events so as to appear in a privileged forum in the first place." *Rosenberg v. Helinski*, 616 A.2d 866, 876 (1992); *Sig Sauer, Inc. v. Jeffrey S. Bagnell, Esq., LLC*, No. 3:22-CV-885 (JAM), 2024 WL 99469, at *4 (D. Conn. Jan. 8, 2024) (holding that the "self-reporting exception applies only if the lawsuit itself was filed for a bad faith purpose of allowing the plaintiff to engage in defamatory extra-judicial statements" and that "a party may claim the protection of the fair report privilege if it can show…that its extrajudicial public statements fairly track and report the allegations of the court complaint"); *Green Acres Trust v. London,* 141 Ariz. 609, 688 P.2d 617, 626 (1984) (interpreting the privilege to refer to "the speaker who *by design* uses the privilege to republish defamation he previously made during the public proceeding") (emphasis added).

Here, Turkeltaub has not sufficiently pled bad faith, relying instead only on vague, conclusory assertions that Ms. van der Stelt acted "in bad faith and with intent to harm". Opp'n, at 21; *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"). Moreover, the admission that that actions that form the basis of Ms. van der Stelt's statements actually occurred, as discussed *supra,* further undermines any argument of bad faith. He has not alleged facts to support an inference that Ms. van der Stelt contrived her federal lawsuit solely to confer a privilege on herself to freely repeat her allegations.

**B.  Ms. van der Stelt Did Not Share Her Statements Excessively and So They Are Protected by the Common Interest Privilege.**

The common interest privilege protects statements "(1) made in good faith, (2) on a subject in which the party communicating has an interest, or in reference to which he has, or honestly believes he has, a duty to a person having a corresponding interest or duty, (3) to a person who has such a corresponding interest." *Moss v. Stockard*, 580 A.2d 1011, 1024 (D.C. 1990) (citing *Ingber v. Ross,* 479 A.2d 1256, 1264 n. 8, 1268–69 (D.C. 1984)). Like other qualified privileges, the common interest privilege is "based upon a public policy that recognizes that it is desirable that true information be given whenever it is reasonably necessary for the protection of the actor's own interests, the interests of a third person or certain interests of the public." *Id.* (quoting RESTATEMENT (SECOND) OF TORTS *supra,* title B introductory note).

Turkeltaub acknowledges that the common interest privilege is applicable here but unpersuasively argues that Ms. van der Stelt's statements are not protected by the common interest privilege only because she shared them "excessively," relying on *Tacka v. Georgetown University*, 193 F. Supp. 2d 43, 53 (D.D.C. 2001). In doing so, Turkeltaub seeks to minimize the applicable standard, which is as follows:

> In order to defeat this qualified privilege, [a defamation plaintiff] must either: (1) provide "extrinsic proof" that the defendants who produced and used the [defamatory statement] acted with express malice, or (2) demonstrate that it is "so excessive, intemperate, unreasonable, and abusive as to forbid any other reasonable conclusion than that the defendant[s] [were] actuated by express malice...."

*Blodgett v. Univ. Club*, 930 A.2d 210, 224 (D.C. 2007) (quoting *Moss,* 580 A.2d at 1024) (quoting *Ashford v. Evening Star Newspaper Co.,* 41 App. D.C. 395, 405 (1914)).

This is a "demanding standard." *Blodgett*, 930 A.2d at 224; *see also Mosrie v. Trussell,* 467 A.2d 475, 477 (D.C.1983) (citing *Ford Motor Credit Co. v. Holland,* 367 A.2d 1311, 1314 (D.C.1977)); *Columbia First Bank,* 665 A.2d at 656. "Common interest" has been interpreted

broadly by the Courts. *Anas v. Brown*, 702 N.Y.S.2d. 732, 734 (N.Y. App. Div. 2000); *see also Moss,* 580 A.2d at 1025 n. 27 ("[P]roof that the statement was in fact false is alone insufficient to show malice").

Defendant argues generally that Ms. van der Stelt published her allegedly defamatory statements to individuals who had no shared interest in the sexual harassment claim or who were outside of the University community. However, Defendant fails to identify any specific allegedly defamatory remark for which the listener did not share a common interest with Ms. van der Stelt. For instance, Defendant alleges that Ms. van der Stelt's statements to other members of the lab and school community were excessive; however, these students had a clear interest in potential sexual harassment happening in their own lab, their own university, and in academia broadly. *See Alade v. Borg-Warner Protective Servs. Corp.*, 28 F. Supp. 2d 655, 657 (D.D.C. 1998) (holding that all employees have a common interest in the upholding of an employer's sexual harassment policy). For similar reasons the publishing of the Complaint in the *Hoya*, a Georgetown community publication, was not excessive as its target audience in precisely the community that would have a common interest in this matter. *See Stark v. Zeta Phi Beta Sorority, Inc*., 587 F. Supp. 2d 170, 173 (D.D.C. 2008) (holding that a letter sent to all members of a sorority about one individual's discharge from the sorority fell within the common interest privilege and was not considered excessive publication). Moreover, Ms. van der Stelt's disclosures to many of these students, particularly the one who interacted regularly with Turkeltaub, could be understood as an intention to protect these students from similar harassment and prevent their academic careers from being disrupted as hers had been and which is consistent with the goals of federal and local anti-discrimination laws designed to combat discrimination and harassment in educational institutions and the workplace. *Moss,* 580 A.2d at 1024

(recognizing common interest privilege may apply where "interests of the public" are concerned) (quoting Restatement (Second) of Tort, B introductory note (Am. Law Inst. 1977)). Ms. van der Stelt's conversation with the patient referral source, a personal friend, could be similarly understood as an intervention to protect vulnerable patients from potential harassment consistent with the policy goals of the relevant anti-discrimination statutes. *Id.* Furthermore, because of Georgetown University's unlawful retaliatory action in preventing Ms. van der Stelt from finding an alternative lab in which to complete her studies, and in disclosing her name after telling her she could file her complaint anonymously, she was compelled to disclose her story to multiple persons.

### C. As A Limited Public Figure, Turkeltaub Is Required To Prove Ms. van der Stelt Acted With Malice.

Turkeltaub argues he is not a limited purpose public figure since there is no public controversy in this matter because: "(1) the allegations were limited to only his lab at Georgetown University;" (2) "the allegations made against Turkeltaub himself have not been picked up by national nor international media outlets;" and (3) "there was no discussion of Turkeltaub sexually harassing anyone prior to Ms. van der Stelt's defamatory statements." Opp'n, at 24.

Through these arguments, Turkeltaub attempts to narrow the controversy at issue to merely a conflict between himself and MS. van der Stelt. While this conflict is one controversy in this matter, it is not the only one. *See Fridman v. Orbis Bus. Intelligence Ltd.*, 229 A.3d 494, 508 (D.C. 2020) ("a narrow controversy may be a phase of another, broader one."); *see also Eramo v. Rolling Stone*, LLC, 209 F. Supp. 3d 862, 870 (W.D. Va. 2016) (quoting *Nat'l Life Ins. Co. v. Phillips Pub., Inc.*, 793 F. Supp. 627, 637 (D. Md. 1992)) ("Significantly, it would be

inappropriate to shrink all controversies to the specific statements of which a plaintiff complains") (cleaned up).

This matter implicates several broader controversies including (1) sexual harassment in academia and (2) a pattern of misconduct by Georgetown faculty which has been condoned by leadership. Compl., at 38, ¶ 105 ("Upon information and belief, at least three male faculty members in the IPN and under BGE have been the subject of multiple sex discrimination and harassment claims and, in each case, the female students/employees who reported the discrimination and harassment were forced to leave the labs of the male professors"); s*ee Fells v. SEIU*, 281 A.3d 572, 582 (D.C. 2022) ("We have previously held that statements that on their face are "mostly" about a single individual, even one who was deemed not to be a public figure, may nonetheless relate to "larger concern[s] . . . of community well-being").

Contrary to Turkeltaub's arbitrary assertion that a public controversy requires international or national media attention, a matter is one of public concern when "a reasonable person would have expected persons beyond the immediate participants in the dispute to feel the impact of its resolution." *Fridman v. Orbis Bus. Intelligence Ltd.*, 229 A.3d 494, 505 (D.C. App. 2020); s*ee also Waldbaum v. Fairchild Publications, Inc.*, 627 F.2d 1287, 1296-97 (D.C. Cir. 1980) ("A public controversy is a controversy the outcome of which affects the general public or *some aspect of it*.") (emphasis added). Here, a reasonable person could certainly expect persons beyond the parties to be impacted by its resolution. The specific controversy here has been picked up by the relevant local media, the *Hoya*, the Georgetown community newspaper. *See* Mot., Ex. 1. Further, other conflicts involving Georgetown professors, including ones involving

issues of harassment and discrimination, have garnered significant media attention and been picked up by media sources such as the *New York Times*, *Washington Post*, and *Teen Vogue*.[10]

As such, Turkeltaub's argument that the controversy here is merely limited to the lab, fails because of a broader university and public interest in this and similar controversies. Similarly, as the controversy goes beyond the direct conflict between Turkeltaub and Ms. van der Stelt, Turkeltaub's assertion that there was no discussion of him sexually harassing anyone prior to Ms. van der Stelt's accusations is irrelevant. Opp'n, at 24. The relevant question is whether there has been previous public discussion of sexual harassment on university campuses or previous discussions of impropriety by Georgetown Professors that had garnered public attention (the answer to both is yes).[2]

Next, Turkeltaub cites one way that an individual may inject themselves into a public controversy, but neglects to discuss how an individual can involuntarily become involved in a public controversy. *See Fridman*, 229 A.3d at 505 ("Occasionally, someone is caught up in the controversy involuntarily and, against his will, assumes a prominent position in its outcome'"); *Moss*, 580 A.2d at 1031 n. 35 ("A person can become an involuntary limited-purpose public figure when the plaintiff plays a central, if unintentional, role in a public controversy and

---

[10] Anemona Hartocollis, The New York Times, A Conservative Quits Georgetown's Law School Amid Free Speech Fight (June 6, 2022) https://www.nytimes.com/2022/06/06/us/georgetown-ilya-shapiro.html;Tom Jackman, The Washington Post, More alumni accuse former Georgetown provost of sexual misconduct (Sept. 11, 2021) https://www.washingtonpost.com/dc-md-va/2021/09/11/georgetown-provost-accused/;Suzannah Weiss, Teen Vogue, A Georgetown University Professor Responded to Backlash Over Her Kavanaugh Tweets (Oct. 3, 2018) https://www.teenvogue.com/story/a-georgetown-university-professor-responded-to-backlash- over-her-kavanaugh-tweets; Staci Zaretsky, Above the Law, Prominent Georgetown Law Professor Arrested, Charged In Domestic Violence Case (Oct. 19, 2023) https://abovethelaw.com/2023/10/shon-hopwood-georgetown-law-arrested-domestic-violence/;Matt Cohen, DCist, Georgetown Law Student Files Lawsuit In Rabbi Voyeurism Case (Dec. 2, 2014) https://dcist.com/story/14/12/02/georgetown-law-student-files-lawsuit

becomes well known to the public in this one very limited context"). In some contexts, individuals have been held to be limited purpose public figures merely by virtue of their prominence in their field. *See Lohrenz v. Donnelly*, 350 F.3d 1272, 1274 (D.D.C. 2002) (holding that a female combat pilot was a limited purpose public figure for purposes of defamation because she voluntarily chose to become a combat pilot at a time when there was a public controversy over women in combat roles, despite the pilot's contention that she had not thrust herself into the media spotlight).

Turkeltaub has held himself out as an esteemed professor at Georgetown University and a prominent researcher and mentor in his field. As a direct result of his position and his prominence in his field, he had access to and significant influence over employees and students within his lab. In violation of Georgetown University policy and at a time when there is national attention on sexual harassment on college campuses, Turkeltaub participated in an inappropriate relationship with his employee and student with full knowledge of the unequal power dynamics and potential repercussions of doing so. *See* Georgetown Faculty Handbook IV (G); *See generally* CC, at 38, ¶¶ 60-61 (Turkeltaub's multiple acknowledgements of text messages and other communications that refer to personal and sexual topics); CC, at 48, ¶ 100 (acknowledging he had a "non-professional encounter" with Ms. van der Stelt). While Turkeltaub may have been involuntarily thrust into the broader controversies over sexual harassment at Georgetown and in academia nationally, his choice to blur the boundaries, as indicated by his consistent exchange of messages and conversations with his student that far exceeded the bounds of professionalism, was voluntary and the larger controversies implicated in this case were foreseeable outgrowths of the voluntary series of actions Turkeltaub took.

As Turkeltaub is a limited purpose public figure, he must prove that Ms. van der Stelt acted with actual malice standard. *Fridman.*, 229 A.3d at 509; *Fells*, 281 A.3d at 583. This is a higher standard than the "knew or should have known" the statements were false at time of publication, which he incorrectly cites. Actual malice requires Turkeltaub to prove by "clear and convincing evidence," that Ms. van der Stelt made her statements with "either actual 'knowledge' that the statements were false, or 'reckless disregard' of the statements' accuracy," *Couch v. Verizon Comm. Inc.*, 105 F.4th 425, 432 (D.C. Cir. 2024) (quoting *Jankovic v. Int'l Crisis Grp.*, 822 F.3d 576, 589-90 (D.C. Cir. 2016)).

In alleging malice, Turkeltaub merely recites his prior unsubstantiated and conclusory arguments that because he was cleared of the allegations in a non-adversarial university administrative process, the outcome of that process should be given full judicial weight, and the statements should be considered false as a matter of law. Under this theory, Ms. van der Stelt should forgo her right to have her harassment claims heard and adjudicated in a court of law and that any attempt by her to do so would indicate malicious intent. Turkeltaub further tries to "prove" malice by asserting that, because at one time he and Ms. van der Stelt had a mutually amicable relationship, she "welcomed" and "encouraged" any words or actions taken by Turkeltaub that she now considers sexual harassment. This distorted narrative ignores the timeline and context of events and revokable nature of consent. Moreover, it is totally irrelevant to the standard of malice as it has no bearing on whether Ms. van der Stelt's comments were made with malice.

Accordingly, as even when taking the facts pled as true, Turkeltaub is a limited public figure and the facts do not establish malice, thus the counterclaim must be dismissed.

**VI.     Turkeltaub's counterclaim is not well-pleaded and does not State a Defamation Claim**

In his Opposition, Turkeltaub argues that he "has pleaded sufficient facts to show he was defamed by Ms. van der Stelt's Statements that he sexually harassed her." Opp'n, at 10. To the contrary, he fails to plead his claims with sufficient specificity and thus has failed to state a claim. A claim for relief is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). With respect to defamation claims, specifically, DC and federal law dictate that this factual content be pled with particularity. *See Wiggins v. Philip Morris, Inc.*, 853 F. Supp. 470, 478 (D.D.C. 1994). "The allegedly defamatory statements must, wherever possible, be set forth in precise terms." *Ruf v. American Broadcasting Co.*, No. 97-1427 (TFH) 1999 U.S. Dist. LEXIS 1092, *19-20 (D.D.C. Jan. 29, 1999) (citing *Hoffman v. Hill & Knowlton, Inc.*, 777 F. Supp. 1003, 1005 (D.D.C. 1991)).

Accordingly, a plaintiff is expected to plead the "content" of the allegedly defamatory remarks. *See Libre by Nexus v. BuzzFeed, Inc.*, 311 F. Supp. 3d 149, 154 (D.D.C. 2018); *e.g. Stovell v. James*, 810 F. Supp. 2d 237, 248 (D.D.C. 2011) (dismissing defamation claim where the plaintiff a "failed to identify any of the specific statements" he alleged were defamatory); *see also Hoffman*, 777 F. Supp. at 1005 ("The use of *in haec verba* pleadings on defamation charges is favored in the federal courts because generally knowledge of the exact language used is necessary to form responsive pleadings").

Plaintiffs must also include specific facts regarding the defamatory publication in their pleadings. *See Ridgewells Caterer v. Nelson*, 688 F. Supp. 760, 763 (D.D.C. 1988) (finding that in the absence of specific facts, including, the time, place, context, substance, or speaker, and

30

listener of the alleged defamatory matter, plaintiff's defamation claim amounts to "bare legal conclusions" and must be dismissed); *see Fenwick v. District of Columbia*, No. 2018 CA 002521 B 2018 D.C. Super. LEXIS 725, *7 (D.C. Super. Ct. Oct. 22, 2018) (noting "the vague nature of the statements made in both the Complaint and the Bill of Particulars does not provide any indication as to the exact time and place of the publication of the alleged defamation");*see also Stovell v. James,* 810 F. Supp. 2d 237, 248 (D.D.C. 2011) (dismissing plaintiff's defamation claim because the plaintiff failed to specifically "plead the time, place, content, speaker, and listener of the alleged defamatory matter.")*; see also American Broadcasting Co.*, 1999 U.S. Dist. LEXIS 1092, *19-20.

When defamation claims lack this specificity or are otherwise vague, courts have found that they do not state a claim and dismissal is warranted. *See Fenwick v. District of Columbia*, 2018 D.C. Super. LEXIS 725, *6-7 (holding that "vague and ambiguous language" fails to state a claim as it does not "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests"); *Mattiaccio v. DHA Group, Inc.*, 908 F. Supp. 2d 136, 138-39 (D.D.C. 2012) (dismissing Plaintiff's defamation claim for vagueness and noting that complaint did not provide details on how or when the allegedly defamatory statement was published or which particular individuals received the statement).

Like the plaintiffs in *Stovell* and *Mattiaccio*, Turkeltaub's pleading are insufficient. Turkeltaub's claims lack basic information needed to establish the allegedly defamatory acts, such as to whom the allegedly defamatory statement was directed, when the statement occurred, and the context of the statement. In almost every allegation, Turkeltaub fails to even state the defamatory remarks he complains about. Instead, he makes vague allusions to "false allegations," "false claims," "defamatory story," and other such legal conclusions that lack

specificity or factual enhancement, including the time and to whom the statements were made. *See* CC, at 60, ¶ 151. For example, his allegation that Ms. van der Stelt "spread false and defamatory statements about Turkeltaub and his relationships with female lab members" at an unspecified time "after leaving CRL" is mere legal conclusion. *See* CC, at 56, ¶ 128. Turkeltaub repeatedly uses vague and unidentifiable titles such as "IPN graduate students" or "first year student" and vague time periods such as "after January 2023" or no time period at all. For the few statements in which Turkletaub does supply allegedly verbatim remarks, he quotes only a single word or fragment without any context or necessary information to evaluate the statement. By omitting fundamental details, Turkeltaub evades the court's evaluation of the veracity of the statements and prevents Ms. van der Stelt from properly defending herself as she is left to guess what statements Turkeltaub is referencing and who he alleges was present.

## VII.    Defendant insufficiently pleads false light.

Turkeltaub reincorporates his defamation argument into its pleading for false light. Opp'n, at 30. As relevant here, with the actual malice standard for public figures such as Turkeltaub, "plaintiffs often seek to repackage their claims into an alternative tort with a less demanding standard." *Couch v. Verizon Comm. Inc.*, 105 F.4th 425, 436 (D.C. Cir. 2024). However, 'a plaintiff may not use related causes of action to avoid the constitutional requisites of a defamation claim'" *Id.* (quoting *Moldea v. New York Times Co.*, 22 F.3d 310, 319-20 (D.C. Cir. 1994)). Additionally, "merely disagree[ing] with [plaintiff's] recollection of events" does not support a false light claim. *Smith v. Clinton*, 886 F.3d 122, 129 (D.C. Cir. 2018) (dismissing defamation and false light claims). "The D.C. Court of Appeals has refrained from finding disagreement to constitute defamation even where the disagreement was combative." *Id.* (citing *Levant v. Whitley*, 755 A.2d 1036, 1040 (D.C. 2000)). The starkly different

interpretations Turkeltaub and Ms. van der Stelt have of their relationship cannot serve as the basis for Turkeltaub's false light claim and as such it fails to state a claim. *Id.*

## VIII.   Conclusion

The Court should dismiss Turkeltaub's Counterclaim because Ms. van der Stelt's statements are substantially true or are protected by privilege or barred by the statute of limitations. Turkeltaub's argument, at its essence, is that Ms. van der Stelt is wrong to characterize what happened between them as sexual harassment. This goes to the merits of Ms. van der Stelt's original Complaint and this Court should not allow Turkeltaub to litigate her sexual harassment claims by means of a backdoor defamation suit. This lawsuit is merely an attempt to silence her voice and dissuade individuals in vulnerable positions from raising concerns about sexual harassment.

Dated: August 16, 2024                                    Respectfully submitted,

                                                          */s/ Elizabeth A. Wilson*
                                                          Gary M. Gilbert, Esq. (Bar No. MD15808)
                                                          Elizabeth Wilson, Esq. (Bar No. 491007)
                                                          Cori M. Cohen, Esq. (Bar No. MD19124)
                                                          Gilbert Employment Law, P.C.
                                                          8403 Colesville Road, Suite 1000
                                                          Silver Spring, MD, 20910
                                                          Tel: (301) 608-0880
                                                          Fax: (301) 608-0881
                                                          Gary-efile@gelawyer.com
                                                          ewilson@gelawyer.com
                                                          ccohen-efile@gelawyer.com

                                                          *Counsel for Counter-Defendant*

## **CERTIFICATE OF SERVICE**

I hereby certify that true and correct copies of the foregoing Counter-Defendant's Reply to Counter-Plaintiff's Opposition to Counter-Defendant's Motion to Dismiss were served on all parties of record through the Court's CM/CF filing system on August 16, 2024.

*/s/ Elizabeth A. Wilson*
Elizabeth A. Wilson
Gilbert Employment Law, P.C.
8403 Colesville road, Suite 1000
Silver Spring, MD, 20910
Tel: (301) 608-0880
Fax: (301) 608-0881
Ewilson-efile@gelawyer.com